FILED

Mei Ling - *In Pro Persona*
6750 Whitsett Avenue #310
North Hollywood, California 91606
Telephone: (818) 644-3923
Email: Mei.Ling.818@yahoo.com

2020 MAR -9 PM 3: 12

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____(W)_____

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RELMAN, DANE & COLFAX PLLC,<br><br>    Plaintiff,<br><br>    v.<br><br>FAIR HOUSING COUNCIL OF SAN FERNANDO VALLEY AND MEI LING,<br><br>    Defendants.<br><br>- - - - - - - - - - - - - - - - -<br><br>MEI LING,<br><br>    Counter-Claimant,<br><br>    v.<br><br>RELMAN, DANE & COLFAX PLLC,<br><br>    Counter-Defendant. | CASE NO. 2:19-cv-08612-PSG-JC(x)<br><br>**COUNTER-CLAIMANT MEI LING'S PARTIAL OPPOSITION TO RELMAN, DANE, COLFAX'S MOTION TO DISMISS COUNTER-CLAIMS**<br><br>**DECLARATION OF MEI LING IN SUPPORT THEREOF**<br><br>Judge:    Honorable Philip S. Gutierrez<br>Courtroom: 6A |

**TO THE HONORABLE COURT AND TO THE PARTIES AND**

**COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that at this time Defendant Mei Ling is only able to file

1    this "partial" Opposition to Plaintiff Relman, Dane, and Colfax's Motion to Dismiss

2    the Counterclaims that was filed in this case on December 4, 2019 (Docket # **85**) …

3    by attorney Scott Moore - including for a number of material reasons, which due to

4    limited time … will be explained in my attached Declaration.

5       First however - your Honor did not have a full understanding of very serious

6    medical / health related matters that I have been, and am still currently faced with -

7    when *inaccurately* determining to not grant the requested window of extension time

8    for 60-days as "reasonable". Due to persistent high fevers, more related to a serious

9    Decubitis ulceration, and having been at a location with someone who tested positive

10   for the Corona-Virus - I had to be tested multiple times. In fact, when I arrived back to

11   my current Senior's complex residence last night - I was surprised to see the attached

12   Memo (Exhibit "C"), posted on my door from the building's management company.

13       There was only one neighbor who knew my circumstance, because she drove

14   me to be re-tested when my fever went over 102. I was trying to keep my otherwise

15   HIPAA protected medical matters - **private** … and did not believe *given my obvious*

16   *disabilities*, I needed to be more graphic with understandable indignities. I however,

17   can certainly come into your Honor's Courtroom 6A with adequate medical records to

18   substantiate multiple medical matters that necessitate at least another 30 day extension.

19   The Fair Housing Council is not opposing this medically needed extension of time.

20       I request your Honor to consider my attached Declaration explaining other

21   factors why this is only a "partial" Opposition which supports why I had requested a

22   60-day extension of time, and still require 30-days to be able to have a meaningful

23   opposition filed.

24       Respectfully submitted,

25

26   Date: March 9, 2020

27       MEI LING - in pro persona

28

**Declaration of Mei Ling**

# Declaration of Mei Ling

I, **MEI LING, declare that:**

1.     The information set forth below is known to me through firsthand knowledge. I am a resident of the City and County of Los Angeles, and if called to testify as a witness, I will and can competently testify to the facts in this Declaration.

2.     High fevers had caused physician specialists to have invasive surgery in my shoulders and knee, and other procedures that require anesthesia - re-scheduled, with instructions to remain isolated due to an increasing infection of a Decubitis ulceration that is not healing, but worsening, and having been in close proximity with someone who tested positive for the Corona-Virus. I requested (3) times that Relman, Dane, Colfax – as well as Fair Housing Council to stipulate to the remaining 30-day extension that I knew was medically needed on Feb. 3, 2020. (see true and copy of (**Exhibit "A"**). Despite providing photos of what prevents me from being able to sit-up for more than 15 minute intervals, sedating Rx medications, etc., those photos were of a ulceration diameter and depth, that has now worsened to a larger diameter and depth. As my email stated, I can bring records to your Honor's Courtroom for an *in camera* review so the there is an understanding why the need for 60-days was in fact "**reasonable**". While the Fair Housing Council repeated they will not object to an extension, it is Relman, Dane & Colfax who states the oppositions - including if I were to file an ex parte application. To not waste this Court's time, I believe it is better to include in this partial Opposition, with supporting documents – as to **why** a complete Opposition filing is not even possible at this time. Rescheduled procedure to tend to polyps, is currently set for March 19, 2020. With new circumstances, and to rule out cancer - a different specialist had me go to an imaging location this past Saturday for two emergency MRI's with contrast (**Exhibit "B"**), ahead of surgeries in both shoulders - that leaves me with minimal arms and hand usage … including to be able to prepare Court pleadings which requires caregiver assistance at this time.

1    **3.**    Relating to the Relman, Dane, Colfax's opposition that I was not "caught

2    off-guard" by former counsel Scott Moore's Withdrawal - to not being able to obtain

3    replacement counsel. The issue is that, to this date - attorney Scott Moore refuses to

4    release all of this client's records in his possession - which the multiple attorneys I

5    spoke with needs to be able to review to in order to analysis this CV1908612 case -

6    which is related to the CV11-0974 False Claims Act complex litigation case, *in your*

7    *Honor's Court* - as well as the intrinsically related CV12-0551 inaccessible housing

8    related case before Judge Olguin - each filed by Michael Allen at the Relman, Dane

9    & Colfax firm.    Relman attorney Michael Allen, had also filed an individual case in

10   2011 for me individually - misrepresenting it was to get one of CRA-LA's required

11   North Hollywood accessible units as a housing placement for me. Instead, I had

12   learned after these cases were filed - the three cases were structured to leverage one

13   case to the next - with attorney Allen telling me in 2012 that his purpose in filing

14   these cases - was to get as much money out of Los Angeles as he could – and he was

15   confident he would succeed with the help of RDC's Washington D.C. colleagues at

16   HUD (Sara Pratt), and the DOJ (Bill Edgar, Tom Perez and Eric Holder).  None of

17   the cases were ever about working to help mobility or sensory impaired persons to

18   obtain "one" required affordable, accessible housing units. The best way to explain

19   how attorney Allen was never truthful, where he repeatedly misrepresented RDC's

20   legal services, withheld material records from both co-relators clients, executed and

21   filed pleadings in each of the Courts *without our knowledge and consent*, that would

22   enriched the Relman firm, and among other things knew many RDC pleadings he

23   filed, were false. Attached as **Exhibit "D"**, are true & correct copies of documented

24   communications that co-Relator Sharon Kinlaw / Fair Housing Counsel ("FHC")

25   provided me - which evidences the similar experiences of collusion, lies, and among

26   many other improprieties to each of our detriment - that necessitated each relator to

27   terminate RDC as its counsel. RDC's misconduct and improprieties that resulted in

28   RDC's termination – led to RDC then filing this case in Washington D.C.

**4.**   RDC even took the names of disabled people, used their private medical information and forged their signatures to file Declarations without their knowledge or consent - in order to have Judge Olguin approve legal fees – and as objected to in the true and correct copy of the Declaration of Bahram Amiri (**Exhibit "E"**)

**5.**   As a refresher of the previously submitted true and correct copy of the Declaration Fredrick Newell (**Exhibit "F"**) ... Michael Allen lied to Pastor Newell when claiming to represent him as his co-counsel - when in reality Allen used his case to gain access to meet with and negotiate with City of St. Paul official - as agents to DOJ's Tom Perez / Eric Holder, and HUD's Sara Pratt ... in order to derail Pastor Newell's case from going to the Supreme Court ... and where a "pass the hat" funds was created to pay off Newell's "play for pay" attorney.

**6.**   As this defendant previously informed your Honor, attorney Scott Moore filed false pleadings in your Court when seeking to withdraw.  At no time, including to date - did attorney Moore ever provide me my client records – and continues to refuse to provide them.  (see true and correct copy of **Exhibit "G"**)   While I know he wanting me to Stipulate to many extensions in the CV11-0974 case to for the City of L.A. and Tom Perez's DNC to get past the Nov. 18, 2018 in order to "Flip the House" with Los Angeles' Democratic votes, which I objected to CV110974 being used again in another Tom Perez Quid Pro Quo ... it was recently on January 29, 2020 during the Meet and Confer for the Rule 26 matter ... that the reason for Scott Moore's withdrawal was filed in January 2019.  In late 2017 / early 2018 (Don Warren said he doesn't remember the date) - Warren-Benson raised the issue of the 10 year recovery period, vs. the 6 year - which was their basis for filing the initial Counter-claim for Negligent, Breach of Duty against RDC on behalf of Fair Housing Council.  Mine was a "copy cat" of FHC's Counter-claims.  When I first read these FHC Counter-claims in Oct. 2019 - I questioned why DOJ's Bill Edgar, Lisa Palombo, and Eric Schmelzer were not equally responsible.  This is why there was the 2018 Reconsideration pleadings, which this Court denied ... and suddenly

COUNTER-CLAIMANT MEI LING'S PARTIAL
OPPOSITION TO COUNTER-DEFENDANT RDC'S
MOTION TO DISMISS; DECLARATION OF MEI LING

the need for redactions. Scott Moore believed the Negligence also applied to him, and why he asked me to consent to a Withdrawal in January 2019 – two days after I asked for all communication exchanges and phone records between he / BairdHolm and the DOJ … characterizing me as difficult.  .

7.    In between my medical matters, I have spoken with many attorneys, and have a meeting this week, with one that is very promising.  I hope the foregoing does explain why I am able to only file this Partial Opposition – and believe I will be will to have a fully brief filed within the coming 30-days.


I declare under penalty of perjury that the foregoing is true and correct, under the laws of the United States.

Respectfully submitted,

Dated:  March 9, 2020

Mei Ling, *in pro persona*

Mei Ling Request for Stipulation of Extension - Decubitis Ulceration

**Exhibit "A"**

**Sent:** Thursday, March 5, 2020, 9:57:23 AM PST
**From:** Mei.Ling818@yahoo.com
**To:**     Ben Razi  <BRazi@Cov.com>; Steven Winkelman <SWinkelman@Cov.com>;
Andrew Soukup <ASoukup@cov.com>; Ryan Weinstein  <RWeinstein@Cov.com>
**Cc:**     PhilBenson@WarrenBensonLaw.com; DonWarren@WarrenBensonLaw.com;
Sharon Kinlaw <SKinlaw@FairHousingCouncil.org>
**Subject:** Stipulation to Extend #2:19-cv-08612-PSG-JC


**To:  Covington Counsel Soukop, Razi, Winkelman, Weinstein:**
**Cc:  Phil Benson, Don Warren** *for Fair Housing Council*

As my below e-documentation stated:  there is a need for me to Request that the Court
provide me with an additional 30-day extension to tend to the next series of necessary
medical matters that I knew were upcoming when requesting the 60 day extension on
February. 3, 2020.  "In camera" evidence is certainly available to substantiate the debilitating
issues - which inhibit even sitting up and usage of my upper extremities.  For example ... in
my case, with constant fever, infections, and *mine worse than these below photos ...*



healing decubitis ulcerations, is a **long process** - which I will provide the Court to support
**"unreasonableness"**.  This is what occurs to wheelchair users, when sitting on one's
tailbone ... *(including to attorney Scott Moore - who had to take medical leave from
BairdHolm)* ... that often requires skin grafts ... and does not heal in "30 days".  How would
you know? ... when you are not wheelchair users ... to even imagine yourself with our painful
circumstances?  Though not my "rear end" - but of a wheelchair user who wants his injuries
in the **public records** ... having been repeatedly denied safe, accessible transit-orient CRA-
LA NoHo housing - including as a result of what FHC's Sharon Kinlaw even called a **sham**
CV12-0551 Settlement in that case filed in 2012 by Michael Allen / RDC.  RDC's structured
cases filed to capitalize on and exploit Los Angeles and its disabled - has resulted in serious
and life-threatening injuries ... where as Kinlaw has stated and written of multiple times,
including telling Judge Infante - how Los Angeles' disabled have **died** waiting, with many
dying prematurely.  There will be **"related cases"** filed soon to land in Judge Olguin's
courtroom - where the facts and each story will be made public - as the "billable hour" greed
and pretenses, are **causing injuries** to persons in need of **"one"** accessible unit to take care
of daily hygiene needs, and have a place to call "home".

Injuries from December 2019 - when pitched from my wheelchair as a result of L.A.'s inaccessible streets / sidewalks - have not healed properly with new orders for MRI's ahead of surgeries now in both shoulders, along with needed knee repair, and a scheduled procedure in 2 weeks for polyp removal.   Under these circumstances, please inform me by 1:00pm Noon today, if you will stipulate to the reasonable medically necessary 30-day extension to file an Opposition Brief by April 10, 2020.  Should the Relman firm and Fair Housing Council not be willing to this Stipulation - I will have an Ex Parte filed.  Should there be further objections to an Ex Parte for a 30-day extension - please provide your written reasons for your objections.

The Court was misinformed regarding all factors surrounding the ability to obtain competent replacement counsel ... and not a matter of me being not caught off-guard ... but everything to do with cover-ups;  evidence of Scott Moore filing false pleadings in the Court to obtain a Withdrawal from Judge Gutierrez;  evidence of Moore's refusals since 2019 to provide me with all client records ... among other matters that I will make a record of.

Should there be a willingness to more simply Stipulate ... I will have a Stipulation prepared for signatures and filing tomorrow.  At this time my accessible handicapped van transportation will be arriving so I can tend to today's daily medical / health regimen ahead of being taken to Rose Hill Memorial Park cemetery in Whittier for an afternoon family funeral service, where I will be speaking.

**Mei Ling**
**Mei Ling818@yahoo.com**
**Ph:  (818) 644-3923**

Case 2:19-cv-08612-PSG-JC   Document 104   Filed 03/09/20   Page 11 of 77   Page ID #:1340

Mei Ling's continuing diagnostic MRI's for disabled Shoulders, Knee

**Exhibit "B"**

- - - - - Forwarded Message - - - -

**Sent:** Thursday, March 5, 2020, 5:48:53 PM PST
**From:** Sandra Colino <Sandra.Colino@RadNet.com>
**To:** Mei Ling <Mei.Ling818@yahoo.com>
**Subject:** APPOINTMENT

Good evening Mei,

This is an email confirmation of your appointment scheduled for Saturday  3/7/2020
at 3:15 PM for an MRI  LT- Knee   and at 3/7/2020 at 3:45 pm for an MRI RT - Shoulder

Please bring your picture ID and insurance card.

Site location:       Burbank Advance Imaging

                    10101 Riverside Drive

                    Toluca Lake, CA  91602

If you have any questions call us at 818) 762-2626

Thank you ,

**RADNET / SANDRA COLINO**

**BURBANK ADVANCED IMAGING**

**MEDICAL RECORDS CLERK**

**818) 762-2626 EXT: #11403**

The information contained in this message may be privileged and confidential.  If you are NOT the intended recipient, please notify the sender immediately with a copy to lfoster@radnet.com and destroy this message.  Please be aware that e-mail communication can be intercepted in transmission or misdirected.  Your use of e-mail to communicate protected health information to us indicates that you acknowledge and accept the possible risks associated with such communication.  Please consider communicating any sensitive information by telephone, facsimile or regular U.S. mail.  If you do not wish to have your information sent by e-mail, please contact the sender immediately.

Senior's complex Management Company - Corona Virus Notice

# Exhibit "C"

# Important Notice to Residents
March 6, 2020

Dear Residents,

As the current outbreak of Covid-19 (Coronavirus) continues to develop, Legacy Partners Management Team is reaching out to residents to ensure we are all taking precautionary measures to prevent the spread of the virus. Legacy managed properties will be updating and enhancing current practices to decrease the opportunity of spread of the virus.

We will be proactively increasing our cleaning frequency on all areas of touch points (Door handles, elevator buttons, business center keyboard, etc.) with disinfectants. Additionally, we will temporarily discontinue handshakes and increase the availability of hand sanitizers and cleaning agents in amenity areas such as fitness centers etc.

Furthermore, with news of the virus still developing, we advise referencing and receiving guidance from the Centers for Disease Control and Prevention (CDC), World Health Organization and local health departments.

Below are links to the CDC and WHO websites.  Both are updated regularly with current information and guidance:

https://www.cdc.gov/coronavirus/2019-ncov/index.html

https://www.who.int/emergencies/diseases/novel-coronavirus-2019

Thank you in advance for the community cooperation.

Regards, Legacy Partners Management Team

Fair Housing Council / Sharon Kinlaw Evidentiary Documents

# Exhibit "D"

**Sent:** Saturday, July 29, 2017, 1:37:53 PM PDT
**From:** Sharon Kinlaw SKinlaw@gmail.com>
**To:** Mei.Ling818@yahoo.com
**Subject:** Fwd: Favorable Ruling on CRA Motion for Judgment on the Pleadings

Sharon Kinlaw
Executive Director
Fair Housing Council of the San Fernando Valley
14621 Titus Street - Suite 100
Panorama City, CA 91402
818-373-1185  (Phone)
818-373-1185  (Fax)

- - - - Forwarded Message - - - -
**Date:** Saturday, July 29, 2017 at 11:23 AM
**From:** Sharon Kinlaw <SKinlaw@gmail.com>
**To:** Loretta Kelly-Denkins  <NetLoretta1@hotmail.com>
**Cc:** Michelle White <AffHsgServices@sbcGlobal.net>, Don Bagwell <DonBagwell@SkylineFinancialCorp.com>,
Juanita Bankhead <JBankhead@LAFireCU.org>, Sandra Couch <SCouch@FairHousingCouncil.org>,
Reinaldo Avila <RAvila2002@sbcGlobal.net>,  Clark Bankhead <ClarkBankhead@aol.com>
**Subject:** Re: Favorable Ruling on CRA Motion for Judgment on the Pleadings

**Loretta**

This is one of the documents that I read and referenced in my communications with Reed, about the role of the DOF and their reasons for denying retrofitting the units. **This document and others contradict some of what Reed is saying.**

We learned from Reed on Thursday that **the affordability as written in the Settlement Agreement is only included as a goal; when you read the language as it relates to the retrofits, the CRA has to only identify the source of money, there are no guarantees that DOF has to approve** (the complaint should have been amended to add DOF as a defendant);  a further reading of the SA *(see below)* revealed that **the developers don't even have to let the contractors onto the property to make the retrofit:**

*"The failure of the CRA to secure the cooperation of any Owner with efforts to remedy noncompliance with requirements set out in this Agreement shall not excuse the CRA's obligation to achieve the Target Number of Accessible Units, but shall not constitute a breach of this Agreement as long as CRA is acting in good faith to achieve the Target Number of Accessible Units. The CRA shall notify the Plaintiffs, within a reasonable time frame, of non-cooperation by an Owner."*

We have tried to fix these loopholes with inserting different language, some of which was accepted, some rejected.  **We brought this lawsuit to ensure the properties get retrofitted and PWD occupy those units.  If the goals set forth in the SA are not met, we have no recourse, but to rely on the same flawed process to fix it.**

The notion that the CRA can't create a new obligation and pay for the retrofitted units to be affordable, seems inconsistent with the Judges' opinion, which states:

*Assuming the Dissolution Law prevents CRA/LA from creating a new enforceable obligation to remediate the CRA's housing assets, see id., 4 it nevertheless does not prevent CRA/LA from paying the damages, costs, or attorney's fees sought by plaintiffs. (See, generally, id.).  In the court's view, the Dissolution Law necessarily must authorize CRA/LA to create a new enforceable obligation to compensate a plaintiff injured by the CRA's conduct; to hold otherwise would prevent CRA/LA from winding down the litigation pending against the CRA, thereby frustrating its primary purpose of winding down the CRA's affairs.*

D1

We have consistently asserted that affordability is a key component of insuring that persons with disabilities (PWD) get an equal opportunity to actually rent the retrofitted units. Our position was adopted and supported in HUD's findings. If PWD are precluded from moving into the properties once the units are retrofitted - fair housing justice is impeded.

What we have been told by Reed is inconsistent and contrary to the Judge's ruling. Some of their explanations have not made sense and that is why we continue to ask questions, probe other sources and insist on changes to strengthen the agreement. We have an obligation to protect the community from further discrimination and to knowingly sign a document that does not correct the past discrimination or eliminate it moving forward, is inconsistent with our mission.

