Ryan H. Weinstein (Bar No. 240405)
 rweinstein@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, California 90067-4643
Telephone: + 1 (424) 332-4800
Facsimile: + 1 (424) 332-4749

Benjamin J. Razi (admitted *pro hac vice*)
 brazi@cov.com
Andrew Soukup (admitted *pro hac vice*)
 asoukup@cov.com
Steven Winkelman (admitted *pro hac vice*)
 swinkelman@cov.com
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000

*Attorneys for Plaintiff / Counter-Defendant*
RELMAN COLFAX PLLC

UNITED STATES DISTRICT COURT

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| RELMAN COLFAX PLLC,<br><br>    Plaintiff,<br><br>    v.<br><br>FAIR HOUSING COUNCIL OF SAN FERNANDO VALLEY AND MEI LING,<br><br>    Defendants.<br><br>MEI LING,<br><br>    Counter-Claimant,<br><br>    v.<br><br>RELMAN COLFAX PLLC,<br><br>    Counter-Defendant. | Case No. 2:19-cv-08612-PSG-JC<br><br>**RELMAN COLFAX PLLC'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR FOR DEFAULT JUDGMENT AGAINST MEI LING**<br><br>**[Declarations of Steven J. Winkelman and Michael Allen filed concurrently]**<br><br>Hearing Date: November 16, 2020<br>Hearing Time: 1:30 p.m.<br>Judge: Honorable Phillip S. Gutierrez<br>Courtroom 6A |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on Monday, November 16, 2020 at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 6A of the above-entitled Court, located at 350 W. First Street, Los Angeles, California 90012, Plaintiff and Counter-Defendant Relman Colfax PLLC (the "Relman Firm") will and hereby does move the Court under Fed. R. Civ. P. 56 for an order granting summary judgment in favor of the Relman Firm or for an order under Fed. R. Civ. P. 37(d) entering sanctions in the form of a default judgment against Ms. Ling and dismissing Ms. Ling's remaining counterclaim. This Motion is supported by this Notice of Motion and Motion, the accompanying Memorandum, Statement of Uncontroverted Facts, Declaration of Steven J. Winkelman and exhibits thereto, Declaration of Michael Allen and exhibits thereto, and any further evidence and written and oral argument as may hereafter be presented.

Counsel for the Relman Firm contacted Ms. Ling on Friday, September 4, 2020, to arrange a L.R. 7-3 conference and have made themselves available at multiple times suggested by Ms. Ling, but Ms. Ling has failed to confer.  Further, pursuant to L.R. 37-1, counsel for the Relman Firm served a letter on Ms. Ling on April 27, 2020 to request a pre-filing conference regarding her discovery obligations.  Ms. Ling failed to respond to that letter and has otherwise failed to confer in a timely manner in accordance with L.R. 37-1.  *See* Winkelman Decl. ¶¶ 20-22.

DATED: September 14, 2020          COVINGTON & BURLING LLP

By: /s/ Ryan H. Weinstein
     RYAN H. WEINSTEIN
     BENJAMIN J. RAZI
     ANDREW SOUKUP
     STEVEN WINKELMAN

     Attorneys for Plaintiff/Counter-Defendant
     RELMAN COLFAX PLLC

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................... 1

BACKGROUND ..................................................................................................... 2

    A.    Ms. Ling Hires the Relman Firm to Prosecute the False Claims Act Case. ........................................................................................................ 2

    B.    The Relman Firm Zealously Represents Ms. Ling and Obtains a "Monumental" Result. ......................................................................... 4

    C.    Upon Realizing Monetary Relief in the False Claims Act Case was Virtually Certain, Ms. Ling Fires the Relman Firm and Attempts to Void the Agreement. ................................................................... 5

    D.    Ms. Ling Causes Her Attorneys in this Case to Withdraw. ................. 6

    E.    Ms. Ling Fails to Meet Her Discovery Obligations and Flouts a Court Order to Produce Discovery. ................................................ 6

LEGAL STANDARD ............................................................................................. 8

ARGUMENT ........................................................................................................... 9

I.    The Relman Firm is Entitled to Summary Judgment. ..................................... 9

    A.    The Agreement is Valid and Enforceable, and the Relman Firm is Entitled to the Fees Set Forth in the Agreement. ................................. 9

    B.    The Agreement Entitles the Relman Firm to at Least One-Third of Ms. Ling's Monetary Recovery. ...................................................... 11

II.    Ms. Ling's Failure to Comply with Her Discovery Obligations and the Magistrate Judge's Order Warrant Terminating Sanctions. ......................... 13

    A.    Ms. Ling Acted Willfully and In Bad Faith. ...................................... 14

    B.    Entering Default Judgment is the Only Appropriate Sanction. ......... 15

            1.    The Public's Interest in Expeditious Resolution and this Court's Need to Manage Its Docket Favor Case-Dispositive Sanctions. ................................................................................ 16

2.  The Prejudice to the Relman Firm Favors Case-Dispositive Sanctions. ................................................................. 17

3.  The Public Policy Favoring Disposition of Cases on Their Merits Does Not Preclude Case-Dispositive Sanctions. .......... 18

4.  Non-Terminating Sanctions Would Be Futile. ....................... 19

CONCLUSION ................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Akassy v. William Penn Apartments Ltd. P'ship*,
   891 A.2d 291 (D.C. 2006) ........................................................................ 11

*In re Brazier Forest Prods., Inc.*,
   921 F.2d 221 (9th Cir. 1990) ...................................................................... 9

*Buljina v. Astrue*,
   828 F. Supp. 2d 109 (D.D.C. 2011)..................................................... 12, 13

*Ceausu v. Progressive Cas. Ins. Co.*,
   2013 WL 12131280 (C.D. Cal. Oct. 10, 2013) ......................................... 9

*City of Burlington v. Dague*,
   505 U.S. 557 (1992)................................................................................. 13

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*,
   482 F.3d 1091 (9th Cir. 2007) ..................................................... 15, 16, 17

*Corp. v. Thoeren*,
   913 F.2d 1406 (9th Cir. 1990) ................................................................. 17

*DISH Network, LLC. v. Candelaria*,
   2018 WL 6981040 (C.D. Cal. Dec. 18, 2018) ......................................... 14

*Duffy v. Duffy*,
   881 A.2d 630 (D.C. 2005) ....................................................................... 10

*E. Contractors, Inc. v. City of Worcester*,
   2005 WL 8175850 (D. Mass. Dec. 21, 20005)......................................... 13

*Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*,
   940 A.2d 996 (D.C. 2008) .................................................................... 9, 10

*Faraj v. 6th and Island Invs. LLC*,
   2017 WL 385741 (S.D. Cal. Jan. 27, 2017) ............................................ 13