We must promote justice; remember the beneficiaries of these efforts are the blind, the lame, the deaf and the poor, people with disabilities that are relying on us to do our very best to protect their civil rights and to support their efforts to improve their life conditions by giving them the same opportunity to partake of the Affordable Housing Programs paid for with taxpayers dollars.

I don't know if the lawyers don't expect us to read or understand some of these complicated issues on our own, or if they expect us just to follow them blindly. This is about more than money, it's about people's lives and the Council's integrity and legacy. Achieving JUSTICE has never been easy - history show us that.

I want this over just like everybody else, it is not comfortable being in opposition with the local, state and federal government and fighting with the lawyers who are supposed to help us achieve JUSTICE and not just be concerned about their own bank accounts. Standing firm in the face of opposition is a journey of grace - we can't buckle because its easier to sign the document and get it over with - we have to endure to the end until actual justice is achieved. I really hope that happens soon.

Sharon

Sharon Kinlaw
Executive Director
Fair Housing Council of the San Fernando Valley
14621 Titus Street - Suite 100
Panorama City, CA 91402
818-373-1185   (Phone)
818-373-1193   (Fax)


 - - On Saturday, July 29, 2017 at 1:26 AM, **Loretta Kelly-Denkins** <NetLoretta1@hotmail.com> **wrote:**

**Sharon,**

I can't remember if you have reference this doc, but on page 8 line 1 it mention affordability. Also, this doc discuss the role of DOF.

Page 4 down.

Hope this is helpful.

Loretta

323-696-9444

Sent from Outlook

D2

**Sent:** Saturday, July 29, 2017, 1:37:04 PM PDT
**From:** Sharon Kinlaw <SKinlaw@gmail.com>
**To:** Mei.Ling818@yahoo.com
**Subject:** Fwd: CRA Settlement Agreement - Execution / FHC's Decision

Sharon Kinlaw
Executive Director
Fair Housing Council of the San Fernando Valley
14621 Titus Street - Suite 100
Panorama City, CA 91402
818-373-1185   (Phone)
818-373-1193   (Fax)


- - - - Forwarded Message - - - -
**Date:** Thursday, July 27, 2017 at 11:32 PM
**From:** Sharon Kinlaw  <SKinlaw@gmail.com>
**To:** David Iyalomhe <David@doiaLaw.com>
**Cc:** Michelle White <AffHsgServices@sbcGlobal.net>,
Loretta Kelly-Denkins <NetLoretta1@hotmail.com>,  Odion Okojie <OkojieLaw@aol.com>,
Don Bagwell <DBagwell@SkylineHomeLoans.com>,
Juanita Bankhead <JBankhead@LAFireCU.org>,  Sandy Couch <FYI123@PacBell.net>
**Subject:** Re: CRA Settlement Agreement - Execution / FHC's Decision

David

The Council cannot sign the Settlement Agreement as written, we **remain concerned about the affordability**, the carve out for the FCA case, the credit and/or offset language we requested be added to the agreement and simple language to address the agreement being breeched in the event the DOF fails to approve the funding.  We are requesting that our concerns be communicated to the defendants and the plaintiffs.

**The issue of affordability is a major concern;** if the retrofitted units are not made affordable, it **will be virtually impossible for the vast majority of persons with disabilities** (PWD)  that the Council serves, to afford the units.  Section 504 states *"that no otherwise qualified individual with disabilities shall, solely on the basis of disability, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity that receives Federal financial assistance"*

The **22+ properties referenced in the Settlement Agreement are a part of the CRA/City's Affordable Housing Program** and all received **substantial amounts of money in the form of federal financial assistance.**  The properties when developed failed to market units to PWD;  **the units that have been designated as affordable by the developers are not accessible.**  The Compliance Inspection conducted by HUD determined *"the affordable housing program of the CRA/LA violates Title II of the ADA in the application of their policies, certifications, practices and outcomes,"* and that the *"individual properties demonstrate that the CRA/LA is not operating its affordable housing program consistently with its obligations under Title II of the ADA.  All UFAS violations constitute violations of both Section 504 and Title II of the ADA."*

The **affordability and the accessibility are inextricably linked,** most of our clients live on fixed incomes of less than $1000.  **When we began the investigation of the complaint that led to the litigation, we were looking for one (1) <u>affordable,</u> accessible unit in the CRA Affordable Housing Program.**  That search later extended to the City's Affordable Housing Trust portfolio of properties.

D3

The HUD compliance review and Letter of Finding (see attached), determined: *that accessible dwelling units required by 24 C.F.R. §§ 8.22, 8.23, 8.24 or 8.25 shall, to the maximum extent feasible and subject to reasonable health and safety requirements, be distributed throughout projects and sites. Accessible dwelling units must also be available in a sufficient range of sizes and amenities so that a qualified individual with a disability's choice of living arrangements is, as a whole, comparable to that of other persons eligible for housing assistance under the same program. This includes affordable and accessible dwelling units in a sufficient range of sizes and with a sufficient range of amenities. See 24 C.F.R. § 8.26.*

The Council believes that the failure to include affordability as a condition of the Settlement Agreement is a grave mistake. The Settlement Agreement as written fails to counteract the past discrimination and continues the discrimination into the future. If the retrofitted units are not affordable, persons with disabilities in overwhelming numbers will be excluded from participation and denied the benefits of the CRA/City's Affordable Housing Program. If the units are not affordable, PWD will be subject to discrimination as the retrofitted units will be otherwise unavailable. PWD will not get the benefit of their tax dollars or of programs that receive federal and state financial assistance.

The **VCA signed in September of 2014** (see attached) included language about the False Claims Act and language about a payment offset. Since the CRA has already signed an agreement with familiar language, requesting similar language to protect the Council interest in the pending FCA matter is not unreasonable.

Regards,
Sharon

Sharon Kinlaw
Executive Director
Fair Housing Council of the San Fernando Valley
14621 Titus Street - Suite 100
Panorama City, Calif. 91402
818-373-1185  (Phone)
818-373-1193  (Fax)

  - - On Thursday, July 27, 2017 at 8:00 PM, **David Iyalomhe <David@doiaLaw.com>** wrote:

**Sharon:**

This is a follow up to your phone conversation with Odion several hours ago where you promised to send over to us FHC's final position regarding the CRA Settlement Agreement. We have been waiting for the email outlining FHC's decision to not sign the current settlement agreement as is, even after the telephone conference with Reed, yourself, Michelle, Odion and me this morning where Reed clearly indicated that the deadline to return the signed agreement to them is tomorrow morning. As Reed explained, the other plaintiffs are prepared to sign the agreement which must then be submitted to the court for approval/entry of judgment in time for submission to CRA's Board meeting of early next week.

We need to immediately communicate to Reed FHC's decision not to sign the Agreement so that he can advise the other two plaintiffs and the CRA, and ultimately the court, regarding the status of the settlement agreement. Since time is of the essence, please send us FHC's written instructions so we can immediately advise the Relman firm of FHC's position.

Regards,

David Iyalomhe
Co-counsel to FHC

D4

-- On Thursday, July 27, 2017 at 7:37 AM, **Sharon Kinlaw <SKinlaw@gmail.com>** wrote:

**David**

I was unable to reach Michelle after we spoke yesterday, I did leave messages for her.  I understand what Reed said, but what I don't understand is **what is the point of including a provision in the Settlement Agreement that says the plaintiffs will have a seat at the table to discuss an affordability strategy, while at the same time refusing to execute an agreement that ensure the affordable units.**  If the CRA/LA is claiming there is no money to ensure that the retrofitted units are also affordable now - exactly, what is going to happen when we get to the table?  We are concerned this may be a **disingenuous gesture and we are concerned the gesture to come to the table and discuss a strategy, may result in a similar outcome as the VCA agreement negotiated between the CRA and HUD.**

**It is difficult to comprehend being advised to sign a settlement agreement that does not remedy past discrimination and carries the discrimination into the future.  It is inconsistent with the Council's mission.**

As we discussed, **if the units are not affordable, it will virtually ensure that the vast majority of persons with disabilities that are in desperate need of accessible units that are affordable, will again be denied housing in the federally financed CRA affordable housing developments.**  These properties, when they were first developed, did not conduct any outreach or notify persons with disabilities that affordable housing units were available and did not construct accessible units consistent with the applicable laws.

This means that **the housing is both physically and programmatically inaccessible and is not in compliance with Sec 504 which requires a sufficient range of sizes and amenities** so that individuals with disabilities **have an equal choice of living arrangements,** comparable to other persons seeking housing in the same development, including "the same proportion of affordable units by bedroom size."

**Until the units are retrofitted and affordable, the discrimination persist, the goals and objective in pursuing the litigation in the first place have not been met.  If we are not going to correct the discrimination, then why are we here?**

Our concerns about what happens if the DOF refuses to fund the retrofits appear to be falling on deaf ears. **We want simple language included in the Agreement that states if the CRA for any reason (including the failure by the DOF to fund the retrofits)  is unable to fulfill their responsibilities under the Agreement, it may be considered a breach of the Agreement.**  Both you and Reed have agreed that if the DOF does not fund the retrofits, the Agreement will be breached.  We are requesting that your verbal confirmations be reduced to writing and included in the Settlement Agreement.

Lastly, we are concerned about the current language in the Agreement and how it might impact the FCA case, the other plaintiffs do not have the same concerns, we do not believe our concerns and interest have been adequately addressed and/or protected.  Advising the Council to sign an agreement which could potentially impact the Council's interest in the FCA case is concerning.  We want a carve out for the FCA case.

Sample language that addresses the Council's concerns could state that the Agreement does not release the CRA/LA, Oversight Boards and or Governing Board, "from any claims, damages, penalties, issues, assessments, disputes, or demands arising under the False Claims Act or any other statutory, administrative, regulatory, or common law claims, including but not limited to the common law theories of payment by mistake, unjust enrichment, and fraud."

Additionally, as you know a real concern exist regarding payments made in connection with the Settlement Agreement -  language needs to be included in the Agreement that states any payments made in connection with settling the 504 case, **cannot be used to offset or reduce any claims, damages, penalties, assessments, or demands arising under the False Claims case.**

D5

That being said, I will reach out to Michelle again and other members of the board to address these ongoing concerns.

Regards,

Sharon

**Sharon Kinlaw**
Executive Director
Fair Housing Council of the San Fernando Valley
14621 Titus Street - Suite 100
Panorama City, CA 91402
818-373-1185 (Phone) / 818-373-1193 (Fax)

---

**Sent:** Friday, August 4, 2017, 2:42:1 PM PDT
**From:** Sharon Kinlaw <SKinlaw@gmail.com>
**To:** Mei.Ling818@yahoo.com
**Subject:** Side Agreement Docs

Yesterday, I was going through

**📄 Side Agreement Docs (1).pdf**

You can forward to Scott

**Sharon Kinlaw**
Executive Director
Fair Housing Council of the San Fernando Valley
14621 Titus Street - Suite 100
Panorama City, CA 91402
818-373-1185 (Phone) / 818-373-1193 (Fax)

---

**Date:** Friday, July 28, 2017 at 8:08 AM
**From:** Sharon Kinlaw <SKinlaw@gmail.com>
**To:** David Iyalomhe <David@doiaLaw.com>; Don Bagwell <DBagwell@SkylineHomeLoans.com>; Michelle <AffHsgServices@sbcGlobal.net>; Loretta Kelly-Denkins <NetLoretta1@hotmail.com>; Juanita Bankhead <JBankhead@LAFireCU.org>; Sandy Couch <FYI123@PacBell.net>
**Cc:** Odion Okojie <OkojieLaw@aol.com>
**Subject:** Re: USA, ex FHC. v. City of Los Angeles - FCA Case Update?

Good morning David and Odion

Was the email/ chain to Lisa/ Eric forwarded to Scott as directed? We need to schedule a joint conference call to discuss our joint concerns related to the FCA case, the deadline for Lisa's filing, next steps, etc.

Regards,

Sharon

**Sharon Kinlaw**
Executive Director
Fair Housing Council of the San Fernando Valley
14621 Titus Street - Suite 100
Panorama City, CA 91402
818-373-1185 (Phone) / 818-373-1193 (Fax)

D6

-- On Thursday, July 27, 2017 at 7:44 AM, **Sharon Kinlaw <SKinlaw@gmail.com> wrote:**

David

I noticed that your email to Lisa/Eric did not copy Scott. Could you please forward a copy of the email communication regarding the FCA case to and from Eric/Lisa to Scott. I would like us to convene a conference call between the co-relators to discuss the impending filing and other concerns.

Thanks

Sharon

**Sharon Kinlaw**
Executive Director
Fair Housing Council of the San Fernando Valley
14621 Titus Street - Suite 100
Panorama City, CA 91402
818-373-1185 (Phone) / 818-373-1193 (Fax)

---

**Sent:** Thursday, July 27, 2017, 8:23:55 AM PDT
**From:** Sharon Kinlaw <SKinlaw@gmail.com>
**To:** Mei.Ling818@yahoo.com
**Subject:** Psalms 55

Good morning Mei

A part of my devotion yesterday was reading the 55th Psalms. I was so exhausted last night after cooking for my brother that I fell asleep reading. I normally do my devotion in the morning, but I committed to also doing something before I go to bed at night. I decided to finish up this morning and listen to Psalms 55 (https://www.youtube.com/watch?v=FoguOwJIJQ0).

I know that you are concerned about the **schemes and wiles of our demonic lawyers and their unwise cohorts.** You should be because we know the enemy comes ONLY to steal and kill and destroy and,"

**12** For our struggle is not against flesh and blood, but against the rulers, against the authorities, against the powers of this world's darkness, and against the spiritual forces of evil in the heavenly realms.
**13** Therefore take up the full armor of God, so that when the day of evil comes, you will be able to stand your ground, and having done everything, to stand.
**14** Stand firm then, with the belt of truth fastened around your waist, with the breastplate of righteousness arrayed …

We can't allow these people to have destroy our peace, I know they are constantly scheming, but I know and trust that GOD IS !!!!!!!!!!

https://www.youtube.com/watch?v=5dNVFbTxqrc

https://www.youtube.com/watch?v=wWOWZqebR9Y

Sharon Kinlaw
Executive Director
Fair Housing Council of the San Fernando Valley
14621 Titus Street Suite 100
Panorama City, CA 91402
818-373-1185 (Phone)
818-373-1193 (Fax)

D7

**Sent:** Saturday, July 15, 2017, 3:48:04 PM PDT
**From:** Sharon Kinlaw <SKinlaw@gmail.com>
**To:** Mei.Ling818@yahoo.com
**Subject:** Fwd: Activity in Case 2:11-cv-00974-PSG-JC United States et al v. City of Los Angeles et al Motion for Leave - Copies of Documents Attached

Mei

I just opened my email a minute ago and found these papers. I don't know the best way to help you, but I want to be able to do whatever I can. I am concerned about our own lawyers. I think there are probably other documents in the file related to global settlement discussions that we know nothing about, but which may be helpful. We have again requested a copy of the case file. Perhaps you can find out from Scott how the Council can be helpful; I would be willing to sit for a deposition and talk about our experiences or sign a declaration to be filed with your bar complaint. I personally think anything that demonstrates their pattern of putting their interest ahead of their clients, lying, scheming refusing to adhere to instructions, refusing to disclose and/or turn over information should be subject to professional scrutiny.

Sharon

Sharon Kinlaw
Executive Director
Fair Housing Council of the San Fernando Valley
14621 Titus Street Suite 100
Panorama City, CA 91402
818-373-1185  (Phone)
818-373-1193  (Fax)

---

**Date:** Saturday, July 15, 2017 at 3:17 PM
**From:** David Iyalomhe <David@doiaLaw.com>
**To:** Sharon Kinlaw <SKinlaw@gmail.com>
**Cc:** Don Bagwell <DBagwell@SkylineHomeLoans.com>;  Sandy Couch <FYI123@PacBell.net>;
Juanita Bankhead <JBankhead@LAFireCU.org>;   Loretta Kelly-Denkins <NetLoretta1@hotmail.com>;
Michelle <AffHsgServices@sbcGlobal.net>;   Odion Okojie <OkojieLaw@aol.com>
**Subject:** Re: Activity in Case 2:11-cv-00974-PSG-JC United States et al v. City of Los Angeles et al Motion for Leave - Copies of Documents Attached

Sharon:

Please find attached the copies of the documents that were filed by attorneys to the Relman Firm in connection with the FCA case.

David

D8

**Sent:** Saturday, June 24, 2017, 5:02:05 PM PDT
**From:** Sharon Kinlaw <SKinlaw@gmail.com>
**To:** Mei.Ling818@yahoo.com
**Subject:** Fwd: United States v. City of Los Angeles (11-cv-974): Relman, Dane &Colfax's motion for leave to appear

Please ignore my grammatical errors, I am not feeling well, but wanted to get something over to them before any more phone calls take place.

Also, I was **wondering if Scott can now subpoena the records from the City, HUD, DRC and from the Relman firm related to side letter, global settlement discussions, VCA, DOJ investigations, credits the joint meetings, etc. Perhaps Scott can interview Sandy and I about anything we remember that might be helpful. I realize he would have to do this in the presence of the lawyers, but that is okay too.**

Sharon Kinlaw
Executive Director
Fair Housing Council of the San Fernando Valley
14621 Titus Street - Suite 100
Panorama City, CA 91402
818-373-1185 (Phone)
818-373-1193 (Fax)

---

**Date:** Saturday, June 24, 2017 at 3:14 PM
**From:** Sharon Kinlaw <SKinlaw@gmail.com>
**To:** Odion Okojie <OkojieLaw@aol.com>
**Cc:** Sandy Couch <FYI123@PacBell.net>, David Iyalomhe <David@doiaLaw.com>
**Subject:** Re: United States v. City of Los Angeles (11-cv-974): Relman, Dane & Colfax's motion for leave to appear

Hi Odion

We need to discuss this. I am concerned why they would make this request from us? I think we may also need to have a conversation with Scott and Mei about this request. Mei Ling is our co-relator, we need to work together in our joint efforts and interest to ensure the best outcome in the FCA case and for accessible housing and increased housing & economic opportunities for persons with disabilities in Los Angeles.

The Covington law firm request is not in the best interest of the relators; in fact, **their clients actively worked against our best interest and probably still are.** The depth and extent of **their collusion with the City and maybe even the CRA** is still unknown and may be the reason why they have not provided us with all of the correspondence and documents in the case file. **The Council has already been on the receiving end of the Relman's firms' duplicity, the disabled community is still waiting some 10 years later for accessible affordable housing** and continued to be harmed. I have no intention of aiding the Relman firm in their latest scheme; this is a very critical time, I don't want to see the Quid Pro Quo scheme that was carried out in Saint Paul, Minnesota replicated in Los Angeles as it relates to the FCA case.

Sharon

Sharon Kinlaw
Executive Director
Fair Housing Council of the San Fernando Valley
14621 Titus Street - Suite 100
Panorama City, CA 91402
818-373-1185 (Phone)
818-373-1193 (Fax)

D9

**Sent:** Monday, June 22, 2017 12:54 PM
**From:** Sharon Kinlaw <SKinlaw@gmail.com>
**To:** Odion Okojie <OkojieLaw@aol.com>
**Cc:** David Iyalomhe <David@doiaLaw.com>; Sandy Couch <FYI123@PacBell.net>
**Subject:** FW: Relman Dane Emails

Odion

**Any documents that Council has in its possession should be provided to Scott Moore for the purpose he indicated in his email.** Throughout the litigation process, we were informed by the Relman firm that the City was insisting on a global settlement and that the 504 litigation would not be settled unless the FCA case was also settled. On several occasions, we raised concerns about how the City could dictate those terms when the other two plaintiffs in the 504 case were not plaintiffs in the FCA case.

In addition to raising objections about the settlement strategy, **we were discouraged from communicating with Mei Ling about our joint interest in the FCA case and were told a number of untruths about Mei Ling as it related to the extension of the seals.** We have since learned that she was told a number of things about the FHC that are and were simply untrue.

**We learned (a year after the incident occurred) that both ILCSC and CALIF were informed about the FCA case when the FHC had strict instructions not to reveal the matter to anyone.** We now believe that this and other communications may have led to the ongoing tension between the FHC and the other two plaintiffs. We also believe it impacted the FHC's damages as the Relman firm was constantly reminding us that the FCA case was going to yield additional monies much larger than the 504 case.

There has not been any discussion with Mei Ling regarding the tension that exists with the other two plaintiffs and why, so we should not get into any details about that matter, but **any documents we have related to the global settlement, including communications with the City should be shared with Mr. Moore.** This should not be communicated back to the Relman firm.