*Greenberg v. Sher*,
   567 A.2d 882 (D.C. 1989) ................................................................. 10, 11

*Innovation Ventures, LLC v. Custom Nutrition Labs., LLC*,
   2013 WL 2199629 (E.D. Mich. May 20, 2013) ........................................... 13

*Kaushiva v. Hutter*,
   454 A.2d 1373 (D.C. 1983) ................................................................. 10, 11

*Larson v. Runnels*,
   2007 WL 2288136 (E.D. Cal. Aug. 7, 2007) ............................................ 15

*In re Lebos*,
   422 B.R. 235 (E.D. Cal. Jan. 23, 2009) ................................................... 15

*In re Martin*,
   67 A.3d 1032 (D.C. 2013) ..................................................................... 12

*McMahon v. Anderson, Hibey & Blair*,
   728 A.2d 656 (D.C. 1999) ..................................................................... 11

*United States ex rel. Mei Ling v. City of Los Angeles*,
   No. 2:11-cv-00974, ECF No. 276-1 (C.D. Cal. Sept. 6, 2019) ..................... 4, 7, 19, 20

*nom. New Show Studios, LLC v. Howe*,
   696 F. App'x 271 (9th Cir. 2017) ........................................................... 15

*In re Phenylpropanolamine (PPA)Prods. Liab. Litig.*,
   460 F.3d 1217 (9th Cir. 2006) ............................................................... 17

*Rio Props., Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) ............................................................... 18

*Roberson v. Lompoc Federal Prison*,
   2020 WL 1692343 (C.D. Cal. Apr. 7, 2020) ............................................ 16

*Sanchez v. Rodriguez*,
   298 F.R.D. 460 (C.D. Cal. 2014) ..................................................... 14, 15, 18

*Sigliano v. Mendoza*,
   642 F.2d 309 (9th Cir. 1981) ........................................................... 14, 19

*Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang*,
   105 F.3d 521 (9th Cir. 1997) ................................................................. 15

*Steele Founds., Inc. v. Clark Const. Grp., Inc.*,
   937 A.2d 148 (D.C. 2007) ..................................................................... 12

*Steele v. Salb*,
   93 A.3d 1277 (D.C. 2014) ...................................................................... 10

*Steward v. Thumser*,
   2019 WL 442167 (E.D. Cal. Feb. 4, 2019) ............................................ 19

*Studios LLC. v. Needle*,
   2016 WL 7017214 (C.D. Cal. Dec. 1, 2016), *aff'd sub* ........................ 15

*Thomas v. Kaiser Found. Hosps.*,
   2007 WL 214441 (E.D. Cal. Jan. 26, 2007) ........................................... 19

*Valley Engineers Inc. v. Elec. Eng'g Co.*,
   158 F.3d 1051 (9th Cir. 1998) ................................................................ 19

*In re Waller*,
   524 A.2d 748 (D.C. 1987) ....................................................................... 10

*Yourish v. California Amplifier*,
   191 F.3d 983 (9th Cir. 1999) .................................................................. 16

**Statutes and Rules**

Fed. R. Civ. P. 26 ............................................................................................ 6

Fed. R. Civ. P. 37 ....................................................................... 13, 14, 15, 19

Fed. R. Civ. P. 56 ............................................................................................ 8

**Other Authorities**

Department of Justice, *CRA/LA Agrees to Pay $3.1 Million to Resolve Alleged Misuse of Federal Funds for Inaccessible Funding* (Feb. 6, 2020), https://www.justice.gov/opa/pr/crala-agrees-pay-31-million-resolve-alleged-misuse-federal-funds-inaccessible-housing ........................... 5

David Freeman Engstrom, *Public Regulation of Private Enforcement: Empirical Analysis of DOJ Oversight of Qui Tam Litigation under the False Claims Act*, 107 Nw. U. L. Rev. 1689 (2013) ......................................... 4

Department of Justice, *Successor to L.A.'s Redevelopment Agency Reaches $3.1 Million Settlement in Case Alleging Misuse of Federal Housing Funds* (Feb. 6, 2020), https://www.justice.gov/usao-cdca/pr/successor-la-s-redevelopment-agency-reaches-31-million-settlement-case-alleging-misuse ........................................................................................................5

Plaintiff Relman Colfax PLLC ("the Relman Firm") submits this memorandum in support of its motion for summary judgment or, in the alternative, default judgment against Mei Ling.

## INTRODUCTION

This lawsuit arises out of six years' of exemplary legal services that the Relman Firm provided Ms. Ling in connection with a False Claims Act lawsuit filed against the City of Los Angeles and its Community Redevelopment Agency.  When Ms. Ling learned the government was poised to intervene—a development that all but guaranteed her a substantial monetary recovery—she abruptly fired the Relman Firm and purported to terminate her contingency fee agreement (the "Agreement") with the Relman Firm. Statement of Uncontroverted Facts ("Facts") ¶ 12.  As emails from Ms. Ling's former counsel in this case have made clear, Ms. Ling's sudden decision was part of "a strategy to maximize the recovery in the FCA case" and to escape her obligation to pay the Relman Firm at least one-third of her monetary recovery.  Winkelman Decl. Ex. 7.

The Relman Firm brought this case to secure a declaration that the Agreement remains in full force and effect and that Ms. Ling is obliged to comply with it.  The Relman Firm is entitled to judgment against Ms. Ling for two reasons.

First, there is no reasonable dispute that the Agreement is a valid and enforceable contract.  It also is undisputed that, under the Agreement, if Ms. Ling receives a monetary award in the False Claims Act case, the Relman Firm is entitled to "one-third (33 1/3%) of the monetary award, in addition to costs, or the Firm's actual fees and costs . . . whichever is greater."  Allen Decl. Ex. A ¶ 1.A; *accord id.* ¶ 1.B.  Ms. Ling could authorize the Relman Firm to ask the court to award attorneys' fees and costs from the False Claims Act defendants, in which case Ms. Ling would only be "responsible for paying the Firm the difference between the court-awarded fees and one-third  of" her "monetary award."  *Id.* ¶ 1.B.

Unlike her co-relator the Fair Housing Council of San Fernando Valley ("FHC"), Ms. Ling has made clear that she will not permit the Relman Firm to seek such an award.

Facts ¶¶ 17, 18.  There is no dispute about what the Agreement provides for in that scenario: the Relman Firm is entitled to at least one-third of Ms. Ling's monetary recovery.  Facts ¶ 6.  Even FHC admits that if it adopted Ms. Ling's tactic and settled the False Claims Act case without permitting the Relman Firm to file a fee motion, the Relman Firm would be entitled to one-third of its recovery.  *See* ECF No. 148 at 27 (settlement that makes "no separate provision for the recovery of fees" and does not permit court-awarded "statutory fees" entitles the Relman Firm to one-third of FHC's recovery.").