If you have any additional questions, please feel free to call.

Sharon

Sharon Kinlaw - Executive Director
Fair Housing Council of the San Fernando Valley
14621 Titus Street - Suite 100
Panorama City, CA 91402
818-373-1185 (Phone)   818-373-1193 (Fax)

---

**Sent:** Saturday, March 4, 2017 3:06 AM
**From:** Sharon Kinlaw <SKinlaw@gmail.com>
**To:** David Iyalomhe <David@doiaLaw.com>; Odion Okojie <OkojieLaw@aol.com>; Mei.Ling818@yahoo.com; Scott P. Moore <SPMoore@BairdHolm.com>
**Cc:** Sandy Couch <FYI123@PacBell.net>
**Subject:** Re: March 3rd Conference Call . . . RE: City of LA- Conversation with Lisa Palombo

David, Odion or Scott

Did anyone happen to get a copy of the stipulation agreement between the City and the DOJ? I am curious as to the length of the extention in the event the mediation does not resolve the matter. When exactly does the agreed upon truce expire?

Regards,
Sharon
**Sharon Kinlaw** - Executive Director
Fair Housing Council of the San Fernando Valley
14621 Titus Street - Suite 100
Panorama City, CA 91402
818-373-1185 (Phone) / 818-373-1193 (Fax)

D10

**Sent:** Friday, March 3, 2017, 1:49:10 PM PST
**From:** Sharon Kinlaw <SKinlaw@gmail.com>
**To:** David@doiaLaw.com; OkojieLaw@aol.com; Mei.Ling818@yahoo.com; Scott <SPMoore@BairdHolm.com>
**Cc:** Sandy Couch <FYI123@PacBell.net>
**Subject:** Re: March 3rd Conference Call . . . RE: City of LA- Conversation with Lisa Palombo

All

In the event I have difficulty making the call at 3:00 p.m., I want to make sure my position is articulated. It was extremely disappointing to read the contents of the email regarding Lisa's update. This really feels like much of the same game playing with a new cast of characters. This is an attempt by the City and its newly hired attorney to continue with the status quo -STALL-STALL-STALL until we can somehow make this thing go away.



It now appears that the City is once again in the driver's seat making extremely unreasonable demands and Lisa is going along for the ride, while persons with mobility and sensory disabilities be damned. This proverbial merry-go-round must end. Why is the City being allowed to continue to dictate the terms of settlement? The deadline for the City's self-imposed, self-serving demands should have ended when the recommendation to intervene was made (if Lisa and Eric are being truthful). The U.S. government is aiding and abetting the City in its continuing disregard for the civil rights of individuals with disabilities. The government is supposed to respect and protect the rights of individuals and not assist with trampling on those rights or allow anyone to abuse limited public resources.

The failure of the government to promptly address the false certifications of the City has severe consequences for those in need of affordable accessible housing. It's been at least 10 years that the City was put on notice and not 1 single unit has been made accessible by those responsible for the systemic discrimination or those in charge of enforcing the anti-discrimination laws.

I have clients that have died waiting on these elusive units and people remain abandoned in nursing homes and living on the cold, hard concrete of Los Angeles' streets - betrayed by their own government who is too busy coddling the City and protecting its lies.

That amounts to shameful and egregious NEGLECT. The US Attorneys have become insidious gatekeepers protecting the status quo. The entities polled about the mediator are the inhabitants of the 504 cesspool legal team - greed driven impostors that milked the taxpayers for every imaginable cent possible and practiced deceit and obfuscation at every turn. I would not trust or rely on them for anything. This includes HUD and the civil rights division of the DOJ who has yet to address the bogus settlement agreement they reached with the CRA.

In the sidewalk case, the City is passing bonds and also trying to make homeowners and small business owners responsible for their neglect while the mediator "pollees" moved on to their next great heist – the 504 case.

This is deja-vu all over again - stalling tactics buttressed by selective amnesia and GLOBAL lies. How in the world can the DOJ agree to maintaining a seal and not seeking intervention? Whose interest are they protecting? We need to file a notice of our intention to respond. You are either a part of the solution or a part of the problem. The scales of justice are tilting in the wrong direction and I feel as if though Lisa and Eric have a big grape kool-aid stain around there lips. It does not matter if it got there by accident or on purpose – the outcome is still the same.

THERE IS NO ACCESSIBLE AFFORDABLE HOUSING IN THE CITY OF LOS ANGELES AND NO DATE CERTAIN WHEN THE FIRST UNIT WILL BE AVAILABLE FOR MOVE-IN.

Not Happy
Sharon

Sharon Kinlaw
Executive Director
Fair Housing Council of the San Fernando Valley
14621 Titus Street Suite 100
Panorama City, CA 91402
818-373-1193 (Phone) / 818-373-1193 (Fax)

D11

**Sent:**     Friday, March 03, 2017   10:19 AM
**From:**    Scott P. Moore  <SPMoore@BairdHolm.com>
**To:**        Mei.Ling818@yahoo.com;  Odion Okojie <OkojieLaw@aol.com>;
              David Iyalomhe <David@DOIALaw.com>
**Subject:** City of LA - Conversation with Lisa Palombo

All,

I spoke with Lisa yesterday and wanted to provide everyone an update.



A few notes on the City's new lawyer.  She worked in the criminal section of the United States Attorney's office, but has defended FCA claims since leaving the USA office.  Lisa stated ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ I find such naked aggression from a lawyer generally is favorable to the other side.  Her blustering will not have much impact on a seasoned mediator and Judge like Judge Infante.  My guess is she does this mostly as an attempt to show her client how tough she is.  She will also try to maximize the fees she can get from this case in a short period of time.  I still believe this case will likely settle, but she will try to get everything she can out of the case before it does.

D12

Although all of our patience is running thin, I remain confident that this will be resolved through the mediation.

Mei and I talked yesterday and believe it is a good idea to have a conference call this afternoon if possible. Please let me know if you are available from either Noon to 1 p.m. or 2-3 (Pacific Time).

Thanks,
Scott

**Scott P. Moore**
Baird Holm LLP
1700 Farnam Street - Suite 1500
Omaha, NE  68102-2068
www.BairdHolm.com

402.636.8268  Direct Dial Phone
402.344.0588  Fax
SPMoore@BairdHolm.com

# BAIRD HOLM
**ATTORNEYS AT LAW**

This communication, along with any attachments, is covered by federal and state law governing electronic communications and may contain confidential and legally privileged information. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, use or copying of this message is strictly prohibited. If you have received this in error, please reply immediately to the sender and delete this message. Thank you.

---

**Sent:** Monday, January 30, 2017  12:52 PM
**From:** Palombo, Lisa (USACAC) <Lisa.Palombo@usDOJ.Gov>
**To:** Scott P. Moore <SPMoore@BairdHolm.com>; David Iyalomhe <David@doialaw.com>;
Odion Okojie <OkojieLaw@aol.com>
**Cc:** Schmelzer, Eric (CIV) <Eric.Schmelzer@usDOJ.Gov>
**Subject:** City of LA: Motion to Unseal

Counsel,

Let's plan on talking at 1 p.m. Pacific tomorrow. At this time, we don't think there is the need for an in-person meeting. I'm looking into getting a call-in number.

Thanks,
Lisa

**LISA A. PALOMBO**
Assistant United States Attorney
300 N. Los Angeles St., Ste. 7516
Los Angeles, CA  90012
Off: (213) 894-4042;  F: (213) 894-2380
Email:  Lisa.Palombo@usDOJ.Gov

D13

**Sent:** Monday, January 30, 2017  7:18 AM
**From:** Scott P. Moore <SPMoore@BairdHolm.com>
**To:** Eric Schmelzer <Eric.Schmelzer@usDOJ.Gov>;  Lisa Palombo  <Lisa.Palombo@usDOJ.Gov>
**Cc:** Mei.Ling818@yahoo.com;  Odion Okojie <OkojieLaw@aol.com>;
     David Iyalomhe  <David@doiaLaw.com>;   Sharon Kinlaw <SKinlaw@gmail.com>
**Subject:** U.S.A. ex rel. v. City of Los Angeles

Lisa and Eric,

Thank you for responding to our email so quickly.  The Co-Relators are available to participate in a conference call on Tuesday, January 31 at noon or anytime thereafter.  We assume Eric will be participating by telephone and not in your office.  Scott will also not be in Los Angeles.  The Co-Relators request that Odion, David, Mei, Sharon, and Sandra Couch come to Lisa's office for the conference and that Scott and Eric participate by telephone.  Please let us know your objections to Odion, David, Mei, Sharon, and Sandra attending in person.

We look forward to your response to our request regarding the meeting on Tuesday.

Thanks,
Scott, Odion, and David

**Scott P. Moore**
Baird Holm LLP
1700 Farnam Street  -  Suite 1500
Omaha, NE  68102-2068
www.BairdHolm.com
402.636.8268  Direct Dial Phone
402.344.0588  Fax
SPMoore@BairdHolm.com

---

**Sent:** Friday, January 27, 2017  12:52 PM
**From:** Palombo, Lisa (USACAC) <Lisa.Palombo@usDOJ.Gov>
**To:** Scott P. Moore <SPMoore@BairdHolm.com>;  David Iyalomhe;  Odion Okojie <OkojieLaw@aol.com>
**Cc:** Schmelzer, Eric (CIV) <Eric.Schmelzer@usDOJ.Gov>
**Subject:** City of LA: Motion to Unseal

Counsel,

Thank you for your email.  We would like to schedule a conference call with you to discuss these developments.  Please let me know if you can be available on Tuesday, January 31 at noon Pacific or anytime thereafter.  Thank you!

**LISA A. PALOMBO**
Assistant United States Attorney
300 N. Los Angeles St., Ste. 7516
Los Angeles, CA  90012
Off: (213) 894-4042;  F: (213) 894-2380
Email:  Lisa.Palombo@usDOJ.Gov

D14

**Sent:** Wednesday, January 26, 2017  8:39 PM
**From:** Scott Moore <SPMoore@BairdHolm.com>
**To:** Eric Schmelzer <Eric.Schmelzer@usDOJ.Gov>; Lisa Palombo <Lisa.Palombo@usDOJ.Gov>
**Cc:** Sharon Kinlaw <SKinlaw@gmail.com>; Mei.Ling818@yahoo.com;
David Iyalomhe <David@doiaLaw.com>; Odion Okojie <OkojieLaw@aol.com>
**Subject:** U.S.A. ex rel. v. City of Los Angeles


Lisa and Eric,

This morning we received the City's motion to extend the seal of the complaint and for an order directing the parties to participate in mediation.  We believe a face-to-face meeting is crucial in light of this development.  We ask that we have the meeting next week at your offices in Los Angeles.  We will adjust our calendars to accommodate yours to ensure we have the meeting in advance of the date the seal is set to expire on February 6, 2017.

With regard to the City's motion,



The Co-Relators believe a face-to-face meeting is needed as soon as possible to discuss this development. We look forward to hearing from you regarding the dates and times that work for you for a meeting next week.

Thanks,
Scott, Odion, and David

**Scott P. Moore**
Baird Holm LLP
1700 Farnam Street  -  Suite 1500
Omaha, NE  68102-2068
www.BairdHolm.com

402.636.8268  Direct Dial Phone
402.344.0588  Fax
SPMoore@BairdHolm.com

# BAIRD HOLM LLP
## ATTORNEYS AT LAW

This communication, along with any attachments, is covered by federal and state law governing electronic communications and may contain confidential and legally privileged information.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, use or copying of this message is strictly prohibited.  If you have received this in error, please reply immediately to the sender and delete this message.  Thank you.

**Sent:**      Thursday, January 26, 2017  6:53 PM
**From:**      Sharon Kinlaw <SKinlaw@gmail.com>
**To:**          David Iyalomhe <David@doiaLaw.com>
**Cc:**          Mei.Ling818@yahoo.com;  Odion Okojie <OkojieLaw@aol.com>;
                  Scott P. Moore  <SPMoore@BairdHolm.com>
**Subject:** Re: City of LA – FCA

I think it is important to include a sentence that states the continued delay harms the Fair Housing Council's mission to eradicate housing discrimination in the communities it serves.

Or include a sentence that states the Council's goal to advance the civil rights of persons with disabilities and efforts to educate and empower victims of discrimination jas been frustrated and is being irreparably harmed with the continued delay tactics by the City.

Or the continued delay denies the constitutional due process rights of persons with disabilities as it denies justice by locking them out of the administrative and legal enforcement process in the same way it has locked persons with disabilities out of accessible affordable housing opportunities in the City.

Lastly, we should point out that it is the City's own insistence of a global settlement framework that has delayed the process.

D16

-- **On January 26, 2017  6:14 PM,  David Iyalomhe <David@doiaLaw.com> wrote:**

Mr. Moore:

Thanks for providing the initial draft of the correspondence to Lisa / Eric.  We only had minor comments / changes (**in bold** in the below mail).  Please look them over and if they are acceptable, the email is ready to go out to the DOJ attorneys.

Please let us know if you have further comments.

David Iyalomhe
Co-counsel to FHC

_____

Lisa and Eric,

**This morning we received from the Relman firm defendant's motion for an extension of the seal to the complaint and for an order for the parties to participate in mediation filed by defendant for** an additional 90 days and to compel the parties to mediate before a sitting District Court Judge in the Central District of California.  We believe a face-to-face meeting is crucial in light of this development.  We ask that we have the meeting **sometime next week** at your offices in Los Angeles.



D17

The Co-Relators believe a face-to-face meeting is needed as soon as possible to discuss this development. We look forward to hearing from you regarding which of the dates and **times work** for the meeting.

Thanks,
Scott, Odion, and David

---

**Sent:** Thursday, January 26, 2017, 4:52:24 PM PST
**From:** Scott P. Moore <SPMoore@BairdHolm.com>
**To:** Odion Okojie <OkojieLaw@aol.com>; David Iyalomhe <David@doiaLaw.com>;
Mei Ling <Mei.Ling818@yahoo.com>; Sharon Kinlaw <SKinlaw@gmail.com>
**Subject:** City of LA

All,

I have drafted the proposed email below. Please review and provide me any comments so I can send this out tonight. A couple of thoughts:

**1.** I do not think that we should tell them in this email that we plan to oppose the motion and participate in mediation. That may encourage them to agree to another extension on the seal to keep us from participating in a mediation. I believe we disclose that position at a later date;

**2.** Please provide the dates that you are all available next week for the meeting. If I can make it in person I will. If not, I will participate by phone. I think getting the meeting set as soon as possible is more important than me being there in person.

**3.** I will be sending the motion to withdraw papers later tonight.

Finally, I am sure you feel the same as me in that it is nice to have the Co-Relators working as a team. I believe our voice is so much more stronger together!

Thanks,
Scott

**Scott P. Moore**
Baird Holm LLP
1700 Farnam Street - Suite 1500
Omaha, NE 68102-2068
www.BairdHolm.com

402.636.8268 Direct Dial Phone
402.344.0588 Fax
SPMoore@BairdHolm.com

# BAIRD HOLM LLP
### ATTORNEYS AT LAW

This communication, along with any attachments, is covered by federal and state law governing electronic communications and may contain confidential and legally privileged information. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, use or copying of this message is strictly prohibited. If you have received this in error, please reply immediately to the sender and delete this message. Thank you.

D18

**Sent:** Wednesday, January 25, 2017, 2:02:52 PM PST
**From:** Scott P. Moore <SPMoore@BairdHolm.com>
**To:** Odion Okojie <OkojieLaw@aol.com>
**Cc:** David Iyalomhe <David@doialaw.com>; Mei.Ling818@yahoo.com
**Subject:** RE: Relman Dane Withdrawal

Odion,

I am available tomorrow. Please let me know what time works for you. I have cc'd Mei on this email as she has asked me to cc her on all communications regarding this matter.

Thanks,

**Scott P. Moore**
Baird Holm LLP
1700 Farnam Street - Suite 1500
Omaha, NE 68102-2068
402.636.8268 Direct Dial Phone / 402.344.0588 Fax

---

**Sent:** Wednesday, January 25, 2017 3:25 PM
**From:** Odion Okojie <OkojieLaw@aol.com>
**To:** Scott P. Moore <SPMoore@BairdHolm.com>
**Cc:** David Iyalomhe <David@doialaw.com>
**Subject:** Re: Relman Dane Withdrawal

Hello Scott:

Please let me know when we can talk regarding the status of the stipulation to lift the seal discussed during our last phone conference with Lisa and Eric. I also believe we should request an in-person meeting with the DOJ folks.

Let me know what you think.

**Odion L. Okojie**
Law Offices of Odion L. Okojie
880 West First Street, Suite 313
Los Angeles, California 90012
email: Info@OkojieLaw.com; OkojieLaw@aol.com
Telephone: 213 626 4100 / Facsimile: 213 626 6900

---

**Sent:** Thursday, January 19, 2017 4:25 PM
**From:** Odion Okojie <OkojieLaw@aol.com>
**To:** Scott P. Moore <SPMoore@BairdHolm.com>
**Cc:** David Iyalomhe <David@doialaw.com>
**Subject:** Re: Relman Dane Withdrawal

Scott:

We haven't heard from the Relman firm regarding when they will withdraw from representing the FHC in the FCA case.

Please, can you send me a copy of the letter you received from the D.C. law firm (Covington) concerning the potential fee dispute with Mei Ling. I sent you last weekend a copy of the email Reid Colfax sent to Sharon/FHC regarding their fees in the FCA case.

Thanks.

**Odion L. Okojie**
Law Offices of Odion L. Okojie
880 West First Street, Suite 313
Los Angeles, California 90012
email: Info@OkojieLaw.com; OkojieLaw@aol.com
Telephone: 213 626 4100 / Facsimile: 213 626 6900

D19

**Sent:** Thursday, January 26, 2017  8:09 PM
**From:** Sharon Kinlaw  <SKinlaw@gmail.com>
**To:** Scott P. Moore  <SPMoore@BairdHolm.com>
**Cc:** Odion <OkojieLaw@aol.com>;  Mei.Ling818@yahoo.com;  David Iyalomhe <David@doiaLaw.com>
**Subject:** RE: City of LA – FCA

Scott

Mei and started on this journey many years ago.  Odion was the only attorney early on to help Mei in her individual complaint.  At that time we had no idea what we stumbled into.  At some point we knew that something was very wrong.

It was with that inkling you and others were invited to present at the Laws and Litigation conference, we were trying to learn, me in particular because Theresa Kitay was giving me the blues with her nonsensical responses as was HUD.

Here we all are together, fulfilling our perspective roles for such a time as this **on a journey towards justice that can and will change the lives and housing conditions for many.**  I know without a doubt that we all had to travel our own paths with many potholes to get here.

I am glad to be here with everyone and I am extremely optimistic about things to come.  Thank you to all of you  -  GOD's ragtag team of willing workers.  It was difficult even in the beginning to get anyone to

---

**Sent:** Sunday, **December 18, 2016**  9:53 PM
**From:** Sharon Kinlaw  <SKinlaw@gmail.com>
**To:** Michael Allen; John Relman;  Odion <OkojieLaw@aol.com>;  David Iyalomhe <David@doiaLaw.com>
**Cc:** Lisa.Palombo@usDOJ.Gov;  Eric.Schmelzer@usDOJ.Gov;  Loretta Kelly-Denkins;  Juanita Bankhead;  Don Bagwell;  Michelle White  <AffHsgServices@sbcGlobal.net>;  Sandy Couch  <FYI123@PacBell.net>
**Subject:** False Claims Case: Termination of Services

**Michael Allen and John Relman**

**We believe your firm has not been forthcoming as it relates to your communications with the City (and others) about the FCA case.  As such, we believe that the civil rights of persons with disabilities, taxpayer dollars and the relator's interest have been severely put at risk.**

After many months of thoughtful deliberation contemplating this decision, **we are now requesting that Relman, Dane & Colfax lawyers have no further communication (on behalf of the FHC) with Lisa Palombo, Eric Schmelzers or any other DOJ, HUD or City employee including, but not limited to Miquel Santana, Jim Clark or Harvey Korman as it relates to the False Claims matter and/or global settlement discussions.**

Moreover, we believe **Relman, Dane & Colfax have disqualified itself from the False Claims Act case. For some time now, we have expressed our concern related to your law firm using the FCA matter in a global settlement context as leverage in the 504 case, we have also made known our objections regarding your communications with the City regarding the "side letter".**

**As a matter of justice, we believe it is reprehensible under any circumstances to provide a "credit" to offset damages paid for deceiving taxpayers and violating civil rights law.  To request or suggest otherwise is offensive to the Fair Housing Council's mission and sets a bad precedent as a matter of moral turpitude.**

Lastly, there are several other **previously identified concerns** which call into question how **your firm's fiduciary obligations to the Fair Housing Council have not been met.**  We have requested and are waiting to receive your billing records; we ask that you forward the information to us so that we may immediately begin to discuss and negotiate your fees and expenses relative to the retainer agreement.