Second, Ms. Ling has flouted her discovery obligations and defied a court order to produce discovery, depriving the Relman Firm of potentially critical testimony and documents.  And Ms. Ling did so willfully.  Ms. Ling is an active litigant when she wants to be:  she has a pending counterclaim against the Relman Firm, has filed numerous motions in this case and in the underlying False Claim Act litigation, and has otherwise participated in these cases when she found it in her interest to do so.  But when it came to her obligations in this case, Ms. Ling deliberately chose not to respond.  Entering a default judgment against Ms. Ling as a sanction for her flagrant discovery misconduct is the appropriate remedy.  Anything less would reward Ms. Ling's brazen disregard for her discovery obligations and a court order.

For these reasons, this Court should enter judgment in favor of the Relman Firm and against Ms. Ling

**BACKGROUND**

A.     **Ms. Ling Hires the Relman Firm to Prosecute the False Claims Act Case.**

In 2010, Mei Ling hired the Relman Firm to file a False Claims Act lawsuit against the City of Los Angeles and its Community Redevelopment Agency.  Facts ¶ 2.  When she did so, Mei Ling executed the Agreement with the Relman Firm.  Facts ¶ 2.  The

Agreement provided that the Relman Firm would represent Ms. Ling on a contingent basis subject to the following fee terms:

**Costs and Attorneys' Fees**

<u>1. Attorneys' Fees</u>

In the event relief is obtained, the Client agrees that the Firm is entitled to its reasonable attorneys' fees, in addition to the costs described below. The Firm's fees shall be calculated as follows:

A.   If the Litigation is resolved by a lump sum settlement or offer of judgment that provides for a monetary award to the Client but makes no separate provision for fees and waives the Client's right to seek court-awarded fees, the Firm shall be entitled to one-third (33 1/3%) of the monetary award, in addition to costs, or the Firm's actual fees and costs (calculated in the manner described below), whichever is greater.

B.   If the Litigation is resolved by summary judgment or a trial at which the Client prevails, the Firm shall be entitled to one-third (33 1/3 %) of the monetary amount awarded to the Client in the court proceeding, in addition to costs, or the court's award of statutory fees and costs, whichever is greater. The Firm will ask the court to award attorneys' fees and costs, to be paid by the Defendants. If the amount awarded by the court is less than one-third of the monetary amount awarded by order or judgment, the Client shall be responsible for paying the Firm the difference between the court-awarded fees and one-third of the monetary award to the Client.

C.   The Firm's attorneys' fees will be calculated utilizing the "lodestar" method. The "lodestar" amount reflects the number of hours worked multiplied by a reasonable hourly rate for the work performed. Charges for lawyers and legal assistants will be at our regular hourly rates in effect when the services are paid. Currently, the Firm's hourly rates range from $725 for senior lawyers to $275 for junior associates, and from $140 to $175 for legal assistants and interns. The rates for particular individuals are adjusted from time to time, usually as of January 1.

D.   If the Litigation is resolved in a manner in which the Client does not prevail, the Client will not be responsible for any fees incurred by the Firm and will be responsible only for the costs of the Litigation to the extent set forth herein.

Facts ¶ 3.  As with any contingent agreement, the Relman Firm accepted a significant risk that it would earn no compensation for its efforts—nor receive reimbursement for the considerable time and resources it expended—unless Ms. Ling obtained a favorable result.  Facts ¶¶ 5, 8.  The Relman Firm accepted this risk with the understanding that if

Mei Ling obtained monetary relief, the firm would receive at least a one-third share of any recovery. Facts ¶ 5; Allen Dep. at 66:7-10 (Winkelman Decl. Ex. 1).

### B.   The Relman Firm Zealously Represents Ms. Ling and Obtains a "Monumental" Result.

Over the next six years, the Relman Firm zealously litigated the False Claims Act case on Ms. Ling's behalf.  Facts. at ¶¶ 2, 9, 10, 11.  This work included analyzing documents provided by Ms. Ling, factual and legal research, preparing the False Claims Act complaint, and drafting a lengthy "disclosure statement" and supporting declaration, which the Firm provided to the Department of Justice. Facts ¶ 11.  The Relman Firm also interacted with Department of Justice lawyers over nearly six years and, at the Department of Justice's request, repeatedly provided substantial additional factual material and legal analysis in an effort to persuade the United States to intervene in the case. Facts ¶ 11.

The Relman Firm's efforts led to—in the words of one of the attorneys for Ms. Ling who later supplanted the Relman Firm—a "monumental" result.  Winkelman Decl. Ex. 22.  In May 2017, the United States announced its intention to intervene in the False Claims Act case.  Facts. at ¶ 14.  The government's intervention all but ensures a monetary recovery for Ms. Ling: when the government intervenes in False Claims Act cases, its success rate is approximately 90 percent.[1]  Indeed, the government has already settled with the Community Redevelopment Agency.  *See United States ex rel. Mei Ling v. City of Los Angeles*, No. 2:11-cv-00974, ECF No. 276-1 (C.D. Cal. Sept. 6, 2019) (proposed settlement agreement).  Under the settlement, Ms. Ling stands to recover a

---

[1] David F. Engstrom, *Public Regulation of Private Enforcement: Empirical Analysis of DOJ Oversight of Qui Tam Litigation Under the False Claims Act*, 107 Nw. U. L. Rev. 1689, 1720-21.

share of a more than $3,100,000,[2] in addition to a portion of whatever recovery the United States might obtain from the City.

    **C.**    **Upon Realizing Monetary Relief in the False Claims Act Case was Virtually Certain, Ms. Ling Fires the Relman Firm and Attempts to Void the Agreement.**

Notwithstanding the extraordinary relief obtained by the Relman Firm, Ms. Ling had been secretly scheming for months with her co-relator and her co-relator, the Fair Housing Council of San Fernando Valley ("FHC"), to manufacture pretextual reasons to fire the Relman Firm "without us owing [the firm] anything in the FCA case." Winkelman Decl. Ex. 4.  Indeed, Ms. Ling worried that the Government would settle the False Claims Act case while the Relman Firm remained her counsel, and noted that they "need[ed] to act quickly, and have RDC [removed] from the FCA case." *Id.* Ex. 5.

Ms. Ling and FHC executed their secret scheme in late 2016, after they learned that monetary recovery was virtually certain in the False Claims Act case.  In December 2016, Department of Justice lawyers contacted the Relman Firm to discuss "the status of the settlement discussions and to discuss relator's share."  Allen Decl. ¶¶ 13, 15. Realizing that monetary recovery was virtually certain, Ms. Ling abruptly fired the Relman Firm in December 2016 and informed the Relman attorneys that she had no intention of honoring the Agreement.  *Id.* ¶ 15.  Months later, Ms. Ling unilaterally attempted to "void" the Agreement.  Winkelman Decl. Ex. 6.