Should you have any further questions or concerns, we ask that you direct them to David Iyalomhe and / or Odion Okojie.

Respectfully submitted,

**Sharon Kinlaw  -**  Executive Director / Fair Housing Council of the San Fernando Valley

**Sent:** Monday, December 5, 2016 4:22 AM
**From:** Sharon Kinlaw <SKinlaw@gmail.com>
**To:** Mei.Ling818@yahoo.com
**Cc:** OkojieLaw@aol.com; David@doiaLaw.com; Scott Moore <SPMoore@BairdHolm.com>
**Subject:** Re: Conference Call RE: FCA Case

Everyone

For some time now **I have had reservations about how the FCA case and the 504 case have been linked together. I firmly believe that the FCA case has been compromised and that the government has not necessarily followed the proper protocol based on what we were initially told** about the how the process would work.

**The fact that the City is dictating when and how the case should settle** and appear to have convinced the government that ████████████████████████████████████████████ ████████████████ **This reasoning is very disturbing to me because it completely discounts the non-benefit of individuals with mobility and sensory disabilities who were excluded from and continue to be denied accessible housing.**

More so, **I am unable to determine the rationale for the** ████████████ **offer and the subsequent offers. I am still unclear if a demand was actually made and who first suggested the** ████████ ██ **figure.** Was it a formal demand or an offer? This as well as the **mastermind behind the** ████ ██████ framework should be explored because somehow the false certifications to the City regarding the accessibility of the housing seem to have become inconsequential leading to a significant reduction in the claim.

I believe **more time and consideration has been spent on floating and developing a public relations response and cover-up** instead of enforcing the law and rectifying the problem.

I believe that **keeping the relators separate has worked to the advantage of the City; I am uncomfortable with the secrecy and believe that the seal has created a cover and is at this point harmful to the community.** Taxpayers have a right to know how federal dollars have been mismanaged and how the City has shortchanged and discriminated against individuals with disabilities for twenty-five plus years in the development, construction, and implementation of the City's affordable housing portfolio.

I believe we should **send a formal letter to Lisa about our joint concerns related to:**

1. The **inappropriate comingling of the private litigation with the FCA case** and **manipulation of the HUD VCA process.**
2. Our concerns about the **misleading tactics by the Relman firm to coerce the continuing extensions on the seal;** we should request the immediate lifting of the seal.
3. Our concerns about **inappropriate communications with the City** and others **to leverage the cases.**
4. Our concerns about **Eileen Decker's recusal, an entire year after her appointment to the LA DOJ** office; and
5. **John Relman and Michael Allen's involvement in the Saint Paul matter.**

We need to make some strategic moves and join forces; we need to officially put our concerns on the record with the government to protect the civil rights of persons with disabilities and the interest of taxpayers.

Lastly, we need to request every single communication between all of the parties regarding the 504, FCA and VCA cases.

In service

Sharon

D21

**Sent:** Wednesday, November 30, 2016  10:43 AM
**From:** Sharon Kinlaw <SKinlaw@gmail.com>
**To:** Reed Colfax <RColfax@RelmanLaw.com>
**Cc:** David Iyalomhe <David@doiaLaw.com>; Odion Okojie <OkojieLaw@aol.com>;
Dara.Schur@DisabilityRightsCA.org; Autumn.Elliott@DisabilityRightsCA.org; <MAllen@RelmanLaw.com>
Loretta Kelly-Denkins <NetLoretta1@hotmail.com>; Sandy Couch <FYI123@PacBell.net>
**Subject:** Re: ILC v. City of LA Follow-up / Settlement Discussions

All

The Council has made its position clear;  we believe that in addition to there being a conflict as it relates to RDC, DRC, DRLC and the Geffen firm, there are other ethical and moral considerations that are monumental and raise ongoing serious concerns which made it imperative for the Council to obtain other counsel to represent its interests.   The attorneys in this case from RDC/DRC are not working in the best interest of the Fair Housing Council and have hijacked the litigation to suit their own interests and pockets.

As such, Odion and David were hired by the Council to represent its interests. Despite several written and verbal directives for RDC and DRC to work cooperatively through this critical period to ensure the best outcome, Odion and David have been, and continue to be purposefully isolated, ignored, disrespected, and intentionally left out of the process.

As such, **John Relman does not have the Council's permission to soley engage in settlement discussions with the CRA or anyone else from the law firms or legal organizations listed above.** Furthermore, **the Council adamantly objects to any further settlement discussions taking place unless David and Odion are full participants**.

Moreover, **there have been ongoing meetings and discussions without the Council or their attorneys' knowledge or inclusion.** These meetings and discussions in my opinion are improper, harmful to the Council's mission and in direct opposition to the desired outcome of the Council having engaged in this complaint.

The **past conduct of the attorneys have resulted in adverse consequences for the Council,** including, but not limited to, the **manipulation the Council's damages, using the FCA to leverage the outcome in the 504 case**, engaging in discussions with the City about representation, **disregarding the Council's instructions,** refusing to cooperate with Odion and David to avoid further harm to the Council's mission, **filing unauthorized documents with the Court, refusing to provide communications between the City, CRA/LA and others in a timely manner,** refusing to allow the Council to supplement discovery response to reflect its true damages, **assisting the other plaintiffs with amending their initial responses to gain a financial advantage over the Council** who conducted the lion share of the research and investigation in the development of the complaint, **disclosing the FCA matter to others without discussing with the Council in advance and being intentionally misleading.**

The Relman firm and the other attorneys have been on notice since April that the Council intended to and did hire separate counsel to protect its interest going forward regarding all matters pending before the court, including future monitoring.  That being said, **the above is not a complete list of the Council's concerns, but weighed heavily in the Council's decision to initially retain David and Odion.**

Any concerns that you may have regarding "the time-sensitive elements" to ensure we are all on the same page going forward may be academic If we are unable to immediately resolve this issue as outlined above.

Respectfully,

Sharon Kinlaw

D22

| | |
|---|---|
| **Sent:** | Wednesday, October 19, 2016  3:56 AM |
| **From:** | Sharon Kinlaw <SKinlaw@gmail.com> |
| **To:** | Michael Allen <MAllen@RelmanLaw.com> |
| **Cc:** | Laura Arandes; Sharon Kinlaw; Sandra Couch; Don Bagwell; Michelle White; Loretta Kelly-Denkins; JBankhead@LAFireCU.org;  OkojieLaw@aol.com;  David@doialaw.com;  FYI123@PacBell.net; Jennifer Klar;  Scott Chang <SChang@RelmanLaw.com>;  John Relman <JRelman@RelmanLaw.com> |
| **Subject:** | Re: Settlement Agreement |

**Michael**

We will agree to disagree.  I know it is important that you defend your position, but **we have a very different recollection of the facts about who and what prompted any particular communication.** That being said, we will agree to disagree.

As far the relationship with the Relman firm, you will recall that **Odion's office had to be hired to protect the Council's interest,** which was documented in several of the emails sent to your attention.  Additionally, **once we were notified by John Relman at the April 14, 2015, meeting downtown  -  that in the midst of the litigation - your firm offered to represent the City in an action against the owner developers, which created alarming concerns.**

As a result **it became increasingly difficult to have confidence in your intentions.  Added to this, was the complete disregard for the Council's years of hard work and sacrifice and your firm's cavalier dismissal of the Council's damages.**

Furthermore, because **to date your firm has not sent all of the documents requested and instead have chosen to sanitize** and send only what you deem responsive to my request **is unacceptable.**

**More disturbing is the fact that the Relman firm's recent Motion for Attorney's fee filed under seal** with the Court,  **could have easily provided to the Council prior to filing them with the Court** or concurrent with the filing.  Instead **your firm chose to file the motion with the Court under seal and erroneously state that "Plaintiffs support their Motion for Attorneys' fees with detailed, contemporaneous time records billed by attorney and paralegals assigned to this case".**

**The Council did not approve of the Motion because we have not seen it, did not know it was being filed and your office has refused to provide the "detailed, contemporaneous time records billed by attorneys and paralegals assigned to this case."  In fact, we were told that these detailed records are not maintained for contingency fee cases.**

I am painstakingly going through the documents that have been sent and will be responding to Jenn later regarding outstanding request.  In the interim, please provide copies of ALL of the documents submitted to the Court under seal pursuant to the Motion for Attorney's fees.

Lastly, the surprise filing was July 29, 2016.  **At this point, not one (1) single unit to our knowledge has been retrofitted, the goal of this litigation was to ensure that the housing is programmatically and physically accessible to individuals with disabilities, not to generate fees.**  We will gladly celebrate this "landmark" litigation, once the retrofitting begins and Angelenos languishing in nursing homes, on the street and/or living in inaccessible housing have a place to call home that meets their individual disability related needs.

**As guardians of the public trust, residents of the City, and devoted civil rights advocates - the goal of this litigation to increase housing choice and equal housing opportunities for our disabled brothers and sisters is extremely important.**

I await receipt of the documents submitted to the Court on October 7, 2016 regarding your fees.

Thank you

Sharon

D23

Sent:   Wednesday, October 19, 2016  3:56 AM
From:   Sharon Kinlaw <SKinlaw@gmail.com>
To:     Michael Allen <MAllen@RelmanLaw.com>
Cc:     Laura Arandes <LArandes@RelmanLaw.com>;  Sharon Kinlaw <SKinlaw@FairHousingCouncil.org>;
        Sandra Couch <SCouch@FairHousingCouncil.org>;  Don Bagwell <DBagwell@SkylineHomeLoans.com>;
        Michelle White <AffHsgServices@sbcGlobal.net>;  Loretta Kelly-Denkins <NetLoretta1@hotmail.com>;
        JBankhead@LAFireCU.org;  OkojieLaw@aol.com;  David@doiaLaw.com;  FYI123@PacBell.net;
        Jennifer Klar <JKlar@RelmanLaw.com>;  Scott Chang <SChang@RelmanLaw.com>;
        John Relman <JRelman@RelmanLaw.com>
Subject: Re: Settlement Agreement


**Michael**

We will agree to disagree. I know it is important that you defend your position, but we have a very different
recollection of the facts about who and what prompted any particular communication. That being said, we
will agree to disagree.

As for the relationship with the Relman firm, you will recall that Odion's office had to be hired to protect the
Council's interest, which was documented in several of the emails sent to your attention. Additionally,
once **we were notified by John Relman at the April 14, 2015, meeting downtown - that in the midst
of the litigation - your firm offered to represent the City in an action against the owner developers,
which created alarming concerns.**

As a result it became increasingly **difficult to have confidence in your intentions.** Added to this, was
the complete disregard for the Council's years of hard work and sacrifice and **your firm's cavalier
dismissal of the Council's damages.** Furthermore, because to date **your firm has not sent all of the
documents requested** and instead have chosen to **sanitize** and send only what you deem responsive
to my request is unacceptable.

More **disturbing** is the fact that the **Relman firm's recent Motion for Attorney's fee filed under seal**
with the Court could have easily been provided to the Council prior to filing them with the Court or
concurrent with the filing.  Instead, **your firm chose to file the motion with the Court under seal** and
**erroneously state that "Plaintiffs support their Motion for Attorneys' fees with detailed,
contemporaneous time records billed by attorney and paralegals assigned to this case."**

The **Council did not approve of the Motion because we have not seen it, did not know it was being
filed and your office has refused to provide the "detailed, contemporaneous time records billed by
attorneys and paralegals assigned to this case." In fact, we were told that these detailed records are not
maintained for contingency fee cases.**

I am painstakingly going through the documents that have been sent and will be responding to Jenn later
regarding outstanding request. In the interim, please provide copies of **ALL** of the documents submitted to
the Court under seal pursuant to the Motion for Attorney's fees.

Lastly, the surprise filing was July 29, 2016. At this point, **not one (1) single unit to our knowledge has
been retrofitted** ...the goal of this litigation was to **ensure that the housing is programmatically and
physically accessible to individuals with disabilities, not to generate fees.**  We will gladly celebrate
this "landmark" litigation, once the retrofitting begins and Angelenos languishing in nursing homes, on the
street and/or living in inaccessible housing have a place to call home that meets their individual disability
related needs.

**As guardians of the public trust, residents of the City and devoted civil rights advocates - the goal
of this litigation to increase housing choice and equal housing opportunities for our disabled
brothers and sisters is extremely important.**

I await receipt of the documents submitted to the Court on October 7, 2016 regarding your fees.

Thank you,
Sharon

D24

**Sent:** Tuesday, October 18, 2016 12:31 AM
**From:** Sharon Kinlaw <SKinlaw@gmail.com>
**To:** Michael Allen <MAllen@RelmanLaw.com>
**Cc:** Laura Arandes <LArandes@RelmanLaw.com>; Sharon Kinlaw <SKinlaw@FairHousingCouncil.org>; Sandra Couch <SCouch@FairHousingCouncil.org>; Don Bagwell <DBagwell@SkylineHomeLoans.com>; Michelle White <AffHsgServices@sbcGlobal.net> ; Loretta Kelly-Denkins <NetLoretta1@hotmail.com>; JBankhead@LAFireCU.org; OkojieLaw@aol.com; David@doialaw.com; Sandy <FYI123@PacBell.net>; Jennifer Klar <JKlar@RelmanLaw.com>; Scott Chang <SChang@RelmanLaw.com>; John Relman <JRelman@RelmanLaw.com>
**Subject:** Re: Settlement Agreement

Michael

Ensuring that a fully executed Settlement Agreement pursuant to the May 12, 2016 negotiated terms is a priority. I do not agree with your statement related to what makes sense about the "Effective Date."

Let's be clear, the Council was led to believe by the Relman firm that the effective date of the agreement was May 12, 2016. We were assured by you that Miguel Santana had already secured approval from the City Council **to finalize and sever the 504 case from the FCA case as it related to the insistence on a global settlement.**

We all understood that to mean that 30 days from the Term Sheet, executed in April, we would finalize the long form agreement, which would include a time frame provision of a 45 to 60 day payment date in order to avoid **further delays and endless meaningless "term sheets."** This was a direct question put to you during April discussions and the Council understood this to mean that we should expect payment no later than August 1, 2016. This understanding and sentiment was discussed during that call. This matter should have been handled properly from the beginning, had it been, we would not have experienced the delay in receiving the settlement funds.

I have a much different recollection of the events; I don't recall RDC's many emails during this time frame. I actually recall not hearing much of anything from your firm regarding the Settlement Agreement. What I do recall with clarity is **Mr. Okojie's diligent efforts to contact the City and RDC about the Council's damages and the effective date of the agreement without much success. We were not made aware of additional demands until we reached out to learn about the delay.**

**In the conversation in and around June 9, 2016, we learned of the side agreement request and later learned about the language of the side letter after Mr. Okojie demanded to view the language.** At that time he also **requested copies of all communications from the inception of the lawsuit until present between the City and RDC,** to date he has not received those communications.

I also recall specific instructions for the Relman firm to work directly with Mr. Okojie and Mr. Iyalohme during this time frame to protect the Council's interest. After these instructions by your firm were ignored time and time again, it was at Mr. Okojie's insistence that RDC immediately rectify the delay through the court, which led to the July 5, 2016 filing.

Later we learned that **RDC and DRC in collaboration with the City made a surprise filing with the Court** without working in cooperation with Mr. Okojie or Mr. Iyalohme and without divulging, notifying or discussing with the Council. This subsequent **filing on July 29, 2016 failed to include a fully executed** or complete **agreement** with specific timetables for payment. Subsequent filings with the Court **failed to correct these willful omissions.**

I'm sure you will agree that **it is extremely important that Settlement Agreements on file with the court is signed** and accurately reflects the terms negotiated and understood by the plaintiffs as advised by your law firm.

To date, **the housing stock is still inaccessible;** I'm certain you will also agree that **the goal of the litigation was, and is to ensure full physical and programmatic accessibly throughout the City's' affordable housing portfolio.** Monitoring the Settlement Agreement is essential to the implementation and enforcement of the agreement; therefore, **we need a signed settlement agreement that properly reflects the terms, policies and properties to be monitored.**

Sharon

D25

**Sent:** Thursday, October 06, 2016  8:26 PM
**From:** Sharon Kinlaw <SKinlaw@gmail.com>
**To:** Michael Allen <MAllen@RelmanLaw.com>
**Cc:** Laura Arandes <LArandes@RelmanLaw.com>;  Sharon Kinlaw <SKinlaw@FairHousingCouncil.org>;
Sandra Couch <SCouch@FairHousingCouncil.org>;  Don Bagwell <DBagwell@SkylineHomeLoans.com>;
Michelle White <AffHsgServices@sbcGlobal.net> ; Loretta Kelly-Denkins <NetLoretta1@hotmail.com>;
JBankhead@LAFireCU.org; OkojieLaw@aol.com; David@doiaLaw.com; Sandy <FYI123@PacBell.net>; Jennifer Klar
<JKlar@RelmanLaw.com>; Scott Chang <SChang@RelmanLaw.com>; John Relman <JRelman@RelmanLaw.com>
**Subject:** Re: Settlement Agreement

Michael,

I appreciate your response to my concerns; however, I think it is **important to immediately rectify these issues with the Court to ensure that a fully executed Settlement Agreement is on file with the Court that reflects the complete May 12 package as it relates to the negotiated and agreed upon terms.** As you will recall, **the Council was rushed into signing the document and returning by 5:00 pm. on May 12, 2016,** we were assured that May 12, 2016 was the effective date and that the Council would receive its portion of the settlement funds within 45 days and no later than 60 days.  This did not happen.

Additionally, **the City representatives only initialed the pages and when contacted by Mr. Okojie's office for clarification, never responded to Mr. Okojie's emails and/or calls regarding the operative date for the settlement.  This initialed only document is what is on file with the Court.**

**This matter was further complicated by the City delaying its final signatures on the agreement and demanding the Council sign a "side agreement / letter" related to the FCA case.  This was only resolved when Mr. Okojie notified your office and the City, that the "side agreement" was a form of extortion.  In** all of that confusion, **we also for the first time learned of a demand made to the City by the AUSA and a counter offer.  While these cases should not have been connected because the City insisted on a "global settlement", and your firm disclosed to the other co-plaintiffs the existence of the FCA case without our knowledge or consent, the cases were linked together, delaying the settlement.**

Adding to this confusion is **Mr. Santana's reference to the case being brought against "34 owners of affordable housing projects,"** versus the terms of  the settlement agreement, properly reflecting the precise number of Los Angeles properties involved and the 4000 units to be retrofitted.

As it currently stands, **on file with the Court as a finalized agreement is an unsigned Settlement Agreement missing exhibits A - the List of Existing Covered Housing Developments, Excluding Units in Exhibit B; exhibit B - the List of 22 CRA/LA Housing Developments Not Part of Agreement;** exhibit C-1 - the City of Los Angeles Fair Housing Policies in Regards to Disability Guidance and Requirements for Owners and Property Managers; and exhibit C-2 - Tenant Handbook of Rental Occupancy Policies Regarding Disability for [Housing Developments], May 12, 2016.

We are gravely concerned and want to **ensure that the Settlement Agreement on file with the Court is fully executed by all parties** with a true and complete reflection of terms agreed to and that the agreement can in no way be invalidated because of these **material omissions.**

For monitoring purposes, **it is also important that all of these documents are on file with the Court and the agreement properly reflects the named entities to handle the 1/3 portion of the future monitoring funds to be allocated to and on behalf of the Fair Housing Council.** This is important to make sure that the Council (and anyone the Council designates) receives all monitoring information and access to monitoring funds set aside for the Council and its designated attorneys, Odion Okojie and David Iyalomhe.