The Relman Firm responded by filing this action against both Ms. Ling and FHC, which also attempted to unlawfully void its fee agreement.  The Relman Firm seeks a

---

[2] *See* Department of Justice, *Successor to L.A.'s Redevelopment Agency Reaches $3.1 Million Settlement in Case Alleging Misuse of Federal Housing Funds* (Feb. 6, 2020), https://www.justice.gov/usao-cdca/pr/successor-la-s-redevelopment-agency-reaches-31-million-settlement-case-alleging-misuse; Department of Justice, *CRA/LA Agrees to Pay $3.1 Million to Resolve Alleged Misuse of Federal Funds for Inaccessible Funding* (Feb. 6, 2020), https://www.justice.gov/opa/pr/crala-agrees-pay-31-million-resolve-alleged-misuse-federal-funds-inaccessible-housing.

declaration "that the Agreement[ ] remain[s] in full force and effect and that . . . Ms. Ling [is] obliged to comply with [it]." Compl. ¶ 63.  The Relman Firm also asserts a claim for anticipatory breach of contract against Ms. Ling, based in part on her failure to pay the Relman Firm the agreed-upon portion of her relator's share of the government's settlement with the Community Redevelopment Agency.  Compl. ¶¶ 64-68.

Ms. Ling asserted five counterclaims that broadly contended the Relman Firm had engaged in misconduct.  ECF No. 109 at 1.  This Court granted the Relman Firm's motion to dismiss most of those counterclaims.  The only counterclaim remaining is a claim that seeks declaratory judgment that the Agreement is void under Cal. Bus. & Prof. Code § 6147 and that the Relman Firm "is limited to its reasonable hourly fees incurred on behalf of Ling that Ling recovers" from settlement of the False Claims Act case.  ECF No. 85 ¶¶ 88, 89.

**D.     Ms. Ling Causes Her Attorneys in this Case to Withdraw.**

The Relman Firm is not the only law firm Ms. Ling has accused of misconduct. Ms. Ling was originally represented by counsel in this litigation.  However, Ms. Ling's counsel sought withdrawal after she "accus[ed]" them of "concealing information from her regarding the FCA case" and "not acting in her best interests."  ECF No. 86 at 4. This Court granted counsel's motion to withdraw, finding that Ms. Ling had "rendered it unreasonably difficult for [her counsel] to carry out effectively its representation of her." ECF No. 91 at 2.

**E.     Ms. Ling Fails to Meet Her Discovery Obligations and Flouts a Court Order to Produce Discovery.**

After her second set of lawyers withdrew because she had "rendered it unreasonably difficult" to represent her, Ms. Ling failed to satisfy any of her discovery obligations.  For instance, the parties' initial disclosures were due on February 14, 2020. *See* Fed. R. Civ. P. 26(a)(1)(C); Winkelman Decl. ¶ 10.  Although the Relman Firm and FHC served initial disclosures on that date, Ms. Ling did not.  *Id.*.

Ms. Ling likewise refused to respond to the Relman Firm's discovery requests.  On February 5, 2020, the Relman Firm served Ms. Ling by overnight mail—and sent copies by email—with interrogatories and requests for production.  *Id.* Exs. 8-11.  Although the Relman Firm sent multiple letters to Ms. Ling advising her of her discovery obligations, Ms. Ling never responded.  *Id.* Exs. 13-15, 18-20.  Meanwhile, Ms. Ling found the time to file several oppositions—to the Relman Firm's motion to dismiss, ECF No. 110-1, to the United States's *ex parte* application to intervene, ECF No. 113, and to the Relman Firm's motion for sanctions, ECF No. 132—attend six depositions in this case, Winkelman Decl. ¶ 25, draft substantial portions of the Joint Rule 26 report in the False Claims Act case, *see United States ex rel. Mei Ling v. City of Los Angeles*, No. 2:11-cv-00974, ECF No. 348 (C.D. Cal. Apr. 21, 2020), participate in the scheduling conference in the False Claims Act case, *id.* ECF No. 354 , and send numerous lengthy emails, Winkelman Decl.  Exs. 7, 12, 16, 17.

Ms. Ling has critical evidence in her possession that goes to the heart of the Relman Firm's claims and her defenses.[3]  For example, documents produced by FHC contain an email from Ms. Ling showing she sought to manufacture a pretextual basis to fire the Relman Firm "without us owing [them] anything in the FCA case."  Winkelman Decl. Ex. 4. In another email, Ms. Ling sought to persuade FHC to "exercise our 'veto power' . . . where each of us **do not** give Relman Dane any authority to settle the FCA case . . . putting them in a position of having to Withdraw." *Id.* Ex. 3. (ellipses and bold emphasis in original).  Ms. Ling also has filed emails between her and FHC discussing the Relman Firm, which neither FHC nor Ms. Ling produced in discovery.  *E.g.*, ECF No. 110-1 at 16.  And after depositions of FHC's witnesses, Ms. Ling forwarded to the parties' counsel a selection of emails that confirmed that she and the FHC's witnesses conspired to fire the Relman Firm—a development that proved FHC's witnesses had

---

[3] For instance, Ms. Ling, unlike FHC, has not withdrawn her affirmative defense that she terminated the Relman Firm for cause.

falsely testified in their depositions why FHC had terminated the Relman Firm. Winkelman Decl. Ex. 7.  Following this development, FHC withdrew all of its affirmative defenses.  ECF No. 146.   Given Ms. Ling's central role in conspiring to fire the Relman Firm, it is highly likely that she has relevant documents about the Agreement with the Relman Firm and the valuable services that the Relman Firm provided to her.

The Relman Firm eventually filed a motion for sanctions and asked the Magistrate Judge Chooljian to enter default judgment against Ms. Ling.  ECF No. 118.  Judge Chooljian ordered Ms. Ling to produce, by June 19, 2020, her initial disclosures, her responses to the Relman Firm's discovery requests, and all documents in her possession, custody, or control responsive to the Relman Firm's document requests.  ECF No. 133 at 1-2.  Judge Chooljian deferred ruling on the Relman Firm's motion for sanctions to see whether Ms. Ling would comply with her order.  *Id.* at 2.