Lastly, it is very important that you not only **work with the City to ensure that the properly executed and complete documents are on file with the Court,** but that you also work with Odion and David to rectify this matter.  **As guardians of the public trust, we believe this is very important and want to ensure that there is no further abuse of taxpayer funds and that proceeds from the settlement used to further the Council's mission can be used effectively and efficiently.**

Sharon

D26

**Sent:** Tuesday, October 04, 2016  5:28 PM
**From:** Sharon Kinlaw <SKinlaw@gmail.com>
**To:** Laura Arandes <LArandes@RelmanLaw.com>
**Cc:** Sharon Kinlaw <SKinlaw@FairHousingCouncil.org>; Sandra Couch <SCouch@FairHousingCouncil.org>; Don Bagwell <DBagwell@SkylineHomeLoans.com>; Michelle White <AffHsgServices@sbcGlobal.net>; Loretta Kelly-Denkins <NetLoretta1@hotmail.com>; JBankhead@LAFireCU.org; Odion <OkojieLaw@aol.com>; David Iyalomhe <David@doiaLaw.com; Sandy Couch <FYI123@PacBell.net>; Jennifer Klar <JKlar@RelmanLaw.com>; Scott <SChang@RelmanLaw.com>; Michael Allen <MAllen@RelmanLaw.com>; John <JRelman@RelmanLaw.com>
**Subject:** Settlement Agreement

Laura

Thank you for your email, let me clarify my concerns:

Scott was going to get back to us after the July 29, 2016 meeting held at Michelle's office about which properties are covered in the ongoing litigation with the CRA and what specific units are addressed in the 504 litigation.  At the time of the meeting he was unclear and was going to get back to us.

The attachment included in the email for **Exhibit 523-2 attached to the July 5, 2016, submission to the court, is not included  in the Settlement Agreement filed on July 29, 2016, Exhibit 530, which is a bit confusing.  The document filed with the court on the July 29, excludes a number of key documents, including the list of properties and the policies.**

**The July 5, 2016, proposed Settlement Agreement  is a 161+ page document and the final Settlement Agreement document filed on July 29, 2016 is only 56 pages.**

There are **other omissions and ambiguities** as well, which add to this confusion.

It is my understanding that Odion and David will be addressing all of these concerns later.

Regards,
Sharon

---

**Sent:** Tuesday, October 04, 2016  2:30 AM
**From:** Sharon Kinlaw <SKinlaw@gmail.com>
**To:** Scott Chang <SChang@RelmanLaw.com>
**Cc:** Odion Okojie <OkojieLaw@aol.com>; David Iyalomhe <David@doiaLaw.com; Sandy Couch <FYI123@PacBell.net>; Sharon Kinlaw <SKinlaw@FairHousingCouncil.org>
**Subject:** Fwd: Status of Depositons in CRA 504 Case

Hi Scott

I am following up on the revised discovery request and deposition notices.  I will be the Rule 30(b)(6) deponent on the Council's Frustration of Mission damages, when will the deposition prep resume?

Also, need clarification on what properties are covered under the settlement agreement?  There is some confusion as to exactly which properties are included in the 504 settlement agreement?  In my reading of the final agreement filed on July 29, 2016, the final document filed with the court does not include a list of properties, was this an oversight or am I not looking at the right document?

Additionally, in reviewing a communication to the City Council from Miguel Santana related to the settlement agreement, only 34 properties are referenced.

When we met at Michelle's office, we discussed **which properties are covered under the 504 settlement agreement** and **which properties are covered in the ongoing litigation with the CRA.**  Could you please provide clarification on this matter and send a copy of the various property lists and the operative settlement agreement?

Sharon

D27

**Date:** Tuesday, August 2, 2016 at 12:42 PM
**From:** Sharon Kinlaw <SKinlaw@gmail.com>
**To:** Michelle White <AffHsgServices@sbcGlobal.net>
**Cc:** Odion Okojie <OkojieLaw@aol.com>; Don Bagwell <DBagwell@SkylineHomeLoans.com>,
Loretta Kelly-Denkins <NetLoretta1@hotmail.com>; Juanita Bankhead <JBankhead@LAFireCU.org>;
David Iyalomhe <David@doialaw.com>; Sandy Couch <FYI123@PacBell.net>
**Subject:** Re: Jenn Klar's Explanation of the 504 Joint Stipulation

There appears to be selective amnesia on the part of many; if everyone would recall - **it was the City that approached us to settle the complaint** - we were led to believe that the City Council had already granted "unanimous approval" to decouple the cases and no longer demand a "global" settlement.

On that basis, we discussed the terms of the settlement and came up with a "Term Sheet," which was supposedly agreed to and executed on April 12, 2016. During the discussions about the terms of the settlement, the question was asked – how will the Council ensure that this is not just another term sheet? We were told that they would place performance measures into the Term Sheet and the Settlement Agreement to make sure this new Term Sheet is not an exercise in futility. We were also led to believe that the Term Sheet would lay out all of the terms of the settlement.

We all believed that once the agreement was signed, we would receive payment within 45-60 days. We were **rushed to complete the Term Sheet** and **rushed to finalize and execute the final Settlement Agreement, which occurred on May 12, 2016.**

After we executed the agreement in good faith, we were blindsided at the last minute when we should have been receiving payment. **We were told that the City Council is now demanding a "side letter" - told to wait for the language** - told the side agreement was "political" in nature - then told there is no language - and then **advised by our attorneys to agree to the City's language without even seeing it.**

Our **attorneys at the Relman firm have abdicated their adversarial role and have allowed the City to control the timing and terms of how this case will settle to the detriment of the Council.**

Jenn's explanation makes no sense at all - if the City is agreeing to settle and not trying to continue to stall - why would they oppose a "process to attempt to enforce a settlement."

If the City is really agreeing to settle the case - then why would the City "make additional demands." Most importantly - **why would our attorneys allow the City to renege and make additional demands not agreed to in the Term Sheet and why would our attorneys not ensure that the settlement agreement filed with the court contain a date certain that the Council is paid????**

They have failed to answer Odion's questions posed to them a month ago about the May 12th deadline. They have intentionally refused to provide documents to Odion and to include him in communications.

**We do not need to resume weekly calls to be given the run around** - we need to stop with the side discussions, allow Odion's office to handle these matters and if anything, Loretta needs to ask that the Relman firm and their other co-counsel provide all communications between their offices and the City regarding settlement discussions and if they fail to do so, we should file a complaint with the Bar Association.

Enough is Enough!

Sharon

D28

**Sent:** Wednesday, June 29, 2016  2:40 PM
**From:** Odion Okojie <OkojieLaw@aol.com>
**To:** Jennifer Klar <JKlar@RelmanLaw.com>; David Iyalomhe <David@doiaLaw.com>; Michael Allen <MAllen@RelmanLaw.com>
**Cc:** John Relman <JRelman@RelmanLaw.com>
**Subject:** RE: Settlement Status - 504 Case and False Claim Case

Ms. Klar,

Thank you for your email of earlier today.

The FHC's position is simple:  **The City** should fully and completely **execute the Settlement Agreement** in which it fully, deftly, and actively negotiated with the three FHC and its two co-plaintiffs.  The terms of the Settlement Agreement are substantially derived from the Term Sheet which, again, the City actively took part in creating.

**The FHC therefore maintains that the City's current demand that it would not fully execute the Settlement Agreement it fully participated in the crafting of <u>all</u> of the terms in the finalized version is not only unreasonable, but a classic example of bad faith, bordering on extortion.**  Indeed, recall that your firm indicated that the City objected to and refused to included several of FHC's suggested and recommended provisions into the finalized version of the Settlement Agreement.

So, here's what the FHC wants your firm to do:  To immediately advise the City that if it is unwilling to completely execute the Settlement Agreement which  **(a)** it fully participated in producing,  **(b)** an Agreement which its Manager and counsel of record have in initiated,  **(c)** and Agreement which all of the Plaintiffs were rushed into executing because of a deadline imposed by the City itself, and  **(d)** an Agreement which the Plaintiffs have reasonably and detrimentally relied upon, then Plaintiffs will seek court intervention compelling the City to be bound by the Settlement Agreement.

If, for any reason(s), your firm is unable or unwilling to seek Court intervention as the FHC has directed you to do, David and me, as co-counsel to the FHC in this action, are prepared to do so; and to do so right away.

Finally, we sincerely hope that your firm has properly informed the other plaintiffs that the only reason there's been an **unreasonable delay in finalizing the Agreement, which all of the Plaintiffs executed as far back as May 12, is ONLY because of the City's new, unreasonable, and unrelated demand on the FHC.**  It is imperative that the FHC not be deemed as the party holding things up.

Please immediately advise as to how we should proceed.

Thank you,

Odion L. Okojie
800 West First Street,  Suite 313
Los Angeles, CA.  90012
+ 1.213.626.4100
Info@OkojieLaw.com
OkojieLaw@aol.com

D29

**Sent:** Monday, June 27, 2016 11:20 AM
**From:** David Iyalomhe <David@doialaw.com>
**To:** Jennifer Klar <JKlar@RelmanLaw.com>; Michael Allen <MAllen@RelmanLaw.com>
**Cc:** Odion Okojie <OkojieLaw@aol.com>; SKinlaw@gmail.com>; SKinlaw@FairHousingCouncil.org>;
Sandy Couch <FYI123@PacBell.net>; John Relman <JRelman@RelmanLaw.com>;
Michelle White <AffHsgServices@sbcGlobal.net>; Loretta Kelly-Denkins <NetLoretta1@hotmail.com>;
Juanita Bankhead <JBankhead@LAFireCU.org>
**Subject:** RE: Settlement Status - 504 Case and False Claim Case

Dear Ms. Klar:

In response to your email of earlier today, and after carefully reviewing the **four emails between your office and Mr. Clark,** we don't believe that a face-to-face meeting with Mr. Santana is necessary to further clarify what Mr. Clark has already stated in his June 14, email. As such, the FHC will not be attending tomorrow's meeting.

We also note that Mr. Clark's email of June 23 that **your office has conveyed an unfortunate impression that the FHC has "trust issues" with the City.** You know that the times **the FHC has expressed trust issues in this case has to do with how your firm has treated it including during settlement negotiations I the 504 case.**

**We will let you know how the FHC wished to proceed regarding the issue of the side agreement.**

David Iyalomhe

---

**From:** Odion Okojie [mailto:info@okojielaw.com]
**Sent:** Monday, June 27, 2016 1:14 AM
**To:** Michael Allen; David Iyalomhe; skinlaw@gmail.com; skinlaw@fairhousingcouncil.org; fyi123@pacbell.net
**Cc:** John Relman; Jennifer Klar
**Subject:** Re: Settlement Status - 504 and False Claim Case

[Quoted text hidden]

---

**3 attachments**

Clark email to FHC 6.27.16.pdf
63K

2016 6 17 Stipulation for Entry of Judgment Pursuant to Settlement TO CITY WORD - JPC REDLINE.doc
106K

Exhibit 1 to Stipulation for Entry of Judgment Pursuant to Settlement TO CITY WORD - JPC REDLINE.docx
32K

**Sent:** Sunday, June 26, 2016 10:13 PM
**From:** Odion Okojie <OkojieLaw@aol.com>
**To:** Michael Allen <MAllen@RelmanLaw.com>; David Iyalomhe <David@doialaw.com>; Sharon Kinlaw
<SKinlaw@gmail.com>; <SKinlaw@FairHousingCouncil.org>; Sandy Couch <FYI123@PacBell.net>
**Cc:** John Relman <JRelman@RelmanLaw.com>; Jennifer Klar <JKlar@RelmanLaw.com>
**Subject:** RE: Settlement Status - 504 Case and False Claim Case

Mr. Allen:

Regarding Tuesday's meeting with the City's Mr. Santana, Mr. David Iyalomhe, Ms. Sharon Kinlaw, Ms. Sandra Crouch, and me will be in attendance. The Council looks forward to a consequential meeting on Tuesday. **Such a meeting can only happen if you produce the following documents and information the Council will need to make an informed decision:**

D30

**(1)** all of the documents reflecting any and all negotiations and discussions (including emails) between your office (including you, Mr. Relman, Ms. Sklar) and the City of Los Angeles's representative (Mr. Jim Clark, Mr. Miguel Santana, and others) from the inception of settlement discussions in the 504 case;
**(2)** and all documents including emails and other written communication between your office and the City regarding all settlement discussions concerning the False Claims case.

We notice that in the 3 emails you sent to us last week between **your office and Mr. Clark it appeared that there was been extensive back-and-forth correspondence between your offices.** Based on the content of these 3 emails we believe you may have inadvertently omitted and not sent several others to us.  For instance, **in his June 14 email to you Mr. Clark references your suggestion that he and Mr. Santana should initial the settlement agreement.  We don't have the email where you made this suggestion.  We also do not have the email showing when the the City informed you that the** ▆▆▆
▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆.

Please endeavor to **produce all of the emails between your office and the City regarding settlement discussions and negotiations in both the 504 and False Claims cases** by close of business tomorrow.  The FHC wants to have a good faith and productive meeting on Tuesday and therefore requests prompt response to these requests so as to have ample time to review them before the meeting.

Best regards
Odion Okojie

---

**Sent:** Thursday, June 23, 2016  7:12 PM
**From:** Odion Okojie <OkojieLaw@aol.com>
**To:** Michael Allen <MAllen@RelmanLaw.com>; Don Bagwell <DBagwell@SkylineHomeLoans.com>;
David Iyalomhe <David@doialaw.com>; Sharon Kinlaw <SKinlaw@gmail.com>;
<SKinlaw@FairHousingCouncil.org>; Michelle White <AffHsgServices@sbcGlobal.net>;
Loretta Kelly-Denkins <NetLoretta1@hotmail.com>; Juanita Bankhead <JBankhead@LAFireCU.org>;
Sandy Couch <FYI123@PacBell.net>
**Cc:** John Relman <JRelman@RelmanLaw.com>; Jennifer Klar <JKlar@RelmanLaw.com>
**Subject:** RE: Settlement Status - 504 Case

**Mr. Allen:**

We will review your email and get back to you.

There are several matters in your email I disagree with but as a preliminary matter at no time did we or anyone from the FHC advise you that David's or my role was merely to facilitate a settlement discussion between the FHC and your office.  We repeatedly told you that we had been retained by the FHC to, among other things, protect its interests especially in connection with the contentious settlement matters between your office and the other plaintiffs on the one hand, and the FHC on the other hand.

Notwithstanding several requests for an association of counsel agreement you promised to send to us, you did not do so we had to file appearances in the 504 case as lead co-counsel on behalf of the FHC.  So, **our role had never been that of "facilitators", but that of co-counsel.**  Indeed, on behalf of the FHC, Ms. Kinlaw wrote to express several of FHC's concerns.  The FHC specifically instructed your office to ensure that David and me be copied on all correspondence between your office and any third party on any matter concerning the FHC.  **Until today we were unaware, and are quite surprised, that your office had been in settlement discussions with the City relating to the FHC's interest in the False Claims case.**  We should have been immediately advised of these discussions.

We will soon be in contact with you as to how we should proceed going forward, including who should appear at the meeting with Mr. Santana.

Thank you.

Odion Okojie

D31

**Sent:** Thursday, June 23, 2016 2:19 PM
**From:** Odion Okojie <OkojieLaw@aol.com>
**To:** Michael Allen <MAllen@RelmanLaw.com>; Don Bagwell <DBagwell@SkylineHomeLoans.com>;
David Iyalomhe <David@doialaw.com>; Sharon Kinlaw <SKinlaw@gmail.com>;
Sharon Kinlaw <SKinlaw@FairHousingCouncil.org>; Michelle White <AffHsgServices@sbcGlobal.net>;
Loretta Kelly-Denkins <NetLoretta1@hotmail.com>; Juanita Bankhead <JBankhead@LAFireCU.org>
**Cc:** John Relman <JRelman@RelmanLaw.com>; Jennifer Klar <JKlar@RelmanLaw.com>
**Subject:** RE: Settlement Status - 504 Case

Mr. Allen:

I hope you received my below email to you of yesterday. Mr. Bagwell's subsequent email to you respectfully asked you to directly address issues regarding the status of the settlement to me; but you chose to write to him and other Board members. We still await your response to my email because the Council still needs responses and clarifications from your office regarding the questions raised in the email. If you recall, I wrote you on June 10 regarding the same issues and have yet to receive any meaningful response from you. We believe that obtaining the information will lead to a more productive Tuesday meeting with Mr. Santana. Meanwhile, we will let you know who the Board decides should be in attendance at the meeting with Mr. Santana.

Thank you.

Odion Okojie

---

**Sent:** Wednesday, June 22, 2016 8:20 PM
**From:** Don Bagwell <DBagwell@SkylineHomeLoans.com>
**To:** Michael Allen <MAllen@RelmanLaw.com>
**Cc:** John Relman <JRelman@RelmanLaw.com; Jennifer Klar <JKlar@RelmanLaw.com>;
Odion Okojie <OkojieLaw@aol.com>; David Iyalomhe <David@doialaw.com>;
Sharon Kinlaw <SKinlaw@gmail.com>
**Subject:** reply to Michael Allen latest email

Michael Allen

I hope all are well. Please it is important that this matter of signing something else from City is run by Odion. We do not want any more miscommunication, or he said she said. We want the clear and consistent facts. I am sure with the Relman Firm and Odion working together we will find out where the City is coming from and explained to everyone's satisfaction. After all questions are answered then we will know how to act.

**Don Bagwell**
Senior Mortgage Advisor
NMLS# 248224
Corp. Lic# 12072



📞 (818) 657-2236

📱 (818) 825-9988

☎ (818) 305-2954

✉ DonBagwell@SkylineHomeLoans.com

🌐 www.DonBagwell.com

🌐 Click here to find your new home!

⌂ 31200 Via Colinas ste 110 | Westlake Village, CA 91301

D32

**Date:** June 22, 2016 at 3:53:42 PM PDT
**From:** Odion Okojie <OkojieLaw@aol.com>
**To:** Michael Allen <MAllen@RelmanLaw.com>
**Cc:** David Iyalomhe <David@doiaLaw.com>; Sharon Kinlaw <SKinlaw@gmail.com>;
Sandy Couch <FYI123@PacBell.net>
**Subject:** RE: Update on LA accessibility matters

Dear Counsel:

Regarding your email of earlier today, please note that the Council is considering **your office's assertion that the entire settlement agreement of the plaintiffs in the 504 case will unravel unless the Council signs off on another, unrelated, and unanticipated agreement in connection with the False Claims case.** Our understanding is that **the two cases were not supposed to be linked** in any way and manner.

The Council asks that you **provide us with all written communication between your office and the City's attorneys regarding all post settlement agreement negotiations and discussions regarding the basis of the side agreement.** We have previously asked for this information and have yet to receive any response from your office. **What exactly is the City demanding that the Council sign off on?** The Council will not and **should not be put in the awkward position of being a deal breaker of a settlement involving two other plaintiffs. What exactly is the City demanding of the Council and what, if any, new consideration is the Council receiving for signing the new and additional term?**

Again, provide us with the above requested documents and information. Since time is of the essence your immediate cooperation will be greatly appreciated.

Thank you.

**Odion L. Okojie**
Law Offices of Odion L. Okojie
880 West First Street, Suite 313
Los Angeles, California 90012
Tel: +1 213.636.4100
email: Info@OkojieLaw.com; OkojieLaw@aol.com

Sent from Mail for Windows 10

D33

## Michael Allen

| | |
|---|---|
| From: | John Relman |
| Sent: | Thursday, June 23, 2016 8:07 PM |
| To: | Jennifer Klar; Michael Allen |
| Subject: | FW: ILC Setttlement |

From: James Clark [mailto:james.p.clark@lacity.org]
Sent: Tuesday, June 14, 2016 2:16 PM
To: John Relman
Cc: Miguel Santana
Subject: ILC Settlement

John --

Set out below is the language that the City would like included in a "side letter" (or in some other acceptable form) related to our settlement of the *ILC* litigation. I would hope that your clients would have no issue signing this, since they have been aware, as you undoubtedly told them, that the City would be seeking to get "credit" for amounts expended under the terms of our settlement, or a VCA with HUD, toward the amount the City ultimately will have to pay to the DOJ to resolve the *qui tam* litigation, in which your clients are relators.

As we've said from the beginning, the City views sums expended to rehabilitate or build accessible housing as addressing a critical public need for adding accessible, affordable housing to the City's streets and neighborhoods. In contrast, money paid by the City to the DOJ will do *nothing* to assist in alleviating the current housing crisis facing Los Angeles, and will be simply a transfer of funds from the taxpayers of Los Angeles to the Federal Treasury. I would think that, as advocates for the disabled community, your clients would want as much of that money as possible to be expended to actually improve the lives of the people whose cause they espouse. There is nothing mysterious or deceptive in seeking that result. The City's motivation is the same as your clients'.