Ms. Ling did not comply with Judge Chooljian's order.  Instead, she filed an *ex parte* motion to extend the discovery deadline.  Ms. Ling, however, did not seek this extension to comply with her discovery obligations.  Rather, she sought the extension so that she could "bring closure to the CV19-8612 matters with the Covington attorneys." ECF No. 140 at 6.  This Court denied Ms. Ling's motion, noting that "[w]hile [Ms. Ling] lists an array of issues that have slowed her response to Plaintiff's requests, she has nevertheless found the time to actively participate in both this case and the related False Claims Act ('FCA') case in various ways" and that Ms. Ling "makes clear that she does not intend to comply with her discovery obligations."  ECF No. 144 at 1-2.

To date, Ms. Ling has produced no discovery responses and has not complied with Judge Chooljian's order.   Winkelman Decl. ¶ 31.  No further action has occurred on the Relman Firm's motion for sanctions.  *Id.* ¶ 32.

## LEGAL STANDARD

Summary judgment is appropriate where a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party "bears the initial burden to demonstrate

8

the lack of a genuine issue of material fact." *Ceausu v. Progressive Cas. Ins. Co.*, 2013 WL 12131280, at *4 (C.D. Cal. Oct. 10, 2013).  "If the movant satisfies this burden, the nonmovant must set forth specific evidence showing that there remains a genuine issue for trial, and may not rest upon mere allegation or denials of his pleading." *Id.* (quotation marks omitted).  Furthermore, "if the nonmoving party bears the burden of proof on an issue at trial"—as is the case with respect to Ms. Ling's affirmative defenses and her counterclaim—"the moving party need not produce affirmative evidence of an absence of fact to satisfy its burden." *In re Brazier Forest Prods., Inc.*, 921 F.2d 221, 223 (9th Cir. 1990).  Rather, "[t]he moving party may simply point to the absence of evidence to support the nonmoving party's case." *Id.*

## ARGUMENT

## I.     The Relman Firm is Entitled to Summary Judgment.

It is undisputed that the Agreement is a valid and enforceable contract.  Because Ms. Ling has made clear that she will not permit the Relman Firm to recover any fees in the False Claims Act case, it is undisputed that the Relman Firm is entitled to one-third of her monetary recovery under the terms of the Agreement.

### A.     The Agreement is Valid and Enforceable, and the Relman Firm is Entitled to the Fees Set Forth in the Agreement.

In response to Ms. Ling's baseless attempt to unilaterally "void" the Agreement, the Relman Firm filed this lawsuit seeking a declaration that its Agreement with Mei Ling is valid and enforceable.  Compl. ¶¶ 62-63. There is no dispute that it is.

Under District of Columbia law,[4] a valid and enforceable contract requires (i) "an agreement to all material terms," (ii) "intention of the parties to be bound," and (iii) "mutuality of obligation." *Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996, 1002 (D.C. 2008).  The Agreement easily satisfies these elements.  The

---

[4]     Like the agreement between the Relman Firm and FHC, the Agreement contains a District of Columbia choice-of-law provision.  Allen Decl. Ex. A at 4.

1   Agreement is "sufficiently definite" to render the parties' respective rights and

2   obligations "reasonably certain." *Duffy v. Duffy*, 881 A.2d 630, 634 (D.C. 2005). The

3   parties intended to be bound by the Agreement, as evidenced by their signatures on it.

4   *Duffy*, 881 A.2d at 637 (a party's written signature on an agreement offers "the clearest

5   evidence of mutual assent to the terms of the document"); *Eastbanc*, 940 A.2d at 1002

6   (countersigned document "demonstrate[d] the intent of the parties to be bound"). And

7   the Agreement created mutual obligations: the Relman Firm agreed to provide legal

8   services to Ms. Ling, and Ms. Ling agreed to pay a portion of its monetary recovery to

9   the Relman Firm. *See Eastbanc*, 940 A.2d at 1002 ("An exchange of promises provides

10  sufficient consideration, evidencing mutual obligation."). Nothing more was required to

11  create a valid and enforceable contract.

12      In the Agreement, Ms. Ling promised to pay the Relman Firm a portion of her

13  monetary recovery in the False Claims Act case. As this Court has already recognized

14  (ECF No. 126 at 7 n.2), under District of Columbia law, "an attorney who enters into a

15  contingency fee agreement with his client, substantially performs, and is then prevented

16  by his client from completing performance is entitled to the full amount specified in the

17  fee agreement." *Kaushiva v. Hutter*, 454 A.2d 1373, 1374 (D.C. 1983). Thus, when a

18  client fires her attorney without cause, the attorney may recover his "full contingency

19  fee" if "the attorney has, before discharge, fully performed, substantially performed, or

20  contributed substantially to the results finally obtained by the client." *In re Waller*, 524

21  A.2d 748, 751 (D.C. 1987); *see also Steele v. Salb*, 93 A.3d 1277, 1284-85 (D.C. 2014)

22  ("[A]n attorney whose services are terminated by his client is entitled to the full

23  contingency fee if he has substantially performed under the contingency fee agreement

24  and was willing to complete his obligation."); *Greenberg v. Sher*, 567 A.2d 882, 886

25  (D.C. 1989) (when attorney has "substantially performed under the contingency fee

26  agreement and was willing to complete his obligation," the attorney is "entitled to the full

27  fee even though the outcome . . . was unknown when he was discharged").

28

Ms. Ling cannot reasonably dispute that the Relman Firm substantially performed under the Agreement.  *See* Facts ¶¶ 10, 11.  Litigating the False Claims Act case for over six years and persuading the government to intervene constitutes substantial performance. *See* ECF No. 148 at 4; *Kaushiva*, 454 A.2d at 1374 (attorney that represented client at three arbitration hearings, but was terminated before he could draft a final brief, substantially performed).  Ms. Ling's co-relator, FHC, agrees that the Relman Firm substantially performed its obligations under an identical retainer agreement.  *See* ECF No. 148-1 ¶ 9.  It is also undisputed that, before it was fired, the Relman Firm stood ready to continue zealously representing Ms. Ling in the False Claims Act case.  Facts ¶ 13. While Ms. Ling asserts an affirmative defense that she fired the Relman Firm for cause, she has offered no evidence in support of her baseless accusation and, consequently, cannot carry her burden.  *See Greenberg*, 567 A.2d at 884 (defendant bears the burden of establishing for cause termination).  This Court has already held that District of Columbia law governs an Agreement identical to Ms. Ling's, ECF No. 126 at 5, defeating Ms. Ling's contention in her counter-claim that the Agreement is voidable under California law.

In short, it is undisputed that the Relman Firm is "entitled to the full amount specified in the fee agreement."  *Kaushiva*, 454 A.2d at 1374.