However, we understand from our discussions with you that your clients are reluctant to either *support* the City's getting "credit" for sums expended to settle

1

D34

the False Claims action, or even to say that they won't oppose the City seeking
as much credit as the DOJ might offer. Miguel Santana and I have accepted (even
if not understood) your clients' position about making those statements -
- although our City Council specified that we require them – and have agreed to
take back to the Council for final approval your clients' agreement merely not to
oppose the DOJ taking into account the terms of the *ILC* settlement in resolving
the *qui tam* action with the City.  Frankly, I can't think of any reason they wouldn't
agree to that, particularly since you've told Miguel and me repeatedly that it will
make zero difference to the Government whether your clients say that or not.

I've tried to make the wording of our proposed letter as neutral as possible, but if
you have suggestions as to how it might be amended, we are open to discussing
those changes.  Here's what we propose:

"As our clients are aware, the City of Los Angles is attempting to resolve the *qui
tam* action currently under seal, and pending in the United States District Court for
the Central District of California, entitled "*United States ex rel. [Confidential
Parties] Relators, v. City of Los Angeles et al., Defendants*, Case No. C11-00974
PSG (JCx)" ( the "*qui tam* action").  As part of that potential resolution, the City is
seeking to receive monetary "credit" in the computation of any damages or
penalties imposed by the Department of Justice ("DOJ") in the *qui tam* action,
based upon amounts to be expended by the City in carrying out: (1) the terms of
the settlement agreement among the parties in *Independent Living Center of
California, et al., Plaintiffs, v. City of Los Angeles, et al., Defendants*, Case No.:
12-CV-00550 FMO (PJWx) (the *ILC* litigation), currently pending in the United
States District Court for the Central District of California; and (2) any Voluntary
Compliance Agreement ("VCA") reached between the City and the United States
Department of Housing and Urban Development  ("HUD") regarding the same
facts alleged in the *qui tam* action and the *ILC* litigation.  Acknowledging the City's
desire to resolve the *qui tam* litigation, the relators agree not to object to or oppose
the City's request that the DOJ take into account sums paid by the City to settle
the *ILC* litigation, or in fulfilling its obligations under a VCA with HUD, in resolving
the *qui tam* action.

D35

Signed:

_____          _____

**Counsel for Relators**                    Counsel for the City of Los
                                             Angeles"

Thanks for your attention to this matter, John. As you requested, in order to
provide comfort to your clients concerning the language of the letter, I will send
you today a copy of the Settlement Agreement initialed by both Miguel and me. I
look forward to hearing from you. All best regards.

**Jim**

**James P. Clark**
**Chief Deputy City Attorney**
**800 City Hall East**
200 N. Main St.
Los Angeles, CA 90012
(213) 978-8347

James P. Clark
Chief Deputy City Attorney
800 City Hall East
200 N. Main St.
Los Angeles, CA 90012
(213) 978-8347

****************Confidentiality Notice *************************
This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be confidential or protected by the attorney-client
privilege and/or the work product doctrine. If you are not the intended recipient, be aware that any disclosure,
copying,
distribution or use of the content of this information is prohibited. If you have received this communication in
error, please notify us immediately by e-mail and delete the original message and any attachments without
reading or saving in any manner.
*********************************************************************

Please consider the environment before printing this email

D36

Michael Allen

| | |
|---|---|
| **From:** | James Clark <james.p.clark@lacity.org> |
| **Sent:** | Friday, June 17, 2016 3:34 PM |
| **To:** | John Reiman; Miguel Santana |
| **Cc:** | Michael Allen |
| **Subject:** | Re: Stipulation for Judge Olguin |

John and Michael --

As both Miguel and I have told John on several occasions, and as I reiterated
when I wrote to John on June 14th with proposed language for a "side letter," we
can't file this until the *qui tam* issue is resolved. Miguel and I have tried to be
completely transparent with you about our instructions from the City
Council. Despite the Council's requirements, we first gave up on our request that
the relators support DOJ granting an offset to the City for for accessible housing
created pursuant to the settlement of the *ILC* action and the VCA -- assuming we
can negotiate one with HUD. We then abandoned our second "ask:" that your
clients at least not oppose the City getting full credit for its delivery of accessible
housing pursuant to those other agreements. When you refused to do even that,
we went as far as we possibly can under the Council's mandate: that you simply
not oppose the DOJ "taking into consideration" sums expended as a result of
the resolution of the *ILC* and VCA negotiations. Given your clients' clear and
demonstrable interest in increasing the stock of accessible housing in Los
Angeles, I would think that they would welcome this result.

Since you have repeatedly told us that DOJ will pay no attention whatsoever to
what the relators say about a settlement of the *qui tam* action, and -- as
John and I discussed earlier this week -- there is no realistic possibility that DOJ
will not require some (presumably significant) monetary payment to settle the *qui
tam* action, there's no real downside for you. In short, this is something we need
to satisfy the Council, but which could have zero negative effect on your
clients. We've met you far more than half-way on this. All we need is your
concurrence in the language I sent you on Tuesday, and we can sign and file the
stipulation and wrap this case up.

1

D37

Please let us know that we can proceed as I've outlined.  Many thanks and best regards.

Jim

James P. Clark
Chief Deputy City Attorney
800 City Hall East
200 N. Main St.
Los Angeles, CA 90012
(213) 978-8347



On Fri, Jun 17, 2016 at 10:28 AM, John Relman <jrelman@relmanlaw.com> wrote:

Jim –

Michael will be sending you very shortly a proposed joint stipulation for Judge Olguin asking him to sign and enter the settlement agreement.  It is very short and self-explanatory.  If you give us the green light, we will get it filed today.

Best,

John

John P. Relman

(Licensed in D.C.)

Relman, Dane & Colfax PLLC

1225 19th Street, N.W.

Suite 600

Washington, D.C.  20036

202-728-1888 (phone)

202-728-0848 (fax)

D38

**Jennifer Klar**

| | |
|---|---|
| **From:** | John Relman |
| **Sent:** | Monday, June 27, 2016 10:37 AM |
| **To:** | Jennifer Klar |
| **Subject:** | FW: Stipulation for Judge Olguin |
| **Attachments:** | 2016 6 17 Stipulation for Entry of Judgment Pursuant to Settlement TO CITY WORD - JPC REDLINE.doc; Exhibit 1 to Stipulation for Entry of Judgment Pursuant to Settlement TO CITY WORD - JPC REDLINE.docx |

**From:** James Clark [mailto:james.p.clark@lacity.org]
**Sent:** Thursday, June 23, 2016 9:25 PM
**To:** John Relman; Michael Allen
**Cc:** James Clark; Miguel Santana
**Subject:** Stipulation for Judge Olguin

John and Mike ---

I attach a "mark-up" of the Stipulation and [Proposed] Judgment you sent me earlier.  In the drafts, I have tried to let the Court know that, while we have substantive agreement, there is a related, outstanding issue that must be resolved before we can stipulate to the Judgment with full Council approval.  Obviously, I have no desire to do it this way, but neither Miguel nor I has the authority to stipulate to a Judgment until we have a meeting of the minds regarding the relators' position in the False Claims Act litigation.

As I mentioned when I last wrote, after all of the concessions we have made, and even (at your request) sent you an initialed copy of the Settlement Agreement, we find it inexplicable that you and your clients will not agree to the minimal request that not oppose the DOJ just taking the VCA into consideration in settling the *qui tam* action.

I understand ,John, that you will be in Los Angeles next Tuesday, and would like Miguel to meet with one of your clients who harbors "trust issues" with the City.  If that would help us finalize the settlement, I am all for it.  I'll be in Washington on Tuesday, but could do a meeting in L.A. on Wednesday (with Miguel), if that would work for you and your client.  Please let us know what your prefer.

1

D39

Again, we want nothing more than to complete the settlement with you and your clients. Please work with us in getting there as soon as we mutually can do so. All the best.

Jim

James P. Clark
Chief Deputy City Attorney
800 City Hall East
200 N. Main St.
Los Angeles, CA 90012
(213) 978-8347

*****************Confidentiality Notice **************************
This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be confidential or protected by the attorney-client privilege and/or the work product doctrine. If you are not the intended recipient, be aware that any disclosure, copying,
distribution or use of the content of this information is prohibited. If you have received this communication in error, please notify us immediately by e-mail and delete the original message and any attachments without reading or saving in any manner.
*******************************************************************

Please consider the environment before printing this email.

**Date:** June 22, 2016 8:22 AM
**From:** Michael Allen <MAllen@RelmanLaw.com>
**To:** Sharon Kinlaw <SKinlaw@gmail.com>; Sharon Kinlaw <SKinlaw@FairHousingCouncil.org>;
Odion Okojie <OkojieLaw@aol.com>; David Iyalomhe <David@doiaLaw.com>;
Michelle White <AFFHsgServices@sbcGlobal.net>; Don Bagwell <DBagwell@SkylineHomeLoans.com>;
Loretta Kelly-Denkins <NetLoretta1@hotmail.com>; Juanita Bankhead <JBankhead@LAFireCU.org>
**Cc:** Jennifer Klar <JKlar@RelmanLaw.com>; John Relman <JRelman@RelmanLaw.com>
**Subject:** Update on LA Accessibility Matters

All:

We write with an important update and to identify a key decision-point for the FHC.

The City Attorney's office has told us that – pursuant to the instructions of the City Council - it is prepared to sign and submit the Settlement Agreement to Judge Olguin only after FHC provides a response to a question the City Council has asked related to the False Claims Act case. The question is as follows: Would the FHC oppose a decision by the U.S. Department of Justice to take into account the terms of the 504 settlement in its resolution of the False Claims Act case?

Clearly, **linking these two cases** in any way **was not something that the City or we agreed to in the April 2016 Term Sheet,** and was **not** part of the negotiated final Settlement Agreement. But apparently **some members of the City Council have insisted on obtaining this assurance for political reasons as a condition for moving forward on the 504 settlement.** We, like you, are frustrated by this new request, but believe there is a simple response that will allow the 504 matter to reach immediate final resolution and not compromise any interest you have in the False Claims Act case.

D40

We recommend that the FHC respond that it will not oppose a DOJ decision to take settlement of the 504 case into account.  As a matter of law and federal government policy, DOJ has the right to consider any relevant circumstance it deems appropriate in resolving the False Claims Act case (including the terms of the 504 settlement).  This is DOJ's right, and we cannot change it whether we like it or not.  If a final settlement is reached in the False Claims Act case, DOJ will still be required to ask the FHC whether it objects to the terms of the False Claims Act settlement as not being "fair, adequate and reasonable under all the circumstances."  If you decide it is not fair and reasonable, you would still have the right to object and seek a hearing in Court.  DOJ will only seek FHC's opinion in the event it reaches a False Claims Act settlement with the City, and if it reaches a settlement it must ask whether you will object.  Thus, agreeing not to object to the fact that DOJ is simply taking the settlement into account gives up nothing.  DOJ can take the 504 settlement into account whether we like it or not, and saying you will not object to its doing so still leaves you with all of your rights to object should you decide to do so once you see the final terms of the False Claims Act final settlement.

Telling the City the FHC will not object to DOJ taking the 504 settlement into account will satisfy whatever political concern will allow the 504 settlement to move forward to Judge Olguin for immediate approval, and leaves fully intact all of your rights to object in the False Claims Act case.

The City is ready to reach immediate closure on the 504 settlement once this question is answered.  Specifically, that means the settlement will move forward to final approval and submission to the Court for entry of the Settlement.  We cannot predict what will happen if you don't provide this assurance.  As you know, no settlement is final without City Council approval.  If there is no approval, the case would return to litigation.  We are happy to discuss any of this with Odion, David, the Board, and the Executive Director and staff of FHC (or any combination thereof).

In her email of June 15, Sharon suggested that she would like FHC to talk with Lisa Palombo regarding this issue and asked for her contact information.  We provided that information, and also inquired of Lisa concerning her availability.  She suggested that any call should also include Eric Schmelzer, a DOJ attorney in Washington, D.C.  Lisa offered times for the morning of Monday June 20, and we passed that information on to Sharon.  In response to Sharon's instructions, we informed Lisa that FHC was unavailable to speak during that time period.  In order to facilitate that call, I would ask that FHC provide its availability, and we can be in touch with Lisa to confirm a time that works for all relevant parties.

Kindly let us know how you would like to proceed.

Best wishes.

Jennifer Klar
Michael Allen

**Michael Allen**
Relman, Dane & Colfax, PLLC
1225 19th Street, N.W. #600
Washington, D.C.  20036-2456
Phone: 202/728-1888
FAX: 202/728-0848
E-mail: MAllen@RelmanLaw.com
Website: www.RelmanLaw.com
Admitted to Practice in the District of Columbia and Virginia

NOTE:  I CHECK AND RESPOND TO EXTERNAL E-MAIL TWICE A DAY - AT 10:00 A.M. AND AGAIN AT 3:00 P.M.  IF YOU NEED TO REACH ME AT OTHER TIMES, PLEASE CALL OUR RECEPTIONIST, AT 202/728-1888.

NOTICE:  The contents of this email and any attachments to it contain confidential or legally privileged information from the law firm of Relman, Dane & Colfax PLLC.  This information is only for the use of the intended recipient.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the comments of the contained information is strictly prohibited and that the documents should be returned to this firm immediately.  If you have received this email in error, please notify us by email immediately.

Please consider the environment before printing this email.

D41

| From: | Michael Allen |
|---|---|
| To: | James Clark |
| Cc: | John Relman |
| Subject: | RE: INDEPENDENT LIVING |
| Date: | Tuesday, April 12, 2016 5:36:00 PM |

Jim:

Preservation of the FCA claim should be done subtly, given the continued existence of the seal in that matter and the fact that this document may become public at some point.

Michael Allen
Relman, Dane & Colfax, PLLC
1225 19th Street, N.W. #600
Washington, D.C.  20036-2456
Phone: 202/728-1888
FAX: 202/728-0848
E-mail:  mallen@relmanlaw.com
Website:  www.relmanlaw.com
Admitted to Practice in the District of Columbia and Virginia

NOTE:  I CHECK AND RESPOND TO EXTERNAL E-MAIL TWICE A DAY—AT 10:00 A.M. AND AGAIN AT 3:00 P.M.  IF YOU NEED TO REACH ME AT OTHER TIMES, PLEASE CALL OUR RECEPTIONIST, AT 202/728-1888.

**From:** James Clark [mailto:james.p.clark@lacity.org]
**Sent:** Tuesday, April 12, 2016 5:34 PM
**To:** Michael Allen <mallen@relmanlaw.com>
**Cc:** John Relman <jrelman@relmanlaw.com>
**Subject:** Re: INDEPENDENT LIVING

Dear Michael and John --

As soon as Miguel has signed it, I will be sending you an executed version of the "Settlement Term Sheet" in the ILC v. City of Los Angeles matter.  By interlineation – and excuse my writing - I have amended the language of Paragraph 15, regarding the Release to reflect both a waiver of 1542 of the California Civil Code, and the preservation of the claims set forth in the qui tam action.  Things went well with Michelle,and I can elaborate on  that later.  Please initial the change to Paragraph 15; I already have done so.  Thanks and best.

Jim

James P. Clark
Chief Deputy City Attorney
800 City Hall East
200 N. Main St.
Los Angeles, CA 90012
(213) 978-8347

D42

**Sent:** Saturday, December 31, 2016, 2:53:47 PM PST
**From:** Sharon Kinlaw <SKinlaw@gmail.com>
**To:** Mei.Ling818@yahoo.com
**Subject:** Re: . . . a few matters!!

Mei

I am underwater with obligations that I must complete which is going to take me off the grid for at least 2 weeks. As much as I needed a few days to spend time with the family it has put me even further behind.

As you know, I have been trying to obtain records from the Relman folks for more than a year. I plan to continue, but I do believe that this is probably going to be a full-time endeavor. I don't think the delay has anything to do with volume, **I firmly believe it is due to content and that is precisely the reason that I will continue to request whatever documents the Relman firm and others have in their possession. We must pursue as a matter of justice.**

As for the **"listen-only" session with HUD**, I need to think about it. I am quite offended at the pre-conditions set out for the call. **As a government agency that is supposed to protect the public interest and ensure equal opportunity in housing and public accommodations, I don't think I could join the call without expressing my disdain.**

**HUD along with the City, the developers, DOJ, and the politicians is one of the reasons the problem still exist.** There should be some acknowledgement by HUD of their culpability in this and a willingness to be transparent and dialogue. **HUD has shown very little leadership in addressing the City's non-compliance (the VCA remains unsigned) or in protecting the rights of individuals with disabilities as they are allowing complaints to linger in abeyance until the "deal" is worked out.**

**HUD had a monitoring role** in all of this before the filing of the lawsuit and an enforcement role once they were put on notice of the problems. **It should not have taken an underfunded and understaffed fair housing agency and a woman seeking a reasonable accommodation to rent an affordable apartment at the Gallery to uncover this mess.**

**You have been maligned and blackballed**, the Council, but for the grace of the Almighty was put out of business. I shudder to think **how many people have had their civil rights violated, lost their housing and hope since the Council has been in a coma on life support.**

This has been a **catrotrophic failure on behalf of the local, state and federal government. I don't intend to remain silent on the matter or strike a conciliatory tone. The seal comes off in February as does our ability to shout from the mountaintops the systemic failure that has denied individuals with disabilities (and others) equal and unfettered access to taxpayer assisted housing.** There are lessons to be learned from all of this.

I won't be back into the office until 2017 - you mentioned meeting up next week, hopefully we can make that happen.

Until then have a Happy and Blessed New Year!

Sharon

D43

**Sent:** Thursday, December 8, 2016, 7:08:10 AM PST
**From:** Sharon Kinlaw <SKinlaw@gmail.com>
**To:** Mei.Ling818@yahoo.com
**Subject:** Re: Side Agreement . . . (Rushmore Cervantes to HUD Correspondence)

Mei

I have not found the side language yet.  I don't have RC letter.  I have at least 10 months of back and forth on the VCA we were working on and will try and get all of those to you.  I have to go through all of the emails.  Odion called me back last night, he is going to try and meet with us today.  I need to change some things around.  I sent you an email earlier - **could you please pass it on to Fredrick**.  - Sharon

---

**Sent:** Thursday, December 8, 2016, 7:00:34 AM PST
**From:** Sharon Kinlaw <SKinlaw@gmail.com>
**To:** Mei.Ling818@yahoo.com
**Subject:** FAITH - It's Coming!

**Mei and Pastor Newell**

For some time now the Lord has been directing me to listen to songs glorifying him.  I came upon a couple of songs and listened to them each day because they moved me.  Each morning as I study my Bible, I have been listening for about 2 month to a songstress with and angelic voice.  One of the songs, I would listen to, but not daily.

Yesterday, one of the songs just kept popping into my head and I had a revelation.  This morning during my daily devotional I was led to read the book of Habakkuk and as I was reading, the song popped into my head again.  God told me to share this with you as well as the following scripture, I am daily **working on my relationship with Christ and I do not profess to be anything but a sinner, saved by grace and diligently working daily to be obedient to GOD's word.**  GOD told me to share this with you and with Pastor Newell and that is what I am doing.

I thank GOD for giving me the words to write this message.  I pray, but am learning to pray better each day with GOD's help.  Sometimes I have been unsure about exactly what to pray for when it comes to the situation with the enemy, in the human form.  I have been praying for GOD to bind the hands of Satan and to expose their demonic presence so that they can no longer hurt his children.  And, while this has been my faithful prayer, the Holy Spirit has led me to be more intentional and led me to:
Matthew 18:19   *Again I say unto you, That if two of you shall agree on earth as touching anything that they shall ask, it shall be done for them of my Father which is in heaven.*

I believe GOD's word and I know that you and Pastor Newell and perhaps others too have been praying, but are our prayers in alignment?  Let's be more intentional, write down our prayer, agree on it and pray for GOD's will and justice to be done.

This is the song GOD placed in my spirit   https://www.youtube.com/watch?v=2FBUTeaq16k,  sung by Lecrecia Campbell who went home to glory in September.  The other two songs below have really blessed me as well and I'll include them.  It is the same song, performed by two different people.  Lecrecia's version encouraged me daily and Elder Champion's version, which I have listened to for about 2 weeks had me shouting hallelujah in my living room, because the Holy Spirit directed me to it and Elder Champion's conviction and reverence for GOD poured into my being.  His singing, arms spread wide, that let me know without a doubt that GOD heard me and is about to bring peace to this situation.

I feel so honored to **have been chosen by GOD and I am grateful to be a child of GOD, to serve Him** and to be blessed by the LORD Almighty!!