**B.     The Agreement Entitles the Relman Firm to at Least One-Third of Ms. Ling's Monetary Recovery.**

The interpretation of an unambiguous contract is "a question of law appropriate for summary judgment."  *McMahon v. Anderson, Hibey & Blair*, 728 A.2d 656, 658 n.5 (D.C. 1999).  The District of Columbia follows "the 'objective law' of contracts, whereby the written language embodying the terms of an agreement will govern the rights and liabilities of the parties."  *Akassy v. William Penn Apartments Ltd. P'ship*, 891 A.2d 291, 303 (D.C. 2006).  "[W]hen interpreting a contract, the court should look to the intent of the parties entering into the agreement."  *Dodek v. CF 16 Corp.*, 537 A.2d 1086, 1093 (D.C. 1988) (quotation marks omitted).  "The question of intent is resolved by an

objective inquiry, and the first step is therefore to determine what a reasonable person in the position of the parties would have thought the disputed language meant." *Steele Founds., Inc. v. Clark Const. Grp., Inc.*, 937 A.2d 148, 154 (D.C. 2007) (quotation marks and alterations omitted).  This inquiry requires courts to consider "the circumstances surrounding the making of the contract," "all usages which either party knows or has reason to know," and "the circumstances surrounding the contract and the course of conduct of the parties under the contract."  *Dodek*, 537 A.2d at 1093.

Unlike FHC, Ms. Ling has not, and will not, permit the Relman Firm any fees if the False Claims Act case settles.[5]  Facts ¶¶ 17, 18.  There can be no dispute about what happens in this scenario.   When there is a settlement that makes "no separate provision for fees" nor includes any "court-awarded fees," the Relman Firm is "entitled to one-third (33 1/3%) of the monetary award, in addition to costs, or the Firm's actual fees and costs . . .  whichever is greater."  *See* Allen Decl. Ex. A ¶ 1.A.  Even FHC agrees that the Relman Firm is entitled to one-third of the recovery in this situation.  *See* ECF No. 148 at 27 (settlement that makes "no separate provision for the recovery of fees" and does not permit court-awarded "statutory fees" entitles the Relman Firm to one-third of FHC's recovery.").

The Agreement is thus a prototypical contingency fee agreement, under which "[t]he attorney takes the risk that little or no recovery may result from a considerable amount of work."  *In re Martin*, 67 A.3d 1032, 1040 (D.C. 2013).  In exchange for this risk, the Relman Firm stood to "recover a sum that far exceeds the amount they would have received if they had charged an hourly rate," but only if it FHC obtained a monetary recovery.  *Buljina v. Astrue*, 828 F. Supp. 2d 109, 113 (D.D.C. 2011). "Attorneys who accept payment on a contingent basis reap these rewards because they take upon

---

[5] If Ms. Ling permitted the Relman Firm to file a fee motion, then Ms. Ling would only be "responsible for paying the Firm the difference between the court-awarded fees and one-third of [her] monetary recovery," if any.  Allen Decl. Ex. A ¶ 1.B.

themselves the risk that they will receive no payment at all, thus reflecting the high rate of return that accompanies a high-risk investment." *Id.*; *see also City of Burlington v. Dague*, 505 U.S. 557, 571, (1992) ("An attorney operating on a contingency-fee basis pools the risks presented by his various cases: cases that turn out to be successful pay for the time he gambled on those that did not."). The benefits of a contingency fee agreement are lost if the Relman Firm does not receive at least one-third of Ms. Ling's monetary recovery.

## II. Ms. Ling's Failure to Comply with Her Discovery Obligations and the Magistrate Judge's Order Warrant Terminating Sanctions.

Alternatively, this Court should enter judgment against Ms. Ling because she has entirely flouted her discovery obligations.[6] Ms. Ling's refusal to participate in discovery has not merely hampered the Relman Firm's ability to prosecute its claims against Ms. Ling; it has also deprived the Relman Firm of critical evidence necessary to pursue its claims against FHC.

Rule 37 permits this Court to order sanctions on a party that "fails to obey an order to provide or permit discovery," Fed. R. Civ. P. 37(b)(2)(A), or "fails to serve its answers, objections, or written response" to interrogatories or requests for production,

---

[6] Although this requested relief is pending before Judge Chooljian, ECF Nos. 118, 133, this Court can and should impose terminating sanctions without waiting for a recommendation. To serve judicial economy, courts regularly decide motions that are, or ordinarily would be, before a magistrate judge. *See  Faraj v. 6th and Island Invs. LLC*, 2017 WL 385741, at *3 (S.D. Cal. Jan. 27, 2017) (deciding motion magistrate would ordinarily address "[g]iven the relative urgency of the need to resolve [the motion], and the efficiency gained by" deciding the motion together with another motion); *Innovation Ventures, LLC v. Custom Nutrition Labs., LLC*, 2013 WL 2199629, at *1 n.1 (E.D. Mich. May 20, 2013) (rescinding reference of motion to magistrate "[i]n the interest of judicial economy and efficiency"); *E. Contractors, Inc. v. City of Worcester*, 2005 WL 8175850, at *2 (D. Mass. Dec. 21, 20005) ("The efficient administration of this case will be enhanced if this court decides the pending motions [before the magistrate].").  This Court should do the same and consider at the same time whether the Relman Firm is entitled to judgment against Ms. Ling because it wins on the merits or as a discovery sanction.

13

Fed. R. Civ. P. 37(d)(1)(A)(i).  One sanction a court may employ is "rendering a default judgment against the disobedient party."  Fed. R. Civ. P. 37(b)(2)(A)(vi); *see also DISH Network, LLC. v. Candelaria*, 2018 WL 6981040, at *1 (C.D. Cal. Dec. 18, 2018) (Rule 37 "authorizes the Court to strike a party's pleading or render a default judgment against it where the party fails to serve answers to interrogatories or respond to a request for inspection under Rule 34").  The Ninth Circuit has "specifically encouraged" case-dispositive sanctions "where the district court determines that counsel or a party has acted willfully or in bad faith in failing to comply with rules of discovery or with court orders enforcing the rules or in flagrant disregard of those rules or orders."  *Sigliano v. Mendoza*, 642 F.2d 309, 310 (9th Cir. 1981) (internal quotation marks omitted).  Although "[a] party's lack of counsel may be considered in evaluating the willfulness of discovery violations," a party's "pro se status does not excuse intentional noncompliance with discovery rules and court orders."  *Sanchez v. Rodriguez*, 298 F.R.D. 460, 470 (C.D. Cal. 2014) (collecting cases imposing case dispositive sanctions against pro se litigants for discovery violations).

### A.     Ms. Ling Acted Willfully and In Bad Faith.

Ms. Ling's failure to comply with Judge Chooljian's order and flagrant disregard for the discovery rules demonstrates that her non-compliance has been willful and in bad faith.  As the Ninth Circuit has explained, a party's "repeated failure to comply with [ ] discovery request[s]" "and "court[ ] orders" is sufficient to "manifest[ ] the requisite fault" and "fully justifie[s]" a case-dispositive sanction.  *Sigliano*, 642 F.2d at 310.