To GOD be the GLORY !!!

D44

https://www.youtube.com/watch?v=EV_Jr5MNX78        https://www.youtube.com/watch?v=1b7oo1ReyBQ

**Sent:** Tuesday, December 6, 2016, 8:00:27 AM PST
**From:** Sharon Kinlaw <SKinlaw@gmail.com>
**To:** Mei.Ling818@yahoo.com
**Subject:** Re: RE Sara Pratt: HUD Letter to City of Los Angeles (Rushmore Cervantes)

Mei

I had not thought about this letter in a very long time, but I do recall that when I actually saw the letter, which was after the meeting held at DRC, **I did think to myself that Lisa Palumbo was the first one copied and wouldn't those receiving the letter wonder who is LP and why is she being copied?**

We suspected very early on that **Dara and Autumn were told about the FCA case** and at one point **we suspected that the other plaintiffs were told** and we asked Michael and John and they denied it. **When we learned that they had filed that partial lift an entire year before we were told, we were livid.**

**The bottom line is these people are all fundamentally dishonest, they are deceivers.**

I will call you later.

---

**Sent:** Monday, December 5, 2016  12:02 PM
**From:** Sharon Kinlaw <SKinlaw@gmail.com>
**To:** Mei.Ling818@yahoo.com
**Subject:** CONFIDENTAIL ATTORNEY-CLIENT COMMUNICATION: HUD Letter to City of Los Angeles

Here's the letter - **before our butts could sit in the chair - he whipped out the letter and starting talking about it to the folks in the room at DRC.**

---

**Sent:** Monday, January 27, 2014  3:04 PM
**From:** Michael Allen <MAllen@RelmanLaw.com>
**To:** Sharon Kinlaw <SKinlaw@gmail.com>
**Subject:** CONFIDENTAIL ATTORNEY-CLIENT COMMUNICATION: HUD Letter to City of Los Angeles

Sharon:

Here is Sara Pratt's letter to Rushmore Cervantes  (copied to Michael Feuer, City Attorney).  This letter is only arriving in City e-mail boxes this afternoon, so we must keep it entirely confidential.  We have to be really careful in discussing with the lawyers and other Plaintiffs in the Section 504 litigation, for obvious reasons.

Michael Allen
Relman, Dane & Colfax, PLLC
1225 19th Street, NW, Suite 600
Washington, DC  20036
Phone: 202/728-1888
FAX: 202/728-0848
E-mail: MAllen@RelmanLaw.com
Website: www.RelmanLaw.com
Admitted in District of Columbia and Virginia

NOTICE:
The contents of this email and any attachments to it contain confidential or legally privileged information from the law firm of Relman, Dane & Colfax, PLLC. This information is only for the use of the intended recipient.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the comments of the contained information is strictly prohibited and that the documents should be returned to this firm immediately.  If you have received this email in error, please notify us by email immediately.

Please consider the environment before printing this email.

D45

**Sent:** Thursday, September 7, 2017, 8:29:51 AM PDT
**From:** Sharon Kinlaw <SKinlaw@gmail.com>
**To:** Mei.Ling818@yahoo.com
**Subject:** CRA Settlement Agreement

Hi Mei

I wanted to send you a copy of the Settlement Agreement for the CRA. We didn't get a chance to speak after the **very long meditation.** We came to a resolution at the end, and received a copy of the agreement yesterday.

We fought as hard as we could and made the best decision we could within the parameters available. **It is clear that some type of deal was cut from the beginning, even the Judge acknowledged this.**

**We have a special carve out for the Lofts and the Gallery; the way the affordability was structured at the Lofts and Gallery.** When the Lofts / Gallery were built, most of the affordable units were targeted at moderate income tenants, that posed a problem.

**In the agreement, we committed all of the low and extremely low units to the retrofitted accessible units.** That does not preclude us from obtaining more units, but it at least guarantees that tenants with disabilities (mobility / sensory) will have an opportunity to reside at the Gallery and / or the Lofts with or without a Section-8 voucher.

We had to walk a fine line because we do not want to displace other low-income tenants without disabilities. This was round 1 in my opinion, we now have to proceed to secure other forms of affordability to ensure that we can get everyone that needs a retrofitted unit placed into one without financial barriers.

We still have to create an implementation plan and we discussed conducting an audit of the affordable units, to determine who is living in them, their incomes when initially renting as well as their continued eligibility. This method will be used to figure out those persons (relatives / friends of City staff, employees and former employees of management, moderate income tenants in low/ very low-income units, etc.) whose initial placement was questionable.

It is my thought that we should approach HCD and HUD because both the state and federal government were negligent in this matter and more work needs to be done to examine their specific failures.

I believe this approach is the best opportunity we have because **it was clear that we were working against forces that were not in our favor and without knowing the specific deals that had been cut,** it was going to be impossible to unravel. It also was clear that none of the lawyers were prepared to go to Court and fight for our demands through the litigation. The way this case was pleaded and litigated, it was going to be hard to accomplish our intended goals. The jury instructions for trial were due in a couple of weeks.

The FCA case may give us an opportunity to unravel the lies and deals that were cut - I believe we have some other avenues to pursue justice and we should discuss steps moving forward.

Blessings,
Sharon

Executive Director
Fair Housing Council of the San Fernando Valley
14621 Titus Street  Suite 100
Panorama City, CA  91402
818-373-1185  (Phone) / 818-373-1193  (Fax)

D46

Scott Parrish Moore, *(pro hac vice pending)*
Anthony D. Todero, Cal. Bar No. 275315
BAIRD HOLM LLP
1500 Woodmen Tower
1700 Farnam St
Omaha, NE 68102-2068
Telephone: 402-344-0500
Facsimile: 402-344-0588
Email: spmoore@bairdholm.com

Attorneys for Plaintiff
MEI LING

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

UNITED STATES OF AMERICA *ex rel.* MEI LING and FAIR HOUSING COUNCIL OF SAN FERNANDO VALLEY,

Plaintiffs,

v.

CITY OF LOS ANGELES, CALIFORNIA and COMMUNITY REDEVELOPMENT AGENCY OF THE CITY OF LOS ANGELES,

Defendants.

No. CV 11-00974 PSG (JCx)

DECLARATION OF SHARON KINLAW IN SUPPORT OF MEI LING'S CONSENT TO LEAVE & OBJECTION TO NOTICE OF LIEN

---

I, Sharon Kinlaw, having personal knowledge of the facts contained in this declaration and being competent to testify to them, hereby state as follows:

1. I am the Director of the Fair Housing Council of San Fernando Valley ("FHC").

2. I submit this declaration in support of Mei Ling's Consent to Leave and Objection to the Notice of Lien proposed by Relman, Dane, & Colfax PLLC (the "Relman Firm").

3. The Relman Firm represented the FHC as co-relator in this matter (the "False Claims Case") until the FHC terminated its services in or around January 2017.

4. The Relman Firm also represented the FHC in the matter styled *Independent Living Center of Southern California v. City of Los Angeles*, No. 2:12-cv-00551 (the "Section 504 Case") in which the plaintiffs alleged that the City of Los Angeles and others violated Section 504 of the Rehabilitation Act by failing to ensure that housing receiving federal financial assistance from the United States Department of Housing and Urban Development ("HUD") included required accessibility features.

5. On or about August 4, 2016, the court in the Section 504 Case entered a judgment pursuant to a settlement agreement by and between the plaintiffs and the City of Los Angeles under which the City agreed to, among other things, pay $200 million over a ten-year period to address the inaccessibility of the housing. The City also agreed to pay the Relman Firm over $16,000,000 in attorney's fees and costs in connection with the

2

---

settlement.

6. The FHC had signed a settlement agreement with the City, but the FHC had not yet received a signed copy of the agreement with the City. Therefore, the FHC contacted the Relman Firm to determine what was happening. The Relman Firm informed the FHC that the City Council was required to review and approve the settlement agreement and the City Council would not approve the settlement agreement without a "side agreement." The Relman Firm also indicated the "side agreement" would not be included in the settlement agreement or any filing with the Court. Under this "side agreement," the FHC would not oppose the City's assertion that it should receive a "credit" for the amount paid in the Section 504 Case in the settlement of the False Claims Case.

7. In addition to discussions over the telephone and in person with the Relman Firm's attorneys, Michael Allen sent emails to FHC on June 22, 2016 and June 23, 2016, in which he expressly recommended that the FHC not oppose the City's assertion that the settlement of the 504 should be taken into account in settling the False Claims Case. A true and accurate copy of the emails are attached hereto as Exhibit A1 and A2.

8. I am authorized by the FHC to make a knowing and voluntary waiver of the attorney-client privilege with regard to the two emails described in this declaration as well as any other communication with the Relman Firm regarding its recommendation that FHC inform DOJ that it would not oppose giving the City a "credit" for the amount

3

---

paid in the Section 504 Case in the settlement of the False Claims Case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ____August 4, 2017____

*Sharon Kinlaw*
Sharon Kinlaw

DOCS/1922939.2

4

D47

**Sent:** Friday, July 19, 2013  3:58 PM
**From:** Mei.Ling818@yahoo.com
**To:** Scott Moore <SPMoore@BairdHolm.com>;  Michael Allen  <MAllen@RelmanLaw.com>
**Subject:** Quid Pro Quo ... DOJ - HUD Involvement

**Scott ... Michael ...**

Will you please review this attachment, if you have not already seen it prior to now.  Though the basis of
St. Paul's housing discrimination / false claims certification issues in this Quid Pro Quo matter - has not to
do with wheelchair accessibility ... the **political wrangling** that occurred with the DOJ and HUD (including
Sara Pratt), in a big City that encompassed **political driven entities ... raises questions regarding our
FCA matter ... which has even greater political impact in the much bigger "Los Angeles" / Latino-
based metropolis. Obama was very politically reliant on the Latino vote - - **through former Mayor
Antonio Villaraigosa, *who has now termed-out* ... leaving L.A. is in a <u>worse</u> <u>condition</u> than before becoming
Mayor.  Villaraigosa (who wants to run for Governor of California) *and perhaps his former appointee
Mercedes Marquez* ... is still very closely associated with Obama. **Do we know what other significant
Federal cases are pending that can possibly place our FCA matter in a similar Quid Pro Quo ...
which may also stifle, or is stifling Lisa Palombo's efforts ... including with Mark Byrne who is not being
cooperative??**  As to the St. Paul matter discussed in the attachment - - why wouldn't Thomas Perez
want the Supreme Court to decide the disparate impact issue?** Disparate impact factors are very relevant
to our wheelchair accessibility issues.

My transportation has arrived.  Have to dash ...

Mahalo,

*Mei Ling*

http://www.washingtonpost.com/blogs/post-politics/wp/2013/07/18/senate-confirms-thomas-perez-as-labor-secretary/

http://abcnews.go.com/ABC_Univision/Politics/thomas-perez-obamas-latino-cabinet-nominee-
moves-confirmation/story?id=19693398

http://www.washingtonpost.com/blogs/federal-eye/wp/2013/05/16/thomas-perez-confirmation-
saga-continues-with-upcoming-committee-vote/

http://www.washingtonpost.com/blogs/federal-eye/wp/2013/05/07/lawmakers-clash-in-hearing-over-perez-
dealings-at-justice-department/

http://www.reuters.com/article/2013/04/18/us-usa-congress-labor-idUSBRE93H1CX20130418


**Sent:** Monday, November 5, 2018, 2:57:07 PM  PST
**From:** Mei.Ling818@yahoo.com
**To:** Michael Allen <MAllen@RelmanLaw.com>;  John Relman <JRelman@RelmanLaw.com>
**Subject:** Demand for CV11-0974 and CV11-7774 Client Mei Ling's Files and Records

**Attention:  Michael Allen  and  John Relman**

**( ... *in pertinent part* ... Mei Ling wrote to Michael Allen and John Relman about their conning a pastor)**

**Imagine our surprise when learning you / RDC were the "co-Counsel" in this St. Paul Quid Pro Quo
matter ... to the detriment of its "client" Pastor Newell's vision for his community ... then similarly
sabotaging that case. Yet, regarding your Dallas case ... how is this not the "pot calling the kettle black"?**

By 9:00a.m. EST, please provide me with the requested tracking number to all of my CV11-0974 and
CV11-7774 client files being dutifully shipped / returned to me.

**Mei Ling**
**Mei.Ling818@yahoo.com**

D48

Case 2:19-cv-08612-PSG-JC  Document 110-1  Filed 04/10/20  Page 64 of 77  Page ID
#:1393

Declaration of Bahram Amiri *(excluded from CRA-LA's NoHo housing)*

# Exhibit "E"

# DECLARATION of BAHRAM AMIRI

**I, BAHRAM AMIRI, declare that:**

1.    The information set forth below is known to me through firsthand knowledge. I am older than 18 years of age, and am a resident in the City and County of Los Angeles.  If called to testify as a witness in this matter, I could and would competently testify under oath as to the facts set forth below:

2.    I am a wheelchair user who has been in dire need of mobility accessible housing for the past 11+ years - yet continue to be denied access at every level to Los Angeles' Affordable Housing Program.  More than a dozen individuals with sensory and mobility disabilities were planning to be in your Courtroom on Nov. 16, 2017 to inform you why the **(60) CRA-LA properties should not be dismissed** from the **CV12-0551** case - until <u>after</u> the required numbers of retrofitted units at all CRA-LA properties are complete, and in full compliance with all of its §504 obligations. November 16, 2017 was instead taken off calendar.

3.    The City of Los Angeles' and CRA-LA's  North Hollywood Redevelopment Project, was constructed as a "transit-oriented village" adjacent to North Hollywood's accessible public transportation hub, and has the City's most accessible infrastructure for wheelchair users.  However, the two properties developed with millions of HUD funds  (namely the Gallery at NoHo Commons, and Lofts at NoHo Commons) - are literally controlled by attorney Theresa Kitay who has collaborated with the CRA-LA, the City of L.A., and Relman, Dane, Colfax to keep "the 5%-2%" with accessibility needs, from occupancy in its required (53) UFAS compliant units. I have been to both of these properties since 2006 while under construction for "just one" accessible unit at either of these property's "Affordable Housing Program".  Instead, Theresa Kitay has as array of tactics, including the L.A.P.D. being called to have wheelchair users removed when we go there to see and inquire about its required retrofitted units.

**4.** I have experienced that CV12-0551 was not about housing placements for the "5%-2%" with UFAS accessible needs. Instead this **exploitation** of the disabled case, was structured for participating attorneys to be enriched by years of billable hours.

**5.** One reason Michael Allen, Reed Colfax, John Relman, and their RDC law firm are eager to withdraw from this case, is to escape being accountable about the many **falsities in the pleadings filed in this case** - which RDC has improperly been enriched by nearly 20 million of Los Angeles' public taxpayers dollars. For example, please scroll down to see a Declaration in my name that Michael Allen filed **"In Camera"** - using of my name, and **forging my name**, when seeking attorney fees and costs. This was done <u>without</u> my knowledge and permission. RDC and the City of Los Angeles have ignored my below correspondences. I have gone to Councilman Paul Krekorian's office, and he has no concern to do anything. Plaintiff SFV-FHC has known about this opposed forgery and many other false pleadings by RDC - however has not acted to bring these Civil Code violations to this Court's attention. Many other filed Declarations, can also be forged. It is questionable when Relman Dane Colfax files **"in camera"** pleadings and hides behind "confidentiality" pretenses. The remedy is not to be permitted to Withdraw, but dutifully reported to the State Bar.

**6.** The costly 50+ million of dollars the City has paid for billable legal hours in this exploitation of the ADA and disabled, has been at exorbitant cost to Los Angeles' taxpayers - where this "lawyers' game" case, cannot benefit only attorneys - while leaving L.A.'s disabled in far worsened inaccessible housing conditions than before this 2012 filing. Attorney Theresa Kitay who represents 51 of the CRA-LA owner defendants has had her client properties call the L.A. Police Dept. to have at least a dozen wheelchair users removed from CRA-LA's North Hollywood properties when we go to request accessible units. This has occurred to me and many other wheelchair users at least 15 times. The pretense of retrofitting 4,000 units is **meaningless** when there is no intention for actual housing placements in the City of Los Angeles' and

CRA-LA's required 5%-2% units for those with disabilities *(particularly, at CRA-LA's accessible transit-oriented NoHo Community Redevelopment project that has 53 required UFAS units)*.

    **7.**    The accompanying February 21, 2017 and February 14, 2017 emails are true and correct copies of my oppositions to Michael Allen and John Relman using my information with a forged signatory without my consent and knowledge, which were ignored – including by Mayor Eric Garcetti, and the City Councilmembers.

    **8.**    I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct, and that this declaration was executed in North Hollywood, California on February 7, 2018

Respectfully submitted,

By _____
           Bahram Amiri

Declaration of Pastor Newell - St. Paul Quid Pro Quo (Tom Perez / RDC)

**Exhibit "F"**

# Declaration of Fredrick Newell

I, **FREDRICK NEWELL, declare that:**

1. The information set forth below is known to me through firsthand knowledge. I am a resident of St. Paul Minnesota, and if called to testify as a witness, I would and could competently testify under oath about the following facts:

2. I was the Relator in the False Claims Act Case 09-SC001177 (D. Minn.), which was the subject of investigation by the House Comm. on Oversight and Gov't Reform, and both the Senate and the House Committees on the Judiciary. The Joint Staff Report to the https://republicans-**oversight.house.gov**/wp-content/uploads/2013/04/**DOJ-St-Paul**.pdf 113th Congress details former Asst. A.G. Thomas Perez's Quid Pro Quo with St. Paul - by manipulating justice and ignoring rules of law. DOJ's supporting documents to the Report https://republicans-oversight.house.gov/wp-content/uploads/2013/04/Appendix-I-**Docs**.pdf reveals facts that by November 22, 2011 - my FCA case rose to the level of intervention by the Dept. of Justice, with concurrence by HUD (see DOJ Docs. at pgs 3 -26, and Report).

3. Under false pretenses in August 2010, HUD's Region 5 Director Maury McGough pursuaded my *then* counsel Thomas DeVincke - to have me retain Relman Dane Colfax's attorney Michael Allen as his co-counsel in my FCA case, based on Allen's 2009 settlement in his "Westchester, N.Y." FCA case, and his very close association with HUD's Sara Pratt. It was <u>not</u> disclosed to me at this time - the reason for RDC's co-counsel agreement, was to provide Michael Allen and John Relman a guise to meet with St. Paul city officials <u>for</u> DOJ's **Tom Perez** - to use my FCA case as leverage to take an unrelated "disparate impact" case off the Supreme Court's calendar. I learned about Perez's and Pratt's secret Quid Pro Quo 8 months <u>after</u> it occurred when an investigators called in Oct. 2012, to meet with me about their Congressional investigation of Perez's violating rules of law and manipulations using my FCA case. Pretending to be "co-counsel" - Michael Allen and John Relman **concealed** they were **agents** to DOJ's Tom Perez and HUD's Sara Pratt, to <u>derail</u> St. Paul's "Magner" disparate impact case, by knowingly leveraging my FCA case and forfeiting my interests.

1 | **Sent:**    **Thursday, February 09, 2012**   **6:13 PM**
**From:**    **Thomas F. DeVincke**   **<TFD@mgmllp.com>**

2 | **To:**    **Fredrick Newell**   **<nasi@qwest.net>; Michael Allen <MAllen@RelmanLaw.com>**
**Subject: Update**

3 | Gentlemen: About an hour ago, the Dept. of Justice officially declined the FCA action.   I am in a
deposition right now, but I wanted to get the bad news out right away. We can talk tomorrow. Tom

4 |

5 | Thomas F. DeVincke
Malkerson Gunn Martin LLP

6 | _____ then after the Feb. 12, 2012 Quid Pro Quo occurred _____

7 | **Sent:**   **Tuesday, February 14, 2012**   **8:46 AM**
Michael Allen < MAllen@RelmanLaw.com>
**To:**    **Thomas F. DeVincke**   **<TFD@BDBLLP.com>**
**Subject: RE: Article**

8 |

9 | ... We knew that Magner was a brewing problem   (recall that we quietly tried to derail it ...)
... John Relman and I visited with Sara Grewing when we were in town in November (to confer with
Shoemaker and Engel about how to stop this train wreck of a case from going to decision by the

10 | Supremes), and came away convinced   (and distressed) that the City was going to put the pedal to the
metal in its brief, which it clearly did.