Ms. Ling has not responded to any of the Relman Firm's repeated discovery requests, even after Judge Chooljian ordered her to do so.  As this Court noted in its order denying Ms. Ling *ex parte* application for an extension of the discovery deadline, Ms. Ling was clearly capable of complying.  ECF No. 144 at 1-2.  While ignoring her discovery obligations, Ms. Ling opposed the Relman Firm's motion to dismiss, the United States's *ex parte* application to intervene, the Relman Firm's motion for sanctions,

attended six depositions in this case, and participated in the scheduling conference in the underlying False Claims Act case.  *See supra* at 7.

This conduct easily satisfies the test for willfulness.  "Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith or fault warranting default." *Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang*, 105 F.3d 521, 525 (9th Cir. 1997).  Ms. Ling has "not proffer[ed] any plausible justification or excuse for h[er] noncompliance with [d]iscovery." *Sanchez*, 298 F.R.D. at 471.  To the contrary, Ms. Ling's numerous filings in this case and in the False Claims Act case show that she is, in the words of Judge Chooljian, "a very able advocate" for herself.  Winkelman Decl. Ex. 21.   There is no excuse for Ms. Ling's complete failure to produce any discovery to the Relman Firm.

### B.   Entering Default Judgment is the Only Appropriate Sanction.

This Court may sanction Ms. Ling by entering default judgment.[7]

In deciding whether to impose case-dispositive sanctions for willful discovery violations and defiance of court orders, the Ninth Circuit has directed courts to balance five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the

---

[7]   Because the Relman Firm moves for terminating sanctions under Rule 37, there is no need to satisfy the procedural and substantive requirements for default under Rule 55 and the corresponding local rules.  *See Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007) (analyzing propriety of Rule 37 entry of default judgment without reference to Rule 55 or the *Eitel* factors); *New Show Studios LLC. v. Needle*, 2016 WL 7017214, at *7 (C.D. Cal. Dec. 1, 2016), *aff'd sub nom. New Show Studios, LLC v. Howe*, 696 F. App'x 271 (9th Cir. 2017) ("The Ninth Circuit has set forth a different standard for default judgment where it is entered as a sanction as opposed to pursuant to Rule 55."); *In re Lebos*, 422 B.R. 235, 238-39 (E.D. Cal. Jan. 23, 2009) (Rule 55 requirements are inapplicable to a Rule 37 motion for terminating sanctions).  Even if the Court were inclined to enter default before rendering a default judgment, this Court may construe the Relman Firm's motion for entry of default judgment as one for entry of default. *See Larson v. Runnels*, 2007 WL 2288136, at *1 (E.D. Cal. Aug. 7, 2007) (construing motion for default judgment "as a request for entry of default").

court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Connecticut Gen. Life Ins. Co.*, 482 F.3d at 1096. Case-dispositive sanctions are warranted "where at least four factors support [them], . . . or where at least three factors 'strongly' support [case-dispositive sanctions]." *Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999). Applying these factors here compels the conclusion that the Relman Firm is entitled to judgment in its favor on the claims asserted between Ms. Ling and the Relman Firm.

### 1. The Public's Interest in Expeditious Resolution and this Court's Need to Manage Its Docket Favor Case-Dispositive Sanctions.

The first two factors require this Court to consider the public's interest in expeditious resolution of litigation and this Court's need to manage its dockets. *Connecticut Gen. Life Ins. Co.*, 482 F.3d at 1096. These factors support case-dispositive sanctions. Ms. Ling's two acts of misconduct—defiance of court orders and failure to fulfill discovery obligations—always favor sanctions under these factors. *See Yourish*, 191 F.3d at 990 (when a party fails to fulfill its discovery obligations, "the public's interest in expeditious resolution of litigation always favors" case-dispositive sanctions); *Roberson v. Lompoc Federal Prison*, 2020 WL 1692343, at *1 (C.D. Cal. Apr. 7, 2020) ("[The] failure to comply with court orders . . . interfere[s] with the public's interest in the expeditious resolution of . . . litigation and the Court's need to manage its docket."). Moreover, Ms. Ling's wholesale refusal to respond to discovery requests, to produce documents, or to participate in meet-and-confers significantly delayed the Relman Firm's ability to prosecute its claims against Ms. Ling and FHC. Ms. Ling's failure to provide any discovery also hampered the Relman Firm's ability to gather evidence before the fact discovery cutoff. Permitting Ms. Ling to provide discovery now would require reopening discovery and pushing back upcoming case deadlines.

### 2. The Prejudice to the Relman Firm Favors Case-Dispositive Sanctions.

The third factor requires this Court to consider the risk of prejudice to the party seeking sanctions. *Connecticut Gen. Life Ins.*, 482 F.3d at 1096. A party "suffers prejudice" where another party's non-compliance "impair[s] the [moving party's] ability to go to trial or threaten to interfere with the rightful decision of the case." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990). "Failure to produce documents as ordered . . . is considered sufficient prejudice." *Id.*; *see also Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997) (case-dispositive sanctions proper where party's "repeated failure to provide documents and information in a timely fashion prejudice[s] the ability of [the moving party] to prepare their case for trial"). "The law also presumes prejudice from unreasonable delay." *In re Phenylpropanolamine (PPA)Prods. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006).

This factor also supports the entry of case-dispositive sanctions. Ms. Ling's failure to provide discovery has prejudiced the Relman Firm's ability to prepare its case and investigate Ms. Ling's defenses. Ms. Ling has provided no discovery on the key issues in the Relman Firm's case: how the Agreement was formed and Ms. Ling's understanding of her fee obligations. Nor has she responded to discovery requests regarding her affirmative defenses, such as her baseless claim that she fired the Relman Firm for cause. Although Ms. Ling copied attorneys for the Relman Firm on two late-June 2020 emails that included a smattering of communications between Ms. Ling and FHC, Ms. Ling only did so to—as the subject line of her email stated—"correct[] FHC's False Deposition Testimonies." Winkelman Decl. Ex. 7. This limited email exchange fell far short of satisfying Ms. Ling's discovery obligations. In short, Ms. Ling's stonewalling has forced the Relman Firm prepare its case without access to potentially decisive information.