11 |      4.     Once the Quid Pro Quo was achieved on Feb. 10, 2012, Michael Allen withdrew

12 | as counsel and refused to provide me with an explanation. Tom DeVincke who became my

13 | counsel in 2005, went through the motions of pretending to act as counsel in my FCA case,

14 | *which proceeded without DOJ's intervention* - fully knowing DOJ and HUD measures were

15 | fabricated to reach predisposed denial outcomes. It was concealed from me in 2011 - that

16 | DOJ and HUD arranged a "pass the hat" fund for attorney DeVincke's fees and damages.

17 | **From:**     Pratt, Sara K [RC-1
**Sent:**     Sunday, November 13, 2011 2:59 PM

18 | **To:**      Perez, Thomas E (CRT)
**Subject:**   Magner

19 |

20 | Michael Allen and John Relman are going to meet with the appellees counsel a week from tomorrow (next Monday) to
find out what blandishments will be needed. For one of the attorneys, passing the hat may be necessary—there ARE

21 | still some fees and damages questions. There are other efforts going on by St. Paul players (Myron Orfield, Jay
Wilkinson) with the city players and lawyers.

22 | Sara K. Pratt
Deputy Assistant Secretary for Enforcement and Programs     **true and correct copy**

23 | Department of Housing and Urban Development     **from DOJ's documents**
451 Seventh Street, SW

24 | Room RC-1                 **pgs. 27 and 30 of 270**
Washington, D.C. 20410

25 | RC-1 (direct line)

26 | **From:**     Perez, Thomas E (CRT)
**Sent:**     Wednesday, November 23, 2011 2:29 PM
**To:**      Sara Pratt

27 | **Subject:**   Re: Magner

28 | Can u call me asap at 202 RC-1

**5.** I learned this in April 2013 from documents provided me from the Congressional investigation. It explained why: **a)** Thomas DeVincke suddenly left the Bonner & Borhart law firm in Feb. 2012, concurrent with Tom Perez finalizing his Quid Pro Quo; **b)** DeVincke never asked me for $127,000 of legal fees for 8+ years of representation; and **c)** DeVincke stating his abrupt departure related to irreconsilible differences with the firm, who could not engage in or deposit ill-begotten "Quid Pro Quo pass the hat funds" into the firm's account.

**6.** Another close associate who Michael Allen deferred to relating to my FCA case, was DOJ's senior trial attorney **William Edgar**. After numerous stipulations for this case to remain under seal - in Sept. 2011, there were opportunities to partner with entities aligned with providing jobs to St. Paul's low income community - requiring a "partial lift" of the seal to discuss and launch related structural plans. Michael Allen advised against a "partial lift" after he conferred with "Bill" Edgar, stating that the DOJ was close to its December 1, 2011 intervention decision date. Michael Allen, John Relman, and Bill Edgar did not disclose to me they were secretly coordinating with Tom Perez & Eric Holder to knowingly and willfully use my FCA case as a Quid Pro Quo "leverage" piece to "derail" the St. Paul Magner case from being heard and decided by the Supreme Court. By refusing to permit a "partial lift" of the seal - Allen, Relman, Edgar, Pratt, Perez and Holder - each knowingly and intentionally made false representations adverse to this Relator and the St. Paul community, in order to advance their agenda by manipulating justice and laws, to accomplish their Quid Pro Quo.

**7.** The Congressional documents revealed that agents in DOJ's Civil Fraud Division involved in Tom Perez's Quid Pro Quo with *then* Attorney General Eric Holder, leveraging my FCA case – included Bill Edgar, Eric Schmelzer, Sara McLean and Michael Granston. As a result of their joint abuse of powers, the St. Paul community was irreparably harmed.

**8.** The 2/9/12, and 2/14/12 emails between DeVincke and Allen are true and correct.

**9.** I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct.

March 10, 2018                    by _____
                                              Pastor Fredrick Newell

Declaration of Fredrick Newell                    - 3 -

Scott Moore - continuing refusal to provide client records

Exhibit "G"

**To: Jonathan Breuning** *- Counsel to Baird Holm Law Firm*
**Cc: Scott Moore / Mark Goldsmith**

As you know I have called and written numerous times for Baird Holm to release <u>all</u> original client records for **all** cases: CV11-0974, the appellate case, and CV18-0495 / CV19-8612. Please cease with your concealing, destroying, withholding my client records ... and **refusing** my numerous requests for Baird Holm to simply comply with its legal duties to provide me with **all** of my original client files. I have <u>not</u> had the professional duty of any follow through from Baird Holm on this matter ... just Scott Moore's willful <u>false</u> March 21, 2019 Declaration pleadings filed in a Federal Court to knowingly mislead a Federal judge - such as **knowingly lying** that: "at Mei Ling's request, Baird Holm has already provided Mei Ling a copy of all client materials and property as defined by California Rules of Professional Conduct 1.16(e)".

Scott Moore executing such a **falsity** under penalty of perjury for filing in a Federal Court - has legal ramifications. When I wrote attorney Moore last year for the tracking number with the date of his purported 2019 release of my client records - he <u>could</u> <u>not</u> provide it to me, because **he knew he <u>never</u> sent them to me**.

Baird Holm's intentional misconduct has been knowingly detrimental to me, my health & well being, attributed to injuries, *and among but not limited to other issues* ... has greatly prejudiced my cases over the past years - while intentionally prevents competent counsel from a full review of all records.

As Baird Holm's counsel - please facilitate someone from Baird Holm boxing and immediately sending **me all of my original client records** for my receipt by February 28, 2020, including providing me with a tracking number of such shipment by February 26, 2020. Attorney Moore had a duty to provide me with **<u>full</u> disclosure on everything**, and **<u>not</u> conceal** all information that I requested for me to be fully informed. His January 18, 2019 consent for Withdrawal letter came two days after my below Jan. 16, 2019 request for specific records - where it is now revealed that the truth relating to Moore publicly discrediting of me with filing slanderous and libelous Federal Court records - had more truthfully to do with covering up of his own negligence and collaborations with DOJ agents, and other parties related to the CV11-0974 case.

> **Sent:** Wednesday, January 16, 2019  3:59 AM
> **From:** Mei.Ling818@yahoo.com
> **To:** Scott P Moore <SPMoore@BairdHolm.com>; Jonathan Breuning <JBreuning@BairdHolm.com>
> **Subject:** 2nd Request for Activity - Billing Records for CV11-0974 and CV18-0495
>
> **Scott Moore -**
>
> There are many matters that I am still reviewing and needing to process so I can have an informed and productive discussion with you. Before such discussion, it is important that you provide me with complete **accounting records** of the time / dates of all your **activities** from Sept. 2012 to present, for <u>both</u> cases **CV11-0974** and **CV18-0495**, that have full descriptions of your activities, and which includes *but is not limited to*: **1)** all phone calls, oral communications, meetings, with or between you, any Baird Holm entity, any DOJ agent, any HUD agent, any RDC entity, Covington, and / or any other entity such as Theresa Kitay - relating to Mei Ling; **2)** all written communications, documents, texts, and email exchanges to, from, or between you, any Baird Holm entity, any DOJ agent, any HUD agent, any RDC entity, Covington, and any other entity such as Theresa Kitay relating to Mei Ling; in addition to, **3)** true and correct copies of all written communications, documents, texts, and email exchanges to, from, or between you, any Baird Holm entity, Bill Edgar or any DOJ agent, any HUD agent, any RDC entity, Covington, the City of L.A. / CRA-LA, and any other entity such as Theresa Kitay related to Los Angeles' accessibility matters that you have not provided to me.
>
> _____
>
> **Please be certain that included among my client records, are:**

- All records, notes, emails, texts, documents, communication exchanges in any form between Scott Moore, Mark Goldsmith, anyone at Baird Holm, Don Warren, Phil Benson, DOJ's William Edgar, Michael Granston, Sara McLean, Eric Schmelzer, Lisa Palombo, Ross Cuff, David Barrett, Abraham Meltzer, anyone at the USDOJ, Michael Allen, John Relman, Reed Colfax, Sara Pratt, anyone at Relman Dane Colfax's firm, Tom Perez, Eric Holder, Benjamin Razi, Ellen Choi, Andrew Soukop, Ryan Weistein, Mitch Kamin, Steven Winkleman, Dan Rios, Scott Cunningham, anyone at the Covington law firm, Odion Okojie, David Iyalomhe, Jeanine Worden, Anna Farias, Paul Compton, Lynne Grosso, anyone from HUD, Pamela Johnston, anyone at the Foley Lardner law firm, Steven Valenzuela, Tom Webber, anyone from CRA-LA, John Hansberry, Amanda Murray, anyone from the Fox-Rothschild law firm, James P. Clark, Robert Moore, anyone from Los Angeles' City Attorney's office, Paul Krekorian, Eric Garcetti, Richard Llewellyn, anyone from the City of Los Angeles, Theresa Kitay, Paul Tiao, Robert Caplen, and any other person or entity ... regarding any matter related to, intrinsically related to, or in any way impacting on CV11-0974, CV18-0495 / CV19-8612, my HUD complaints - or related to the Gallery at NoHo Commons, and Lofts at NoHo Commons properties ... where **I will** *(not Baird Holm / attorney Moore)*, **determine what is relevant.**

- Complete phone logs (from Scott Moore's Baird Holm office line *or any other Baird Holm phone line used*, cellphone number(s), home phone line, or any other phone line used), of all conversations between Scott Moore / Mark Goldsmith, anyone at Baird Holm, Don Warren, Phil Benson, DOJ's William Edgar, Michael Granston, Sara McLean, Eric Schmelzer, Lisa Palombo, Ross Cuff, David Barrett, Abraham Meltzer, anyone at the USDOJ, Michael Allen, John Relman, Reed Colfax, Sara Pratt, anyone at the Relman Dane Colfax law firm, Tom Perez, Eric Holder, Benjamin Razi, Ellen Choi, Andrew Soukop, Ryan Weinstein, Mitch Kamin, Steven Winkleman, Dan Rios, Scott Cunningham, anyone at the Covington firm, Odion Okojie, David Iyalomhe, Jeanine Worden, Anna Farias, Paul Compton, Lynne Grosso, anyone at HUD, Pamela Johnston, anyone at the Foley Lardner law firm, Steven Valenzuela, Tom Webber, anyone from CRA-LA, John Hansberry, Amanda Murray, anyone from the Fox-Rothschild law firm, James P. Clark, Robert Moore, anyone from Los Angeles' City Attorney's office, Paul Krekorian, Eric Garcetti, Richard Llewellyn, anyone from the City of Los Angeles, Theresa Kitay, and any person or entity ... regarding any matter related to, intrinsically related to, or in any way impacts on CV11-0974, CV18-0495 / CV19-8612, my HUD complaints - or related to the Gallery at NoHo Commons, and Lofts at NoHo Commons properties ... where **I will** *(not Baird Holm / attorney Moore)*, **determine what is relevant.**

- Please be certain all records and notes relating to when Scott Moore learned of his, Relman Dane Colfax's, and the Dept. of Justice's negligence that the **recovery period from Government defendants** City of Los Angeles and the CRA-LA for its **false certifications** - was applicable for **10 years**, and not 6 years ... and are promptly provided to me - not concealed, withheld, or destroyed.

- All records, notes, communication exchanges to, from, or between Scott Moore, Mark Goldsmith, anyone at Baird Holm, Phil Benson, Don Warren, DOJ's William Edgar, Lisa Palombo, Eric Schmelzer, Ross Cuff, anyone at the USDOJ, Michael Allen, John Relman, Reed Colfax, Sara Pratt, anyone at the Relman Dane Colfax law firm, Tom Perez, Eric Holder, Benjamin Razi, Ellen Choi, Andrew Soukop, Ryan Weinstein, Steven Winkleman, Dan Rios, Mitch Kamin, Scott Cunningham, anyone from the Covington law firm, Odion Okojie, David Iyalomhe, Jeanine Worden, Anna Farias, Paul Compton, Lynne Grosso, anyone from HUD, Pamela Johnston, anyone at CRA-LA, John Hansberry, Amanda Murray, anyone from the Fox-Rothschild law firm, James P. Clark, Robert Moore, anyone at Los Angeles' City Attorney's office, Paul Krekorian, Eric Garcetti, Richard Llewellyn, anyone at the City of Los Angeles, Theresa Kitay ... regarding any matter resulting in the **confidential non-disclosure agreements** surrounding the False Claims Act applicable **10 year** recovery period from the City of Los Angeles and the CRA-LA for its **false certifications** - relating to CV11-0974, and intrinsically related to CV18-0495 / CV19-8612612 ... **including** providing me with true and correct copies of all drafts, all revised drafts, and final drafts of such **non-disclosure agreements** provided to Scott Moore / Baird Holm - whether executed, not executed, voided, or withdrawn.

- All records, notes, communication exchanges to, from, or between Scott Moore, Mark Goldsmith, anyone at Baird Holm, Phil Benson, Don Warren, DOJ's William Edgar, Lisa Palombo, Eric Schmelzer, Ross Cuff, anyone at the USDOJ, Michael Allen, John Relman, Reed Colfax, Sara Pratt, anyone at the Relman Dane Colfax law firm, Tom Perez, Eric Holder, Benjamin Razi, Ellen Choi, Andrew Soukop, Ryan Weinstein, Steven Winkleman, Dan Rios, Mitch Kamin, Scott Cunningham, anyone from the

Covington law firm, Odion Okojie, David Iyalomhe, Jeanine Worden, Anna Farias, Paul Compton, Lynne Grosso, anyone from HUD, Pamela Johnston, anyone at CRA-LA, John Hansberry, Amanda Murray, anyone from the Fox-Rothschild law firm, James P. Clark, Robert Moore, anyone at Los Angeles' City Attorney's office, Paul Krekorian, Eric Garcetti, Richard Llewellyn, anyone at the City of Los Angeles, Theresa Kitay ...regarding all matters and all reasons relating to the United States Dept. of Justice **"voluntarily dismissing the first 4 years of the CV11-0974 related false claims** even though **it was not required by the Court".**

- All records, notes, communication exchanges to, from, or between Scott Moore, Mark Goldsmith, anyone at Baird Holm, Phil Benson, Don Warren, DOJ's William Edgar, Lisa Palombo, Eric Schmelzer, Ross Cuff, anyone at the USDOJ, Michael Allen, John Relman, Reed Colfax, Sara Pratt, anyone at the Relman Dane Colfax law firm, Tom Perez, Eric Holder, Benjamin Razi, Ellen Choi, Andrew Soukop, Ryan Weinstein, Steven Winkleman, Dan Rios, Mitch Kamin, Scott Cunningham, anyone from the Covington law firm, Odion Okojie, David Iyalomhe, Jeanine Worden, Anna Farias, Paul Compton, Lynne Grosso, anyone from HUD, Pamela Johnston, anyone at CRA-LA, John Hansberry, Amanda Murray, anyone from the Fox-Rothschild law firm, James P. Clark, Robert Moore, anyone at Los Angeles' City Attorney's office, Paul Krekorian, Eric Garcetti, Richard Llewellyn, anyone at the City of Los Angeles, Theresa Kitay ...explaining all matters and relating to  all reasons the United States Dept. of Justice **"voluntarily dismissing the first 4 years of the CV11-0974 related false claims** even though **it was not required by the Court".**

- All records, notes, communication exchanges to, from, or between Scott Moore, Mark Goldsmith, anyone at Baird Holm and with Phil Benson or Don Warren that provided Warren-Benson written consent and authorization (without my knowledge or written consent), for Warren-Benson to use my name and any of my absolute strictly **HIPAA protected medical / health related circumstances'** in its CV18-0495 / CV19-8612 pleadings to aid, defend, and/or advance co-Relator Fair Housing Council's interests.

- Baird Holm's communication exchanges with **Don Warren / Phil Benson** - particularly regarding the "Affirmative Defenses" which they discussed with Scott Moore and / or Mark Goldsmith - and as were plead in their CV19-8612 Docket # **63** - and used as leverage to assure FHC's backdoor "side agreements" with the City of L.A, CRA-LA, and U.S Dept. of Justice.

- a list of all the legal briefs that *now* Covington attorney Ellen Choi had researched and prepared for Judge Gutierrez in the CV11-0974 case, not just the CV19-8612 case ... such as the very relevant Docket # **215** Motion for Reconsideration Order - regardless of Scott Moore believing that there is no existing "procedure" to identify this information.

- Drafts of discovery - Interrogatories, Subpoenas, Production of Documents, Deposition Notices, etc., that Baird Holm had prepared to send to Covington, and others by next week ... including the scheduling of a Deposition of CV11-0974 co-Relator Sharon Kinlaw's - pursuant to her below offer:

> **Sent:** Saturday, June 24, 2017, 5:02:05 PM  PST
> **From:** Sharon Kinlaw <SKinlaw@gmail.com>
> **To:** Mei.Ling818@yahoo.com
> **Subject:** Fwd: United States v. City of Los Angeles (11-cv-974): Relman Dane & Colfax's motion for leave to appear
>
> Please ignore my grammatical errors, I am not feeling well, but wanted to get something over to them before any more phone calls take place.
>
> Also, I was wondering if Scott can now subpoena the records from the City, HUD, DRC and from the Relman firm related to side letter, global settlement discussions, VCA, DOJ investigations, credits the joint meetings, etc.  Perhaps Scott can interview Sandy and I about anything we remember that might be helpful.  I realize he would have to do this in the presence of the lawyers, but that is okay too.
>
> Sharon Kinlaw
> Executive Director
> Fair Housing Council of the San Fernando Valley
> 14621 Titus Street - Suite 100
> Panorama City, CA  91402
> 818-373-1185  (Phone)  /  818-373-1193  (Fax)

- Subpoena Duces Tecums with Deposition, or Production of Documents and Things can include being provided <u>all</u> communications related to FHC's Paragraphs 73 and 74 pleadings of RDC's breaches of fiduciary duty and termination of RDC as a result of **"Relman's false representations to FHC that co-relator Mei Ling had approved a side agreement that FHC would not oppose an attempt by the City of Los Angeles to obtain a credit in the False Claims Act case (11-cv-00974) for the amount of its settlement in case no.12-CV-00551"**.

I am awaiting your / Baird Holm's fullest cooperation and swift attention to the foregoing production and my timely receipt of all specific items.  Should I not receive a tracking number by 5:00pm CST / 3:00pm PST tomorrow indicating delivery by February 28, 2020 ... I will be informing the Federal Court of the foregoing continuing refusals by Baird Holm, in addition to notifying the Nebraska and California State Bars - and other entities.

**Thank you,**
**Mei Ling**

**Mei.Ling818@yahoo.com**

**Ph:  (818) 644-3923**

1

## **PROOF OF SERVICE BY MAILING**

2

3       I am over the age of 18 and not a party to the within action.  I am a resident of the

4  County of Los Angeles at 6750 Whitsett Ave. #206  in North Hollywood, Calif.  91606

5       On March 9, 2020  I served:

6  **COUNTER-CLAIMANT MEI LING'S PARTIAL OPPOSITION COUNTER
   DEFENDANT RELMAN, DANE, COLFAX'S MOTON TO DISMISS
7  COUNTER-CLAIMS;  DECLARATION OF MEI LING IN SUPPORT OF;
   LODGED CONCURRENTLY [PROPOSED ORDER]**

8  on each person or entity named below, via email - a true copy of the above-captioned

9  documents, pursuant to written consent by Covington & Burling for Relman, Dane Colfax

10 … and Warren Benson for the Fair Housing Council.

11 Persons and/or Entities to whom were emailed are:

12

13 **Ryan H. Weinstein,  Andrew Soukop**          **Benjamin Razi,  Steve Winkelman**
   Covington & Burling LLP                       Covington & Burling LLP
14 1999 Avenue of the Stars - Suite 3500         One City Center
   Los Angeles, California  90067-4643           850 Tenth Street, N.W.
15 E:mail:  RWeinstein@Cov.com                   Washington, D.C.  20001-4956
16        ASoukop@Cov.com;   BRazi@Cov.com;   SWinkelman@Cov.com

17  *for Fair Housing Council …*

18 **Donald Warren,   Phillip Benson**
   7825 Fay Avenue - Suite #200
19 La Jolla, California  92037
   E:mail:  **DonWarren@WarrenBensonLaw.com;**
20         **PhilBenson@WarrenBensonLaw.com**

21

22       I declare under penalty of perjury under the laws of the United States of America,

23 that the foregoing is true and correct.

24

25 Executed on March 9, 2020

26                                         *Althemus Joseph Delahoussaye*
                                           Althemus Joseph Delahoussaye
27

28