Ms. Ling's failure to produce relevant documents has also hampered the Relman Firm's ability to pursue its claims against FHC. Ms. Ling is likely the only source of numerous relevant documents. FHC has claimed that it lost many responsive and

17

relevant documents, Kinlaw Dep. at 262:3-263:14 (Winkelman Decl. Ex. 2),  and has withheld critical documents during discovery, *see* Mot. Summary Judgment Against FHC at 7-9.  For example, FHC did not produce emails that showed FHC's executive director testified falsely that "[t]here was no coordination" between FHC and Ms. Ling regarding their respective decisions to terminate the Relman Firm.  Kinlaw Dep. at 236:13.  The Relman Firm learned that this was false only because Ms. Ling's late-June 2020 emails happened to contain communications showing FHC and Ms. Ling had coordinated their firing decisions.  One email showed that Ms. Kinlaw wrote to Ms. Ling that they "need[ed] to make some strategic moves and join forces."  Winkelman Decl. Ex. 7.  Another email revealed FHC's and Ms. Ling's plan to "move together on a strategy to maximize the[ir] recovery in the FCA case."  *Id.*  That development prompted FHC's counsel to apologize to the Court for misrepresenting the status of FHC's document production.  ECF No. 145.  Because Ms. Ling has failed to comply with Judge Chooljian's order and produce any discovery, the Relman Firm does not know what other documents Ms. Ling might possess that undermine FHC's contentions.

### 3. The Public Policy Favoring Disposition of Cases on Their Merits Does Not Preclude Case-Dispositive Sanctions.

As the Ninth Circuit has explained, "[w]hile the public policy favoring disposition of cases on their merits weighs against default judgment, that single factor is not enough to preclude imposition of this sanction when the other four factors weigh in its favor." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1022 (9th Cir. 2002).  As explained elsewhere, the other four factors weigh in favor of case-dispositive sanctions.  This factor weighs in favor of case-dispositive sanctions because, as explained above, the Relman Firm is entitled to judgment on the merits.

Furthermore, "the public policy favoring the disposition of cases on their merits is not furthered by litigants who repeatedly ignore court orders and who refuse to provide . . . critical discovery, thereby hindering the preparation of a [case] on the merits." *Sanchez*, 298 F.R.D. at 472.  Ms. Ling "cannot legitimately expect this case to proceed to a merits

18

disposition if [s]he refuses to provide [the Relman Firm] with any discovery." *Id.* (emphasis in original).

### 4. Non-Terminating Sanctions Would Be Futile.

Case-dispositive sanctions are proper under Rule 37(d) "for a serious or total failure to respond to discovery even without a prior order" imposing lesser sanctions. *Sigliano*, 642 F.2d at 310. As the Ninth Circuit has explained, "it is not always necessary for the court to impose less serious sanctions first, or to give any explicit warning." *Valley Engineers Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998).

Default judgment is the only appropriate sanction. Ms. Ling has confirmed that she has no intention of ever complying with Judge Chooljian's order or her discovery obligations. She has said that she can no longer "proceed in pro persona," ECF No. 142 at 3, that "it is impossible for [her] to provide records," *id.* at 4, that she cannot provide interrogatory answers, *id.* at 5, that she no longer wants to maintain her counterclaim for declaratory judgment, *id.* at 3, and that she simply would like to "bring closure" to this case, *id.* at 6. Simply put, there is nothing any other sanction can do to change Ms. Ling's behavior or adequately punish her for her misconduct.[8]

Indeed, other sanction threats have fallen on deaf ears. In the False Claims Act case, this Court repeatedly struck from the public docket exhibits filed by Ms. Ling that contained information subject to the government's common interest privilege. *See, e.g., United States ex rel. Mei Ling v. City of Los Angeles*, No. 2:11-cv-00974, ECF Nos. 289,

---

[8] Monetary or exclusionary sanctions would be futile. "[E]xclusionary sanctions would likely be ineffective, since the court is unable to prospectively determine what kind of information and evidence [Ms. Ling] is withholding such that it could be effectively excluded." *Steward v. Thumser*, 2019 WL 442167, at *8 (E.D. Cal. Feb. 4, 2019). And as a *pro se* litigant, Ms. Ling "would almost certainly be unable to pay any monetary sanctions," "making such alternative sanctions ineffective." *Id.*; *see also Thomas v. Kaiser Found. Hosps.*, 2007 WL 214441, at *3 (E.D. Cal. Jan. 26, 2007) ("[l]esser sanctions such as monetary sanctions would appear to be ineffective," where sanctioned party "would be unable to pay"). Striking Ms. Ling's counterclaim or re-opening discovery likewise would have no meaningful effect.

19

299, 325, 326, 342 (C.D. Cal.).  In December 2019, the Court directed Ms. Ling to "refrain from revealing Plaintiff's privilege information in any future filings" and specifically warned that if Ms. Ling "**again violates this order, the Court will bar her from making any filings**."  *United States ex rel. Mei Ling v. City of Los Angeles*, No. 2:11-cv-00974 (C.D. Cal. Dec. 20, 2019), ECF No. 325 (emphasis in original).  Despite that warning, Ms. Ling continued to file privileged documents in this action, forcing the government to intervene to request that the exhibits be removed.  *See* ECF No. 110. That led to another admonishment from the Court that "**the Court will impose monetary sanctions that, if further ignored, could lead the Court to strike [her] nonconforming pleadings**." ECF No. 112 (emphasis in original).  Ultimately, this Court barred Ms. Ling from participating in the False Claims Act case.  *United States ex rel. Mei Ling v. City of Los Angeles*, No. 2:11-cv-00974 (C.D. Cal. Dec. 20, 2019), ECF No. 352.

Ms. Ling should not be allowed to flout a court order and her discovery obligations with impunity.  Only case-dispositive sanctions will have the proper impact required here.  A default judgment is therefore the only appropriate remedy.

## CONCLUSION

For the foregoing reasons, the Court should enter judgment in favor of the Relman Firm and against Ms. Ling.  A proposed judgment is attached.

DATED: September 14, 2020          COVINGTON & BURLING LLP


By: /s/ Ryan H. Weinstein
    RYAN H. WEINSTEIN
    BENJAMIN J. RAZI
    ANDREW SOUKUP
    STEVEN WINKELMAN

Attorneys for Plaintiff/Counter-Defendant
RELMAN COLFAX PLLC

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2020, a true and correct copy of the foregoing was served on the following by the means set forth below:

*by overnight mail with courtesy copy by email:*
Mei Ling
6750 Whitsett Ave. #310
North Hollywood, California 91606
mei.ling818@yahoo.com

*by CM/ECF:*
Donald R. Warren
Phillip E. Benson
WARREN - BENSON LAW GROUP
7825 Fay Ave. Ste. 200
La Jolla, CA 92037
donwarren@warrenbensonlaw.com
philbenson@warrenbensonlaw.com

*Attorneys for Fair Housing Council of San Fernando Valley*

DATED: September 14, 2020

By: _____
     William J. Jarboe